1  Gregory B. Collins (#023158)
   Eric B. Hull (#023934)
2  KERCSMAR & FELTUS PLLC
   6263 North Scottsdale Road, Suite 320
3  Scottsdale, Arizona 85250
   Telephone: (480) 421-1001
4  Facsimile: (480) 421-1002
   gbc@kflawaz.com
5  ebh@kflawaz.com

6  Attorneys for Plaintiffs Ron Kramer, Sal Abraham, and
   ThermoLife International LLC

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ron Kramer, an Arizona resident; Sal Abraham, a Florida resident; ThermoLife International LLC, an Arizona limited liability company,<br><br>    Plaintiffs,<br><br>v.<br><br>Creative Compounds LLC, a Nevada limited liability company,<br><br>    Defendant. | Case No. 2:11-cv-01965-PHX-JAT (Lead)<br>          2:11-cv-02033-PHX-JAT (Cons)<br><br>**PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT ON DEFENDANT'S DECLARATORY JUDGMENT COMPLAINT AND PLAINTIFFS' CLAIM FOR PATENT INFRINGEMENT** |
| Creative Compounds LLC, a Nevada limited liability company,<br><br>    Plaintiff,<br><br>v.<br><br>Ron Kramer, an Arizona resident; and Sal Abraham, a Florida resident,<br><br>    Defendants. | |

Plaintiffs Ron Kramer, Sal Abraham and ThermoLife International, LLC (collectively, "Plaintiffs" or "ThermoLife"), hereby move for summary judgment in their favor and against Defendant Creative Compounds, LLC ("Creative") on Count I of their Complaint (infringement of the U.S. Patent No. 7,919,533 B2 ("the '533 Patent")) in the lead

1

case and against Plaintiff Creative in the Consolidated Case on Creative's claims for non-infringement and invalidity of the '533 Patent. Creative offered to sell a product that infringes on the '533 Patent. Creative's only defense has been a claim that the '533 Patent is invalid. As a matter of law, the undisputed evidence does not support Creative's claim for invalidity. Accordingly, ThermoLife is entitled to judgment as a matter of law. This motion is supported by the separately filed Plaintiff's Statement of Facts ("SOF") and the following Memorandum of Points and Authorities.

## **MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

The facts of this case are rather simple. ThermoLife has a patent and Creative seeks to sell a product that would directly infringe that patent. Creative has not simply explored the possibility of infringing ThermoLife's patent, it has taken concrete steps to sell its infringing product to customers.[1] These facts are not in dispute. Instead, Creative has defended its conduct based on a series of "experiments" allegedly conducted by one of Creative's consultants, Derek Cornelius. The term "experiments" is in quotation marks because by Cornelius' own admission, his tests were "subjective" and the results "anecdotal." After these "experiments," Cornelius took no steps to obtain a patent. He did not publish his results—he did not even keep records of the results. For years, Creative did not market any product based on these experiments. It is as if the experiments never took place. That is, until Creative was caught infringing ThermoLife's patent.

On the basis of this self serving and uncorroborated testimony, Creative seeks to have the patent ruled invalid. Creative ignores that every patent is presumptively valid and requires ***clear and convincing*** evidence for a ruling of invalidity. Creative does not have a defense as much as a flimsy excuse. ThermoLife is entitled to judgment as a matter of law holding that Creative infringed its patent and a ruling that Creative's

---

[1] Because Creative's President testified under oath that Creative had not sold the infringing product it offered for sale (its offer did not attract a buyer), Plaintiffs do not seek an award of money damages here. (SOF ¶ 30.) Nonetheless, a permanent injunction is necessary to bar Creative from selling the infringing product it advertised.

2

defense of invalidity falls woefully short of the clear and convincing standard as a matter of law.

## II. FACTUAL BACKGROUND

### A. <u>ThermoLife and the '533 Patent</u>.

Ron Kramer founded ThermoLife in 1998. (SOF ¶ 1.) Prior to founding ThermoLife, Kramer was a gym owner who had competed in bodybuilding and later promoted professional bodybuilding competitions for the International Federation of Bodybuilders. (SOF ¶ 2.) Between 1994 and 1997, Kramer opened and operated a Gold's Gym in Santa Cruz, California. (*Id*.) During his time as a bodybuilder, promoter, and gym owner, Kramer discovered that many dietary supplements failed to meet any quality control standards. (SOF ¶ 3.) Often supplements were spiked with hidden ingredients and labeled incorrectly. (*Id*.) Many were ineffective. At the time ThermoLife was established, few supplements were clinically researched or field tested. Even today, relatively few supplements have been proven to work as advertised. (*Id*.)

