**Thomas DeGroot (admitted *pro hac*)**
**LAW OFFICES OF THOMAS DEGROOT, LLC**
7733 Forsyth Blvd.
Suite 1100
Saint Louis, MO 63105
Telephone: (314) 296-6070
Facsimile: (314) 296-6001
tom@degrootlaw.net

**Maria Crimi Speth (012574)**
**Adam S. Kunz (018827)**
**Jaburg & Wilk, P.C.**
3200 N. Central Ave., Suite 2000
Phoenix, AZ 85012
mcs@jaburgwilk.com

Attorneys for Defendant Creative Compounds, LLC

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ron Kramer, an Arizona resident; Sal Abraham, a Florida resident; ThermoLife International LLC, an Arizona limited liability company, <br><br> Plaintiffs, <br><br> v. <br><br> Creative Compounds LLC, a Nevada limited liability company, <br><br> Defendant. | Case No. 2:11-cv-1965-PHX-JAT (Lead) <br> 2:11-cv-2033-PHX-JAT (Cons) <br><br> **DEFENDANT CREATIVE COMPOUNDS LLC'S MOTION FOR SUMMARY JUDGMENT ON THE INVALIDITY OF PLAINTIFFS' PATENT AND MEMORANDUM IN SUPPORT .** |
| Creative Compounds LLC, a Nevada limited liability company, <br><br> Plaintiff, <br><br> v. <br><br> Ron Kramer, an Arizona resident; and Sal Abraham, a Florida resident, <br><br> Defendants. | |

Defendant, Creative Compounds, LLC ("Creative") respectfully moves this

Court for an order granting summary judgment on the invalidity of Court for its

Order granting summary judgment in favor of Creative and holding that claim 11 of United States Patent No. 7,919,533 (the "'533 Patent") is invalid because the undisputed material facts clearly and convincingly show that the subject of the patent was in use in this country and offered for sale in this country more than one year prior to the patent application. This Motion is supported by the following Memorandum in Support, the Statement of Undisputed Facts, and the Courts record in this matter.

**MEMORANDUM IN SUPPORT**

I.   **BACKGROUND**

This case springs from efforts by participants in the nutrition and dietary supplement industry to find a substitute for triiodothyroacetic acid ("TRIAC'), a nutritional supplement marketed for protecting lean muscle mass while promoting fat loss. In 2000, Derek Cornelius ("Cornelius"), currently a consultant to Creative, owned and operated Syntrax Innovations, Inc. ("Syntrax"). Among other things, Syntrax marketed "Triax," a nutritional supplement in the fat-burning category that contained triiodothyroacetic acid ("TRIAC"). TRIAC is a metabolite of T3 or triiodothyronine, a human thyroid hormone. Syntrax also marketed Triax for protecting lean body mass while promoting fat loss. Exhibit A, Deposition of Derek Cornelius, at 37:9-38:2, 64:4-22[1].

---

[1] The exhibits referenced herein are attached to Creative's Statement of Undisputed Material Facts, filed herewith.

2

In 2000, the Food and Drug Administration (the "FDA") determined that TRIAC was not appropriate for use in dietary supplements and Syntrax quit selling it. Exhibit A, at 38:10-39:16. The FDA's decision drove Cornelius and one of the Plaintiffs, Ron Kramer, to each seek a replacement for TRIAC. Ex. A. at 9:24-10:5, 42:23; Ex. G, Deposition of Ron Kramer, at 101:16-102:5. They both landed on the same solution: diiodothyroacetic acid ("DIAC").

Derek Cornelius and Syntrax arrived at the decision to use DIAC as a dietary supplement to replace TRIAC by October 2000. Indeed, by the spring of 2001, Cornelius had received in the United States a sample of DIAC from Syntrax' Argentinian supplier, Francisco Tabak[2]. Ex. A, at 45:14-50:13; Ex. D, Deposition of Richard Nixon, at 8:21-9:12, 13:8-17:12, 18:20-20:2. He and other employees of Syntrax thereafter tested DIAC for efficacy and safety, but mostly to discern whether it worked the same as, and felt similar to, TRIAC when consumed. Ex. A, at 52:5-61:18; 65:13-72:13, Ex. E, Deposition of Brenda Nixon, at 10:17-16:14. Mr. Tabak offered to sell DIAC to Syntrax at prices similar to what he had charged for TRIAC. Ex. A 3-11, 160:1-162:2; *see also* Ex. B (email from Cornelius to Tabak, dated October 24, 2000); Ex. C (email from Tabak to Cornelius, dated October 25, 2001).

