**Thomas DeGroot (admitted *pro hac*)**
**LAW OFFICES OF THOMAS DEGROOT, LLC**
**7733 Forsyth Blvd.**
**Suite 1100**
**Saint Louis, MO 63105**
**Telephone: (314) 296-6070**
**Facsimile: (314) 296-6001**
**tom@degrootlaw.net**

**Maria Crimi Speth (012574)**
**Adam S. Kunz (018827)**
**Jaburg & Wilk, P.C.**
**3200 N. Central Ave., Suite 2000**
**Phoenix, AZ 85012**

**Attorneys for Defendant Creative Compounds, LLC**

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ron Kramer, an Arizona resident; Sal Abraham, a Florida resident; ThermoLife International LLC, an Arizona limited liability company,<br><br>Plaintiffs,<br><br>v.<br><br>Creative Compounds LLC, a Nevada limited liability company,<br><br>Defendant. | Case No. 2:11-cv-1965-PHX-JAT (Lead)<br>2:11-cv-2033-PHX-JAT (Cons)<br><br>**DEFENDANT CREATIVE COMPOUNDS LLC'S STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT ON THE INVALIDITY OF PLAINTIFFS' PATENT.** |
| Creative Compounds LLC, a Nevada limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>Ron Kramer, an Arizona resident; and Sal Abraham, a Florida resident,<br><br>Defendants. | |

1. Derek Cornelius ("Cornelius") holds a degree in biology from Loyola University. In 1998, he formed Syntrax Innovations, Inc. ("Syntrax"), located in Cape Girardeau, Missouri. Syntrax was actively involved in the manufacture, marketing, and

1

distribution of nutrition and dietary supplements. *See* Deposition of Derek Cornelius, attached hereto as Exhibit A, at 14:20-15:8; 18:20-22; 23:12-25; 36:20-37:2.

2. Among other things, Syntrax marketed "Triax," a nutritional supplement in the fat-burning category that contained triiodothyroacetic acid ("TRIAC"). TRIAC is a metabolite of T3 or triiodothyronine, a human thyroid hormone. Exhibit A, at 37:9-38:2. Syntrax also marketed Triax for protecting lean body mass while promoting fat loss. Exhibit A, at 64:4-4.

3. Syntrax sourced the TRIAC used in Triax from Francisco Tabak and Mr. Tabak's company, Tolbiac S.R.L. (collectively "Tabak"). Exhibit A, at 39:17-20. Syntrax also sourced T2, another thyroid metabolite from Tabak, for sale in a different fat-burner product, Lipokinetix. Exhibit A, at 40:5-18

4. In 2000, the Food and Drug Administration (the "FDA") determined that TRIAC was not appropriate for use in dietary supplements and Syntrax quit selling Triax. Exhibit A, at 38:10-39:16.

5. As part of his initial research on TRIAC, or in looking for a suitable replacement for TRIAC, Cornelius became familiar with diiodothyroacetic acid ("DIAC"). Exhibit A, at 9:24-10:5; 44:12-45:13. Cornelius decided to use DIAC as a replacement for TRIAC. Exhibit A, at 42:23-44:11.

6. During the fall of 2000, Cornelius discussed sourcing DIAC from Tabak as a replacement for TRIAC. When he started having discussions with Tabak about DIAC, Cornelius received assurances that DIAC's price range would be similar to the price for T2 and TRIAC. Exhibit A, at 160:1-13.

2

7. On October 24, 2000, Cornelius emailed Tabak, stating:

> As per our conversation and to reiterate what we talked about before, I would like an exclusive on the DIAC for nutritional purposes to be sold in the U.S.

*See* email from Cornelius to Tabak, dated October 24, 2000, attached hereto as Exhibit B; Exhibit A, at 138:3-11.

8. On October 25, 2000, Tabak offered to give Cornelius an exclusive for the supply of DIAC that, among other things, would be "restricted to Diac used for nutritional purposes in the U.S." *See* email from Tabak to Cornelius, dated October 25, 2000, attached hereto as Exhibit C; Exhibit A, at 160:14-161:17

9. Cornelius understood Tabak's email to constitute an "offering to basically sell this to me under these terms and with a price range that we talked about previously" Tabak's offer was one that Cornelius was willing to accept. Exhibit A, at 161:18-162:2.

10. Richard Nixon worked as the shipping manager at Syntrax from 1999 to the last part of 2002, where he oversaw all incoming and outgoing shipments for the company. *See* Deposition of Richard Nixon, attached hereto as Exhibit D, at 8:21-9:12.

11. Brenda Nixon started at Syntrax in March 1999 as a marketing manager. *See* Deposition of Brenda Nixon, attached hereto as Exhibit E, at 7:14-8:1. She left Syntrax in March 2001 due to a falling out with Cornelius. Exhibit E, at 19:8-12; 25:14-26:13.

12. Richard Nixon first heard of DIAC in late 2000 or early 2001 as a replacement fat-burner product. Exhibit D, at 13:8-14:21.