In 1998, Kramer founded ThermoLife in order to provide the public with quality proven supplements. (SOF ¶ 4.) ThermoLife is committed to selling only the purest, most effective and innovative products. (*Id*.)

On October 20, 2004, Ron Kramer and Sal Abraham submitted an application for a United States Patent related to the use of diiodothyroacetic acid in dietary supplements. (SOF ¶ 5.) On April 5, 2011, the '533 Patent was duly and legally issued to inventors Sal Abraham and Ron Kramer. (SOF ¶ 6.) Claim 1 of the '533 Patent protects, "a method of promoting lean body mass in human individuals having a body mass index of at least 25, comprising directly administering to the individual an effective amount of diiodothyroacetic acid." (SOF ¶ 7.) And Claim 11 of the '533 Patent also claims, "A dietary supplement comprising diiodothyroacetic acid." (SOF ¶ 8.)

3

### B. Creative Compounds Infringes on the '533 Patent.

On September 22, 2011, Creative Compounds sent out a targeted email marketing diiodothyroacetic acid ("DIAC") for use in dietary supplements to 11 potential customers. (SOF ¶ 9.) The email stated:

> Creative Compounds is pleased to introduce ***DIACtive*** brand of diiodothyroacetic acid (DIAC), one of the most exciting dietary supplements of the decade. Having worked extensively with this novel ingredient, Creative Compounds knows all of the intricacies surrounding its pharmacology and usage. We have the unique ability to help your company properly formulate and integrate this ingredient into a top selling product on the market. Beware of other diiodiothyroacetic [sic] acid products on the market that are not pure! Beware of other products on the market that are highly diluted but sell for an extremely high price. DIACtive is the most pure, highest quality DIAC in the industry and is GUARANTEED to be the lowest price diiodothyroacetic acid in the industry.

(SOF ¶ 10.) The email also included a sales sheet offering to sell DIACtive for use as a dietary supplement. (*Id*.) The purpose of the email "was to have one of these companies buy DIACtive and use it in a dietary supplement . . . ." (SOF ¶ 11.) McNeely testified that DIAC "is something we definitely want to sell." (*Id*.) In offering to sell a dietary supplement containing DIAC, Creative directly infringes the '533 Patent. (SOF ¶ 12.)

### C. Creative Compounds Has No Defense to its Infringing Activity.

Creative Compounds cannot claim that it did not infringe the '533 Patent. Instead, Creative Compounds has insisted that the '533 Patent is invalid because Creative Compounds is a prior inventor. The basis of Creative's defense is an order for DIAC that Creative's consultant, Derek Cornelius, placed with Francisco Tabak, a supplier in Argentina.[2] (SOF ¶ 15.) When Cornelius obtained the sample of DIAC, he engaged in limited experimentation. "[The] first thing [he] did was test it on [him]self . . . for . . . like, four to six weeks . . . ." (SOF ¶ 17.) During this time, Cornelius checked his pulse, blood pressure, and weight twice a day. (SOF ¶ 18.) He does not remember the dosage he used and did not keep a journal of the testing. (SOF ¶ 19.) He cannot remember the effect of

---

[2] Creative's President Corey McNeely testified that he did not know of any facts to support this claim and that he had "delegated authority with respect to the company's handling of this litigation" to Derek Cornelius. (C. McNeely Dep. (2/12/13) at 54:6-9; *see also id*. at 51:8-52:7.)

the DIAC on his blood pressure or weight loss – "I don't remember the exact, but it wasn't -- I didn't lose ten pounds. I remember losing a few, so." (SOF ¶ 20.) Cornelius did not make any effort to determine if his weight loss was due to DIAC or other factors. (*Id*.)

After Cornelius tested the sample on himself, he "tested it on about four or five [other] people . . . ." (SOF ¶ 21.) In this second group, Cornelius again looked at "blood pressure, heart rate, just to make sure in other people it was okay and then ultimately, you know, make sure it was fat loss that they were getting." (SOF ¶ 21.) Cornelius did not keep any journals of the tests on this second group. (*Id*.)