Because TRIAC was a very successful product, Syntrax was eager to assure

---

[2] Mr. Tabak's company, Tolbiac S.L.R., supplied the TRIAC previously used by Syntrax.

3

its customers and distributors that it had a replacement product.  Through postings on its website and communications from its employees to its customers and distributors, Syntrax made publicly available information that DIAC was a dietary supplement that would replace TRIAC as a product for fat loss.  See Ex. A, at 51:1-52:1, 75:4-76:17; Ex. E, at 19:20-25:13, 27:10-28:16.  Syntrax employees were not bound by any confidentiality agreements regarding DIAC and there were no restrictions on what they could say about DIAC.  Ex. A, at 162:3-17.  Eventually, Syntrax decided not to move forward with selling DIAC because of the stress and risks of dealing with the FDA on compliance issues.  Exhibit A, at 83:18-85:2.

Almost two years after Cornelius and Syntrax had used DIAC in this country and made public information about its use as a dietary supplement, Plaintiff Ron Kramer finally conceived of using DIAC as a dietary supplement to replace TRIAC.  Ex. G, at 101:16-104:5.

On October 20, 2004, almost four years after Tabak offered to sell DIAC to Syntrax for use for nutritional purposes, Plaintiffs Ron Kramer and Sal Abraham filed a patent application claiming diiodothyroacetic acid.  *See* Ex. F.  The "'533 Patent" issued on April 5, 2011.  Claim 11 of the '533 Patent claims: "A dietary supplement comprising diiodothyroacetic acid."  Exhibit F, at col. 6, lines 17-18. Claim 11 is the only claim that Plaintiffs contend Defendant has infringed.  *See* Dk. 51 at 8.  Plaintiffs expressly disclaim that claims 1-10 of the '533 Patent are at issue in this matter.  *See* Dk. 51, at 14.

On September 22, 2011, Creative sent out a targeted email marketing DIAC to eleven potential customers. Dk. 52, at ¶ 11. Plaintiffs thereafter initiated this action for patent infringement. Among its defenses, Creative has alleged that the '533 Patent was invalid for failing to meet one of more of the requirements of 35 U.S.C. §§ 101, 102, 103, and 112. Dk. 11, at Affirmative Defenses ¶ 2.

Because the undisputed material facts clearly and convincingly show that (a) public use of DIAC as a dietary supplement was made more than one year prior to the invention thereof by Kramer and Abraham, and (b) DIAC was offered for sale in this country as a nutritional supplement more than one year prior to the date of the application for the '533 Patent, Creative moves for summary judgment under 35 U.S.C. §§ 102 (a) and (b) that the '533 Patent is invalid.

## II. ARGUMENT

### A. The Standard for Summary Judgment

Summary Judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 247 (1986); Fed.R.Civ.P 56(a). Patents are presumed valid and invalidity must be proven by clear and convincing evidence. *Microsoft Corp. v. i4i Ltd. P'ship*, --U.S.--, 131 S.Ct. 2238, 2242, 180 L.Ed.2d 131 (2011). However, "a district court can properly grant, as a matter of law, a motion for summary judgment on patent invalidity when the factual inquiries . . . present no genuine issue of material facts." *OSRAM Sylvania, Inc. v. American*

5

*Induction Technologies, Inc.*, 701 F.3d 698, 704 (Fed. Cir. 2012).

**B.   Because Syntrax Made Public Use in This Country of the Claimed Invention More Than One Year Before Plaintiffs' Claimed Invention, Claim 11 of the '533 Patent is Invalid Under 35 U.S.C. § 102 (a).**