13. In late 2000 or early 2001, Syntrax received a sample of DIAC from Tabak.

3

The box containing the sample came from Tolbiac S.R.L. and was labeled diiodothyroacetic acid. The sample of DIAC was in a vial about 4 or 5 inches long that contained 10-20 grams of white powder. Exhibit A, at 45:14-50:13; Exhibit D, at 14:22-17:12; 18:20-20:2, Exhibit E, at 9:22-10:19.

14. Because Triax was a "good seller" for Syntrax, people in the office were pretty excited when Cornelius obtained the sample of DIAC; "this was--had a good opportunity or good chance of being a replacement for [TRIAC] and TRIAC had a very -- even a strong following in our office." Exhibit A, at 51:1-52:1.

15. After he received the sample of DIAC, Cornelius tested the DIAC on himself and eventually four or five others for marketing purposes, and determined that it was going to be a good replacement for TRIAC. Exhibit A, at 52:5-61:18; 65:13-72:13; Exhibit E, at 10:17-16:14.

16. With respect to the testing on DIAC, Syntrax employees did not have any secrecy agreements. They did not have any confidentiality agreements; there was nothing in place to keep them from disclosing to anybody else the existence of DIAC or what the company was going to do with it. When an employee left the company, no steps were taken to impose any restrictions on what they said about DIAC. Exhibit A, at 162:3-17.

17. Because many people were interested in what Syntrax would use to replace TRIAC, Cornelius posted discussions about DIAC on Syntrax's internet message board. Exhibit A, at 75:4-76:17. In addition to posting discussions about DIAC on the internet and disclosing information to employees, Cornelius told friends about the product. He specifically recalls telling Patrick Wong, a customer living in St. Louis, about DIAC. He

4

shared the name of the product, that it was very similar to TRIAC, and that it felt like it worked equivalently to TRIAC. Exhibit A, at 128:16-132:19.

18.   While working at Syntrax, Brenda Nixon told distributors and customers that Syntrax was going to use DIAC to replace TRIAC. Mrs. Nixon specifically recalled having such conversations with distributors with whom she communicated on a regular basis, such as John at J and G Supplements in Pennsylvania; and Kim at Kim and Jack in Florida. She also discussed DIAC with family members. Exhibit E, at 19:20-25:13. In conversations with distributors and others, Brenda Nixon specifically used the term diiodothyroacetic acid. She also specifically told them and family members that the plan was to sell DIAC as a nutritional supplement to take the place of TRIAC as a metabolic regulator or a way to lose fat. Exhibit E, at 27:10-28:16.

19.   When Syntrax was testing DIAC and discussing it within the company and with family friends, customers, and distributors, it had no confidentiality agreements with any of the Plaintiffs and did not owe them any obligations to keep confidential information about DIAC. Exhibit A, at 162:18-163:10.

20.   Eventually, Syntrax decided not to move forward with selling DIAC because of the stress and risks of dealing with the FDA on compliance issues. Exhibit A, at 83:18-85:2.

21.   United States Patent No. 7,919,533 (the '533 Patent) issued on April 5, 2011. Claim 11 of the '533 Patent claims: "A dietary supplement comprising diiodothyroacetic acid." *See*, the '533 Patent, attached hereto as Exhibit F, at col. 6, lines 17-18. Claim 11 is the only claim that Plaintiffs contend Defendant has infringed. *See*

Dk. 51 at 8. Plaintiffs expressly disclaims that claims 1-10 of the '533 Patent are at issue in this matter. *See* Dk. 51, at 14.

22. Ron Kramer did not conceive of the invention disclosed in the '533 Patent until after he and Sal Abraham got together in early 2003 to work on possible alternatives to TRIAC. *See* Deposition of Ron Kramer, attached hereto as Exhibit G, at 101:16-104:5.

23. The application that resulted in issuance of the '533 Patent was filed on October 24, 2004. Exhibit F, at page 1.

Dated: March 27, 2013         /s/ Thomas DeGroot
Thomas J. DeGroot (admitted *pro hac vice*)
LAW OFFICES OF THOMAS DEGROOT, LLC
7733 Forsyth Blvd.
Suite 1100
Saint Louis, MO 63105
314-296-6070
314-296-6001 (fax)
tom@degrootlaw.com

Maria Crimi Speth
Adam S. Kunz
Jaburg & Wilk, P.C.
3200 N. Central Ave., Suite 2000
Phoenix, AZ 85012

**CERTIFICATE OF SERVICE**

    I hereby certify that on March 27, 2013, I electronically transmitted the foregoing to the Clerk's office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following:

Gregory B. Collins (#023158)
Jenessa G. B. Coccaro (#027090)
KERCSMAR & FELTUS PLLC
6263 North Scottsdale Road, Suite 320
Scottsdale, Arizona 85250
Telephone: (480) 421-1001
Facsimile: (480) 421-1002
gbc@kflawaz.com
jbc@kflawaz.com
Counsel for Defendant

By: /s/Debra Gower

Law Offices of Thomas DeGroot, LLC
7733 Forsyth Blvd., Suite 1100
Saint Louis, MO 63105
(314) 296-6070