Cornelius described his testing results as "anecdotal." (SOF ¶ 22.) He concedes that he does not remember the results of the testing other than that he "think[s] people lost a small amount of weight and felt pretty good on it." (*Id*.) But Cornelius made no efforts to determine whether the weight loss was attributable to the DIAC or other factors—instead the results were "subjective." (SOF ¶ 23.) He never published the results of his tests. (SOF ¶ 24.) He believes he may have discussed the tests on a message board but "[n]one of that information would've been kept. That website is -- no parts of that website are around anymore as far as I know." (*Id*.) He never called an attorney regarding the possibility of obtaining a patent. (SOF ¶ 25.) He never commissioned a study of DIAC—all of his testing was "anecdotal." (SOF ¶ 26.)

Notably, Cornelius' testing only pertained to Claims 11-13 in the '533 Patent. He concedes that he never determined "whether or not administering DIAC to an individual having a body mass index of at least 25 promoted lean body mass . . . ." (SOF ¶ 27.) Accordingly, Cornelius never conducted any research into the areas covered in Claims 1-10 of the '533 Patent. Instead, Cornelius believed that "I felt like [DIAC] meets the criteria of a dietary supplement." (SOF ¶ 28.)

## III. THE SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. "Material" means that the fact, under governing substantive law, could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997). For a dispute to be "genuine," a reasonable jury must be able to return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248.

The initial burden of establishing the absence of a genuine issue of material fact falls on the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In *Celotex*, the Supreme Court explained that "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." 477 U.S. at 325, 106 S.Ct. 2548.

The *Celotex* standard takes on particular importance in the context of a claim for the invalidity of a patent. "Under the patent statutes, a patent enjoys a presumption of validity . . . which can be overcome only through clear and convincing evidence." *Eli Lilly & Co. v. Barr Labs., Inc.*, 251 F.3d 955, 962 (Fed. Cir. 2001) (citing 35 U.S.C. § 282); *see also Creative Compounds, LLC v. Starmark Labs.*, 651 F.3d 1303, 1309-10 (Fed. Cir. 2011). "Thus, a moving party seeking to invalidate a patent at summary judgment must submit such clear and convincing evidence of invalidity so that no reasonable jury could find otherwise. Alternatively, a moving party seeking to have a patent held not invalid at summary judgment must show that the nonmoving party, who bears the burden of proof at trial, failed to produce clear and convincing evidence on an essential element of a defense upon which a reasonable jury could invalidate the patent." *Id.*; *see also Nat'l Presto Indus., Inc. v. W. Bend Co.*, 76 F.3d 1185, 1189 (Fed. Cir. 1996) ("In deciding a motion for summary judgment of invalidity the burden of proof must be considered.")

In evaluating the evidence, "[i]t is well established that conclusory statements of counsel or a witness that a patent is invalid do not raise a genuine issue of fact." *Biotec*

Keresmar & Feltus PLLC
6263 N. Scottsdale Road, Suite 320
Scottsdale, Arizona 85250
(480) 421-1001

*Biologische Naturverpackungen GmbH & Co. KG v. Biocorp, Inc.*, 249 F.3d 1341, 1353 (Fed. Cir. 2001) (citing *Applied Companies v. United States*, 144 F.3d 1470, 1475 (Fed. Cir. 1998) ("It is well settled that 'a conclusory statement on the ultimate issue does not create a genuine issue of fact.'")).

## IV. ARGUMENT

### A. Creative Cannot Dispute that it Infringed the '533 Patent Making Summary Judgment Appropriate.

The law plainly holds that "whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent." 35 U.S.C.A. § 271(a). Here, Creative insists that it has not sold any DIAC. But the analysis cannot stop there. "A defendant's activities before an actual sale may constitute patent infringement and patentees need not wait until there is an actual sale to sue." *Transocean Offshore Deepwater Drilling, Inc. v. Stena Drilling Ltd.*, 659 F. Supp. 2d 790, 796 (S.D. Tex. 2009).