An invention consists of two parts: conception and reduction to practice. *Alcott Research Ltd., v. Barr Laboratories, Inc.*, 837 F.Supp2d 364, 387 (D. Del. 2011). "Conception is complete only when the idea is so clearly defined in the inventor's mind that only ordinary skill would be necessary to reduce the invention to practice, without extensive research and experimentation." *Burroughs Wellcome Co. v. Barr Laboratories, Inc.*, 40 F.3d 1223, 1228 (Fed. Cir. 1994). "An idea is definite and permanent when the inventor has a specific, settled idea, a particular solution to the problem at hand, not just a general goal or research plan he hopes to pursue." *Id; Preston v. Marathon Oil Co.,* 684 F.3d 1276, 1287 (Fed. Cir. 2012). Here, plaintiff Ron Kramer ("Kramer") unequivocally testified that the idea disclosed in the '533 Patent did not coalesce into something that one of ordinary skill would be able to reduce to practice until after his agreement with plaintiff Sal Abraham ("Abraham") in early 2003. Ex. G, at 102:24-104:5. Claim 11, a dietary supplement comprising DIAC, was something that Kramer came up with after he started working with Abraham. Ex G, at 109:10-19. Plaintiffs thereafter reduced to practice their claimed invention shortly before they filed their patent application in October 2004. Ex. G, at 104:19-23. For purposes of a § 102 (a) analysis, since Plaintiffs did not even conceive of the claimed invention until sometime in 2003,

the critical date can be no earlier than early 2002. The undisputed evidence, however, shows that Syntrax made public use in this country of DIAC as a dietary supplement no later than March 2001.

> (a) the invention was known or used by others in this country, or patented or described in a printed publication in this or a foreign country, before the invention thereof by the applicant for patent, . . .

35 U.S.C. § 102(a). "The statutory language, 'known or used by others in this country' (35 U.S.C. § 102(a)), means knowledge or use which is accessible to the public." *Carella v. Starlight Archery and Pro Line Co.*, 804 F.2d 135, 139 (Fed. Cir. 1986). There exists, however, an exception to the public use limitation on patentability known as the experimental use doctrine. "The experimental use doctrine operates in the inventor's favor to allow *the inventor* to refine his invention or to assess its value relative to the time and expense of prosecuting a patent application." *Baxter International, Inc., v. COBE Laboratories, Inc.*, 88 F.3d 1054, 1060 (Fed. Cir. 1996) (italics original). "If it is not the inventor or someone under his control or 'surveillance' who does these things, there appears to us no reason why he should be entitled to rely upon them to avoid the statute." *Id*. Public testing before the critical date by a third party for his own unique purposes of an invention previously reduced to practice and obtained from someone other than the patentee, when such testing is independent of an not controlled by the patentee, is an invalidating public use, not an experimental use. *Id* at 1060-1061. Indeed,

public use "includes any use of the claimed invention by a person other than the inventor who is under no limitation, restriction or obligation of secrecy to the inventor." *Minnesota Min. & Mfg. Co. v. Cheque, Inc.*, 303 F.3d 1294, 1301 (Fed. Cir. 2002); *Eolas Technologies, Inc. v. Microsoft Corp.*, 399 F.3d 1325 (Fed. Cir. 2005). Even a single public use is sufficient to invalidate a patent. *Taussig v. Jack & Jill One Hour Cleaners, No. 12, Inc.,* 462 F. Supp. 1026, 1038 (N.D. Ohio 1978).

Here, the patentees and claimed inventors are Kramer and Abraham. The undisputed evidence clearly and convincingly proves that Cornelius and other employees of Syntrax obtained DIAC from Tabak in early 2001, tested it for use as a dietary supplement in early 2001 and publicly disclosed to others, including distributors and customers that DIAC was going to replace TRIAC as a dietary supplement for fat loss. At that time, Syntrax was itself a member of the public as were its employees, its customers, and its distributors. *In re Caveney*, 761 F.2d 671, 676 (Fed. Cir. 1985) (the public is not limited to potential users, separate entities, like [Syntrax in this case], that are in the business of selling to potential users are also members of the trade in that product). Further, Syntrax and its employess owed no obligations of confidentiality to Kramer and Abraham. Clearly, the use by Syntrax of DIAC constituted a public use of the invention described in claim 11 of the '533 Patent. And, that public use was more than one year before the patentees even conceived, much less invented, DIAC as a dietary supplement. Syntrax' decision not to thereafter move forward with its plan to

market DIAC as a dietary supplement is of no consequence. *Eolas Technologies, Inc. v. Microsoft Corp.*, 399 F.3d 1325, 1334 (Fed. Cir. 2005) ("Notwithstanding abandonment of the prior use--which may preclude a challenge under section 102(g)--prior knowledge of use by others may invalidate a patent under section 102(a) if the prior knowledge or use was accessible to the public.")[3]