Here, Creative sent an email to potential customers offering to sell DIAC. Congress addressed this exact scenario when it added the language "offers to sell" to § 271(a) in 1994. "One of the purposes of adding 'offer[ ] to sell' to § 271(a) was to prevent exactly the type of activity [Creative] has engaged in, *i.e.*, generating interest in a potential infringing product to the commercial detriment of the rightful patentee." *3D Sys., Inc. v. Aarotech Labs., Inc.*, 160 F.3d 1373, 1379 (Fed. Cir. 1998). "The [Federal Circuit] noted that the 'prohibition added to § 271(a) would be hollow indeed' if the defendants could make such offers without triggering the statute." *Transocean*, 659 F. Supp. 2d at 797 (quoting *3D Sys.* at 1379).

The evidence is clear, indisputable, and conclusive. Creative contacted potential customers offering to sell DIAC. When asked directly, McNeely conceded that DIAC "is something we definitely want to sell." (SOF ¶ 13.) Furthermore, he testified that the purpose of the email "was to have one of these companies buy DIACtive and use it in a

7

Kercsmar & Feltus PLLC
6263 N. Scottsdale Road, Suite 320
Scottsdale, Arizona 85250
(480) 421-1001

dietary supplement . . . ." (*Id.*) For his part, Cornelius testified, "I felt like [DIAC] meets the criteria of a dietary supplement." (SOF ¶ 28.)[3] Because Creative undeniably offered to sell DIAC as a dietary supplement, Creative infringed on Claim 11 of the '533 Patent and summary judgment is appropriate on ThermoLife's claim under § 271(a).

### B. ThermoLife is Entitled to Summary Judgment on Creative's Defense of Invalidity.

Left with no defense to its infringing conduct, Creative seeks to undermine the '533 Patent by alleging that it is invalid. It is well-settled that "[w]hile a patent is presumed valid, there are four invalidity defenses available to an action for patent infringement. These defenses include (1) invalidity under section 101, 102 or 103 of Part II of Title 35 or (2) invalidity of the patent or any claim in suit for failure to comply with any requirement of Sections 112 or 251 of Title 35 of the United States Code." 96 Am.Jur. Proof of Facts 3d 1 (2007). In its Declaratory Judgment Complaint, Creative asserted all four of the invalidity defenses, providing bare conclusions instead of allegations. (*See* Declaratory Judgment Complaint at ¶¶ 14-16, 31-32.)

In an effort to clarify Creative's claims, ThermoLife issued an Interrogatory requesting that Creative "[i]dentify each and every factual and/or legal contention that supports your contention that the '533 Patent is invalid." (SOF ¶ 29.) Rather than provide a basis under all four statutes identified in the Declaratory Judgment Complaint, Creative's Response focused solely on 35 U.S.C. 102(g)—its claim that Derek Cornelius is a prior inventor on the claims under the '533 Patent:

> Without waiving any of the foregoing objections, Derek Cornelius conceived of diiodothyroacetic acid ("DIAC") as a nutritional supplement, and further as nutritional supplement to promote lean body mass, in the fall of 2000. Mr. Cornelius thereafter communicated

---

[3] Webster's Dictionary defines "dietary supplement" as: "a product taken orally that contains one or more ingredients that are intended to supplement one's diet and are not considered food; specifically according to the Dietary Supplements Health and Education Act: a product other than tobacco that is taken by mouth, that contains one or more vitamins, minerals, herbs or other botanicals, amino acids, substances supplementing the diet by increasing the daily dietary intake, or a concentrate, constituent, metabolite, extract, or combination of these, that is not represented as a food or as constituting a meal or the sole item of the diet, and that contains as part of its labeling the words dietary supplement . . . ."

8

Kercsmar & Feltus PLLC
6263 N. Scottsdale Road, Suite 320
Scottsdale, Arizona 85250
(480) 421-1001

> with Francisco Tabak and Tolbiac SRL about the manufacture and supply of DIAC, with such discussions occurring in and through late fall and early winter of 2000-2001. By approximately the end of February 2001, Mr. Cornelius had received from Francisco Tabak an approximately 5 to 10 gram sample of DIAC. Among others, Mr. Cornelius took doses of DIAC orally as a dietary supplement to test its efficacy to promote lean body mass.

(*Id.*) At Cornelius' deposition, Cornelius relied solely on his own claims that he had conceived of DIAC as a nutritional supplement before the '533 Patent issued to support Creative's claim for patent invalidity. Other than Cornelius' self-serving and unsupported claims, Creative can point to no evidence—let alone clear and convincing evidence—that the '533 Patent is invalid.