Creative has demonstrated by undisputed, clear and convincing evidence that the invention claimed by claim 11 of the '533 Patent ([a] dietary supplement comprising diiodothyroacetic acid) was in public use in this country more than one year before the invention of it by the patentees.  Summary judgment should, therefore, be granted in favor of Creative on the grounds that the '533 Patent is invalid under section 102(a).[4]

**C.     Because DIAC as a Dietary Supplement Was Offered For Sale In This Country More Than One Year Prior to the Date of Plaintiffs' Application, Claim 11 of the '533 Patent is Invalid Under 35 U.S.C. § 102 (a).**

Section 102(b) renders invalid any patent for an invention when the invention has been on sale in this country more than one year prior to the date of the application for the patent.  *See* 15 U.S.C. § 102 (b).  "The 'on-sale bar' does not require sustained commercial activity, advertising, or displays.  On the contrary, a

---

[3] Such third party prior use accessible to the public is also a bar under section 102(b).

[4] Similarly, claim 11 of the '533 Patent is also invalid under section 102(b) because the claimed invention was in public use in this country more than one year prior to date of the application that matured into the '533 Patent.

9

single sale or even a single offer to sell is sufficient to trigger the statutory bar. Moreover, the sale or offer for sale need not be made by the inventor or by the patent owner. A sale or offer for sale by a third party is just as effective a bar as a sale or offer by the inventor." *In re Terazosin Hydrochloride Antitrust Litigation*, 352 F.Supp.2d 1279, 1304 (S.D. Fla. 2005)(internal citations omitted). Furthermore, an offer to sell made by a foreign company directed to a company located in this country constitutes an offer to sell that falls within the on-sale bar. *In re Caveney*, 761 F.2d 671, 676-77 (Fed. Cir. 1985); *Link Treasure Ltd. v. Baby Trend, Inc.*, 809 F.Supp.1191 (C.D. Ca. 2011).

Here, the undisputed evidence is that in October 2000, Tabak and his company offered to sell to Syntrax DIAC at a price similar to what had been charged for TRIAC and under the terms outlined in Tabak's email of October 25, 2000. Cornelius understood Tabak's offer to be one he could accept for the sale of DIAC. Clearly and convincingly, Creative has proved that DIAC, as claimed in claim 11 of the '533 Patent was offered for sale in this country more than one year prior to the application for the patent. Summary judgment should, therefore, be granted in favor of Creative on the grounds that the '533 Patent is invalid under section 102(b).

## II. CONCLUSION

Because the undisputed material facts clearly and convincingly show that (1) DIAC as a dietary supplement was in use in this country more than one year before

the invention of it by the Plaintiff patentees, and (2) DIAC was offered for sale in this country more than one year prior to the application for the '533 Patent, the Court should hold, as a matter of law, that claim 11 of the '533 Patent is invalid and grant summary judgment in favor of Creative.

Dated:  March 27, 2013         /s/ Thomas DeGroot
Thomas J. DeGroot (admitted *pro hac vice*)
LAW OFFICES OF THOMAS DEGROOT, LLC
7733 Forsyth Blvd.
Suite 1100
Saint Louis, MO 63105
314-296-6070
314-296-6001 (fax)
tom@degrootlaw.com

Maria Crimi Speth
Adam S. Kunz
Jaburg & Wilk, P.C.
3200 N. Central Ave., Suite 2000
Phoenix, AZ 85012

## CERTIFICATE OF SERVICE

I hereby certify that on March 27, 2013, I electronically transmitted the foregoing to the Clerk's office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following:

Gregory B. Collins (#023158)
Jenessa G. B. Coccaro (#027090)
KERCSMAR & FELTUS PLLC
6263 North Scottsdale Road, Suite 320
Scottsdale, Arizona 85250
Telephone: (480) 421-1001
Facsimile: (480) 421-1002
gbc@kflawaz.com
jbc@kflawaz.com
Counsel for Defendant

By /s/Debra Gower

Law Offices of Thomas DeGroot, LLC
7733 Forsyth Blvd., Suite 1100
Saint Louis, MO 63105
(314) 296-6070