### 1. <u>Creative cannot prove by clear and convincing evidence that Derek Cornelius is a prior inventor of the '533 Patent.</u>

As the starting point for any defense of invalidity, "Under the patent statutes, a patent enjoys a presumption of validity . . . which can be overcome only through clear and convincing evidence." *Barr Labs.*, 251 F.3d at 962. Under § 102(g) a patent may be invalidated if "the invention was made in this country by another inventor who had not abandoned, suppressed, or concealed it." 35 U.S.C. § 102(g). "[A] challenger . . . has two ways to prove that it was the prior inventor: (1) it reduced its invention to practice first . . . or (2) it was the first party to conceive of the invention and then exercised reasonable diligence in reducing that invention to practice." *Mycogen Plant Sci., Inc. v. Monsanto Co.*, 243 F.3d 1316, 1332 (Fed. Cir. 2001).

Importantly, "[i]t is well-established in our case law that a party claiming his own prior inventorship must proffer evidence corroborating his testimony." *Sandt Tech., Ltd. v. Resco Metal & Plastics Corp.*, 264 F.3d 1344, 1350 (Fed. Cir. 2001) (citing *Price v. Symsek*, 988 F.2d 1187, 1194 (Fed. Cir. 1993)). "This rule addresses the concern that a party claiming inventorship might be tempted to describe his actions in an unjustifiably self-serving manner in order to obtain a patent or to maintain an existing patent." *Singh v. Brake*, 222 F.3d 1362, 1367 (Fed. Cir. 2000). "It is sufficient to note at this point that

without some type of corroborating evidence, an alleged inventor's testimony cannot satisfy the 'clear and convincing evidence' standard." *Symsek*, 988 F.2d at 1194.

Here, Creative offers only the uncorroborated testimony of Cornelius in support of its claim of prior inventorship. Cornelius claims that he had conceived of DIAC prior to the issuance of the '533 Patent. But in support he discusses tinkering with a sample of DIAC. He kept no records of his "tests." (SOF ¶ 21.) He did not publish any results. He did not contact any patent attorneys. (SOF ¶ 24.) By his own admission, his tests were "subjective" and the results "anecdotal." (SOF ¶¶ 22-26.) Cornelius' testimony cannot form the basis for an invalidity defense and certainly fall woefully short of the clear and convincing standard.

Even looking at the evidence in an unreasonably positive light, Cornelius accomplished neither reduction to practice nor conception of the invention. "The test for establishing reduction to practice requires that "the prior inventor must have (1) constructed an embodiment or performed a process that met all the claim limitations and (2) determined that the invention would work for its intended purpose." *Teva Pharm. Indus. Ltd. v. AstraZeneca Pharms. LP & IPR Pharms., Inc.*, 661 F.3d 1378, 1383 (Fed. Cir. 2011). In working with DIAC, Cornelius concedes that he does not remember the results of his testing other than that he "think[s] people lost a small amount of weight and felt pretty good on it." (SOF ¶ 22.) But Cornelius made no efforts to determine whether the weight loss was attributable to the DIAC or other factors—instead the results were "subjective." (SOF ¶ 23.) Furthermore, Cornelius never determined "whether or not administering DIAC to an individual having a body mass index of at least 25 promoted lean body mass . . . ." (SOF ¶ 27.) Cornelius cannot possibly claim that he had reduced the invention of DIAC to practice or constructed an embodiment that met all claim limitations. Simply put, Cornelius never reduced the invention to practice.

Similarly, Creative cannot demonstrate conception of the invention. "[T]he test for conception is whether the inventor had an idea that was definite and permanent enough

that one skilled in the art could understand the invention; the inventor must prove his conception by corroborating evidence, preferably by showing a contemporaneous disclosure. An idea is definite and permanent when the inventor has a specific, settled idea, a particular solution to the problem at hand, not just a general goal or research plan he hopes to pursue." *Burroughs Wellcome Co. v. Barr Labs., Inc.*, 40 F.3d 1223, 1228 (Fed. Cir. 1994). Here, Cornelius never shared any information related to his testing on DIAC, his testing was "subjective," and his results "anecdotal." As a matter of law, Creative cannot demonstrate conception.

Notably, Creative has tried this exact defense in another case and failed to demonstrate prior inventorship. In *Creative Compounds, LLC v. Starmark Laboratories*, Creative claimed that its patent preceded a competing patent. It "contend[ed] that the '373 Patent [wa]s invalid under § 102(g)(2) because of Creative's prior invention. Creative allege[d] that Cornelius, named inventor on the '273 Patent, conceived the subject matter of the '373 Patent prior to Boldt, named inventor of the '373 Patent. For support, Creative point[ed] to an email order for 'dicreatine malate' placed with Creative's Chinese supplier as evidence of prior conception." 651 F.3d 1303, 1311-12 (Fed. Cir. 2011). In granting summary judgment against Creative, the court held that Creative "simply concluded that this sufficiently demonstrated conception of th[e] compound." *Id*. at 1312. It further held that "Creative failed to submit testimony explaining the significance of this email and whether this reference would constitute conception of subject matter within the scope of even a single claim in the '373 Patent." *Id*. The court concluded that "[i]n the absence of expert testimony, Creative has failed to show how this email raises a genuine issue of material fact that a method of making dicreatine malate would have been a matter of routine knowledge among those skilled in the art." *Id*. Creative has even less evidence here, again no expert testimony, and again its claim of prior inventorship must fail.

Even if Creative could demonstrate that Cornelius was a prior inventor, it is an undeniable fact that Cornelius either abandoned the invention or never pursued it at all. "[T]he correct statement of the law is that the party claiming anticipation under § 102(g) must show by clear and convincing evidence prior invention *and* that the invention was not abandoned, suppressed or concealed." *Oak Indus., Inc. v. Zenith Elecs. Corp.*, 726 F. Supp. 1525, 1531 (N.D. Ill. 1989) (emphasis in original). "A court may find that an invention was abandoned, suppressed or concealed if within a reasonable time after the invention was reduced to practice the inventor took *no* steps to make the invention publicly known. Factors supporting a finding of abandonment, concealment or suppression include not filing a patent application, not publicly disseminating documents describing the invention, and not publicly using the invention." *Id.* at 1533 (N.D. Ill. 1989) (emphasis in original); *see also Int'l Glass Co. v. U. S.*, 408 F.2d 395, 403 (Ct. Cl. 1969) ("The courts have consistently held that an invention, though completed, is deemed abandoned, suppressed, or concealed if, within a reasonable time after completion, no steps are taken to make the invention publicly known.").

Cornelius took no steps to make his "invention" of DIAC known. Instead, Creative simply asserts these facts now in order to excuse its infringing conduct. Once again, Creative has employed this strategy in the past. In the *Starmark* case, the court held, "Even if Creative raised a genuine issue of material fact as to conception, which it did not, Creative's bald assertion that Cornelius was 'diligent' during the intervening eighteen months between conception and Creative's first reduction to practice fails to raise a genuine issue of material fact as to diligence—a required element of Creative's § 102(g) defense. Merely asserting diligence is not enough; a party must 'account for the entire period during which diligence is required.'" *Starmark Labs.*, 651 F.3d at 1312-13 (quoting *Gould v. Schawlow*, 53 CCPA 1403, 363 F.2d 908, 919 (1966)).

In order to prevail on a defense of invalidity, Creative is required to show by clear and convincing evidence that it is the prior inventor and that it did not abandon or conceal

12

the invention. Creative fails on both counts and the Court should grant summary judgment in favor of ThermoLife.

### 2. **Creative cannot point to any evidence establishing a defense for invalidity of the '533 Patent under §§ 101, 103, or 112.**

In its vain attempt to defend its tortious conduct, Creative listed all four grounds for the invalidity of the '533 Patent—35 U.S.C. §§ 101, 102, 103, and/or 112. (Complaint at ¶ 32.) But Creative has produced no evidence whatsoever related to sections 101, 103, or 112. "Section 101 of the Patent Act of 1952, 35 U.S.C. § 101, provides that '[w]hoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof,' may obtain a patent on the invention or discovery. The threshold of utility is not high: An invention is 'useful' under section 101 if it is capable of providing some identifiable benefit." *Juicy Whip, Inc. v. Orange Bang, Inc.*, 185 F.3d 1364, 1366 (Fed. Cir. 1999). Creative cannot point to any evidence—let alone clear and convincing evidence—suggesting that the '533 Patent is not useful or capable of providing an identifiable benefit. To the contrary, Creative has offered to sell DIAC, essentially conceding its usefulness.

"Under s[ection] 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. Against this background, the obviousness or nonobviousness of the subject matter is determined." *Graham v. John Deere Co. of Kansas City*, 383 U.S. 1, 17, 86 S. Ct. 684, 694 (1966). Again, Creative fails to produce clear and convincing evidence that the '533 Patent fails for obviousness. Creative has produced no prior art whatsoever and the evidence suggests that Cornelius, someone trained in the pertinent art, was never able to reduce the invention to practice.

Section 112 requires that "[t]he specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or

Kercsmar & Feltus PLLC
6263 N. Scottsdale Road, Suite 320
Scottsdale, Arizona 85250
(480) 421-1001

with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor or joint inventor of carrying out the invention." 35 U.S.C.A. § 112(a). Creative has not disclosed any witnesses or any evidence related to the written description of the '533 Patent or whether it violates the "best mode" provision of the statute. Indeed, any testimony on these points would need to come from an expert and Creative has not disclosed one here.

In summary, Creative has simply listed every possible grounds for invalidating the '533 Patent without any good faith or evidentiary basis. In order to invalidate the '533 Patent under §§ 101, 103, or 112, Creative must present clear and convincing evidence. Creative cannot produce any evidence whatsoever and its defenses of invalidity pursuant to 35 U.S.C. §§ 101, 103, and 112 must fail.

### 3. Claims 1-10 in the '533 Patent Are Not at Issue.

On a final note, and out of an abundance of caution, ThermoLife is entitled to judgment as a matter of law holding that Claims 1-10 in the '533 Patent are not at issue. While Creative's interrogatory responses appear to suggest that Cornelius' work should invalidate the '533 Patent in its entirety (SOF ¶ 29), Claims 1-10 relate to "a method of promoting lean body mass in human individuals having a body mass index of at least 25, comprising directly administering to the individual an effective amount of diiodothyroacetic acid." (SOF ¶ 7.) Cornelius concedes that he never determined "whether or not administering DIAC to an individual having a body mass index of at least 25 promoted lean body mass . . . ." (SOF ¶ 28.) Even if the Court determines that some factual dispute remains regarding invalidity, that dispute extends only to Claims 11-13 of the '533 Patent, not Claims 1-10. As a matter of law, Claims 1-10 are not implicated in Creative's defense and must survive intact regardless of the determination of the other issues in the litigation.

## V. CONCLUSION

Creative has offered to sell a product that infringes the '533 Patent. Creative's on-

14

ly excuse is its claims that Derek Cornelius tinkered with DIAC at some point prior to the issuance of the patent. But Creative's claims fall woefully short of clear and convincing evidence of prior inventorship. Cornelius' testimony shows that he conducted "subjective" experiments that lead to "anecdotal" results. He never pursued his alleged "invention" after his superficial experimentation. Yet somehow, those experiments provide the foundation of Creative's entire defense. No reasonable jury could find that Creative's defense provides clear and convincing evidence of prior inventorship. ThermoLife is entitled to judgment as a matter of law that Creative infringed the '533 Patent and has no defense for doing so.

RESPECTFULLY SUBMITTED this 11th day of March, 2013.

KERCSMAR & FELTUS PLLC

By *s/ Gregory B. Collins*
Gregory B. Collins
6263 North Scottsdale Road, Suite 320
Scottsdale, Arizona 85250
*Attorneys for Plaintiffs Ron Kramer, Sal Abraham, and ThermoLife International LLC*

## **CERTIFICATE OF SERVICE**

I certify that on March 11, 2013, I electronically transmitted the foregoing to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following.

Thomas DeGroot
LAW OFFICES OF THOMAS DEGROOT, LLC
7733 Forsyth Blvd., Suite 1100
St. Louis, MO 63105
tom@degrootlaw.net
*Attorney for Defendant Creative Compounds, LLC*


Maria Crimi Speth
Adam S. Kunz
JABURG & WILK, P.C.
3200 N. Central Avenue, Suite 2000
Phoenix, Arizona 85012
mcs@jaburgwilk.com
ask@jaburgwilk.com
*Attorneys for Creative Compounds, LLC*


 *s/ Gregory B. Collins*