Gregory B. Collins (#023158)
Eric B. Hull (#023934)
KERCSMAR & FELTUS PLLC
6263 North Scottsdale Road, Suite 320
Scottsdale, Arizona 85250
Telephone: (480) 421-1001
Facsimile: (480) 421-1002
gbc@kflawaz.com
ebh@kflawaz.com

Attorneys for Plaintiffs Ron Kramer, Sal Abraham, and ThermoLife International LLC

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ron Kramer, an Arizona resident; Sal Abraham, a Florida resident; ThermoLife International LLC, an Arizona limited liability company,<br><br>Plaintiffs,<br><br>v.<br><br>Creative Compounds LLC, a Nevada limited liability company,<br><br>Defendant.<br><br>Creative Compounds LLC, a Nevada limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>Ron Kramer, an Arizona resident; and Sal Abraham, a Florida resident,<br><br>Defendants. | Case No. 2:11-cv-01965-PHX-JAT (Lead)<br>2:11-cv-02033-PHX-JAT (Cons)<br><br>**PLAINTIFFS' RESPONSE TO CREATIVE COMPOUNDS' MOTION FOR SUMMARY JUDGMENT**<br><br>-AND-<br><br>**CROSS-MOTION FOR SUMMARY JUDGMENT ON CREATIVE'S NEWLY ASSERTED DEFENSE OF INVALIDITY PURSUANT TO §§ 102(a) AND (b)** |

Plaintiffs Ron Kramer, Sal Abraham and ThermoLife International, LLC (collectively, "Plaintiffs" or "ThermoLife"), hereby respond to the Motion for Summary Judgment on the Invalidity of Claim 11 of Plaintiffs' Patent ("Creative's MSJ") filed by Defendant Creative Compounds, LLC ("Creative"). As fully explained below, Creative falls

1

woefully short of the clear and convincing evidence standard required to invalidate a patent. Instead, as explained in ThermoLife's Motion for Summary Judgment on Defendant's Declaratory Judgment Complaint and Plaintiffs' Claim for Patent Infringement ("ThermoLife's MSJ"), ThermoLife is entitled to judgment as a matter of law on the validity of the patent. Accordingly, and to the extent that ThermoLife's MSJ does not wholly dispose of the issues (and it does),[1] Plaintiffs cross-move for summary judgment on Creative's invalidity defense for prior use and prior sale. This motion is supported by the separately filed Response to Creative's Statement of Facts, ("R-SOF") and the following Memorandum of Points and Authorities. In addition, ThermoLife incorporates its own MSJ and Statement of Facts ("T-SOF") by reference as if fully stated herein.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.     INTRODUCTION

Substantial case law has addressed the high standard to invalidate an existing patent. Invalidation requires clear and convincing evidence. Oral testimony must be corroborated by documentary evidence. And, critical to the instant motion, when a party claims invalidation based on prior use or sale, it requires reduction to practice of the patented invention. Each of these principles makes perfect sense. Patent protection would be meaningless if an infringer could swear that it tested a component of the invention and thereby eliminate any liability.

Yet that is exactly what Creative asserts in its MSJ. As demonstrated in ThermoLife's MSJ and as conceded in Creative's Response, Creative infringed United States Patent No. 7,919,533 (the "'533 Patent") as a matter of law. Creative's only

---

[1] Plaintiffs moved for summary judgment on all claims asserted by Creative Compounds, LLC ("Creative") in its Declaratory Judgment Complaint. (Dkt. #51.) Plaintiffs' motion for summary judgment analyzed in detail the arguments that Creative had disclosed for invalidating the patent at issue. In an effort to manufacture a remaining issue, Creative claims that ThermoLife got it all wrong in concluding that Creative relied on a claim of prior inventorship under § 102(g). Creative argues instead that what it really meant was that it had a defense under § 102(a) and (b) for prior use or sale. In an abundance of caution, Plaintiffs have cross-moved here for summary judgment on this undisclosed ground, despite that ThermoLife has already moved for summary judgment on Creative's Declaratory Judgment Complaint *in toto*.

defense is its insistence that that the '533 Patent is invalid. Despite a paucity of evidence, Creative now asserts that it can establish clear and convincing evidence of prior use or sale. In support, Creative relies solely on Cornelius' testimony regarding his "subjective" tests and "anecdotal" results. In other words, Creative has no evidence that Cornelius' tests ever established that DIAC did anything at all. Even Cornelius concedes as much, conceding he cannot remember the results of the testing other than that he "think[s] people lost a small amount of weight and felt pretty good on it." (T-SOF ¶ 22.) Creative does not even have one document supporting prior use. No journals or records of the tests. No emails regarding Cornelius' findings. No emails to customers. No formulation of a potential product. No studies of DIAC's effects. No contact with a patent attorney. Nothing.

Creative offers only Cornelius' testimony that once upon a time, roughly a decade or so ago, he and some co-workers ingested the substance DIAC and "felt pretty good on it." Essentially, Creative's argument is that Cornelius once ate DIAC and felt fine so this Court should invalidate a properly issued patent. Not only does Creative's MSJ fail, but as demonstrated below and in ThermoLife's MSJ, Creative's entire defense fails and necessitates summary judgment in ThermoLife's favor.

## II.     FACTUAL BACKGROUND

On October 20, 2004, Ron Kramer and Sal Abraham submitted an application for a United States Patent related to the use of diiodothyroacetic acid in dietary supplements. (T-SOF ¶ 5.) On April 5, 2011, the '533 Patent was duly and legally issued to inventors Sal Abraham and Ron Kramer. (T-SOF ¶ 6.) Claim 11 of the '533 Patent claims, "A dietary supplement comprising diiodothyroacetic acid." (T-SOF ¶ 8.) On September 22, 2011, Creative infringed the '533 Patent when it sent out a targeted email marketing DIAC for use in dietary supplements to 11 potential customers. (SOF ¶ 9.)

In its MSJ, Creative alleges that the '533 Patent is invalid due to prior sale and prior use. Creative provides scant evidentiary support for this contention. Creative alleges

3

that "Derek Cornelius and Syntrax arrived at the decision to use DIAC as a dietary supplement to replace TRIAC by October 2000."[2] (Creative's MSJ at 3:9-10.) Creative cites no support for this statement. Creative then alleges that "by the spring of 2001, Cornelius had received in the United States a sample of DIAC from Syntrax' Argentinian supplier, Francisco Tabak." (*Id.* at 3:10-13.) Creative does not allege that Tabak provided anything other than a sample of an ingredient. Creative does not allege that Tabak had reduced an invention to practice.

Creative then alleges that Cornelius "and other employees of Syntrax thereafter tested DIAC for efficacy and safety, but mostly to discern whether it worked the same as, and felt similar to, TRIAC when consumed." (*Id.* at 3:14-17.) This assertion is counsel's positive spin on fifteen pages of testimony. Of course, "[i]t is well established that conclusory statements of counsel or a witness that a patent is invalid do not raise a genuine issue of fact." *Biotec Biologische Naturverpackungen GmbH & Co. KG v. Biocorp, Inc.*, 249 F.3d 1341, 1353 (Fed. Cir. 2001) (citing *Applied Companies v. United States*, 144 F.3d 1470, 1475 (Fed. Cir. 1998) ("It is well settled that 'a conclusory statement on the ultimate issue does not create a genuine issue of fact.'")).

An examination of Cornelius' actual testimony reveals a far less thorough examination of the properties of DIAC. For example, Cornelius cannot remember the effect of the DIAC on his blood pressure or weight loss – "I don't remember the exact, but it wasn't -- I didn't lose ten pounds. I remember losing a few, so." (T-SOF ¶ 20.) Importantly, Cornelius did not make any effort to determine if his weight loss was due to DIAC or other factors. (*Id.*) Instead, Cornelius described his testing results as "anecdotal." (*Id.* at ¶ 22.)

Regarding his test on his co-workers, Cornelius concedes that he does not remember the results other than that he "think[s] people lost a small amount of weight and felt pretty good on it." (*Id.*) But Cornelius made no efforts to determine whether the weight

---

[2] TRIAC's purpose was to "protect[] lean body mass while promoting fat loss." (Creative's Statement of Facts at ¶ 2.)

4

loss was attributable to the DIAC or other factors—instead the results were "subjective." (*Id*. at ¶ 23.) Cornelius did not keep any journals of the tests on this second group. (*Id*. at ¶ 21.) He never published the results of his tests. (*Id*. at ¶ 24.) He believes he may have discussed the tests on a message board but "[n]one of that information would've been kept. That website is -- no parts of that website are around anymore as far as I know." (*Id*.) He never called an attorney regarding the possibility of obtaining a patent. (*Id*. at ¶ 25.) He never commissioned a study of DIAC—all of his testing was "anecdotal." (*Id*. at ¶ 26.)

Creative has rested its entire case on Cornelius' tests that never established the efficacy of DIAC for its intended purpose. The tests are admittedly "subjective" and the results "anecdotal." Creative makes no allegations that could lead any reasonable juror to conclude that Cornelius had reduced an invention to practice. And Creative supports its allegations with only testimony from interested parties.

## III. THE SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. "Material" means that the fact, under governing substantive law, could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986); *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997). For a dispute to be "genuine," a reasonable jury must be able to return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248. The initial burden of establishing the absence of a genuine issue of material fact falls on the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In *Celotex*, the Supreme Court explained that "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." 477 U.S. at 325, 106 S.Ct. 2548.

5

The *Celotex* standard takes on particular importance in the context of a claim for the invalidity of a patent. "Under the patent statutes, a patent enjoys a presumption of validity . . . which can be overcome only through clear and convincing evidence." *Eli Lilly & Co. v. Barr Labs., Inc.*, 251 F.3d 955, 962 (Fed. Cir. 2001) (citing 35 U.S.C. § 282); *see also Creative Compounds, LLC v. Starmark Labs.*, 651 F.3d 1303, 1309-10 (Fed. Cir. 2011). "Thus, a moving party seeking to invalidate a patent at summary judgment must submit such clear and convincing evidence of invalidity so that no reasonable jury could find otherwise. Alternatively, a moving party seeking to have a patent held not invalid at summary judgment must show that the nonmoving party, who bears the burden of proof at trial, failed to produce clear and convincing evidence on an essential element of a defense upon which a reasonable jury could invalidate the patent." *Id.*; *see also Nat'l Presto Indus., Inc. v. W. Bend Co.*, 76 F.3d 1185, 1189 (Fed. Cir. 1996) ("In deciding a motion for summary judgment of invalidity the burden of proof must be considered.")

## IV.   ARGUMENT

Throughout this litigation, Creative has provided only vague disclosures regarding its invalidity defense. In its Declaratory Judgment Complaint, Creative listed every available basis for patent invalidity—even defenses it has made no effort to support. (Complaint at ¶ 32.) When ThermoLife served an interrogatory attempting to pin Creative down, Creative responded with an answer that insists that Cornelius conceived of the invention embodied in the '533 Patent. (*See* T-SOF ¶ 29.) Creative's answer does not mention prior use or sale. (*Id.*) Because conception of an invention relates to inventorship, ThermoLife wholly discredited the notion that Cornelius invented anything and demonstrated that, based on the undisputed facts, summary judgment is appropriate on any claim of prior inventorship.

In Creative's MSJ, it changes tactics. It cannot prove prior inventorship so Creative seeks to take advantage of its own misleading and vague disclosures to claim that it was relying on prior use and prior sale all along. Creative asks this Court and ThermoLife

to ignore the fact that its disclosure relied on Cornelius' conception of the invention, a concept that is wholly irrelevant to prior use and prior sale. *See* John Gladstone Mills III, et. al., PATENT LAW BASICS § 7:9, *In public use* (West 2012). Creative's about face, however, changes nothing. Prior inventorship may be demonstrated by conception or reduction to practice. Creative can prove neither. But the defenses upon which it seeks to rely *still require reduction to practice*. Thus, in ignoring prior inventorship Creative reveals a fatal flaw with its logic. In the context of prior use or sale, the invention still *must first exist*.

Creative addresses only facts and law regarding sale and use while simply assuming that the invention existed. Even a cursory examination of the facts reveals several undisputable facts. Cornelius invented nothing. He tinkered with a substance without any purpose or results. Creative can provide no corroboration of anything Cornelius did. As fully demonstrated below, Creative falls woefully short of clear and convincing evidence of anything that could possibly demonstrate the invalidity of the '533 Patent. For all of these reasons, Creative's MSJ must fail. Furthermore, even though Creative insists that ThermoLife's MSJ misses the mark, that motion thoroughly discredits any claim that Cornelius reduced any invention to practice—a requirement under § 102(g) *and* §§ 102(a) and (b). Accordingly, based on ThermoLife's MSJ, Creative's argument fails as a matter of law. Finally, Creative should not be allowed to benefit from its own misleading disclosures and allow ThermoLife to directly address Creative's newly-advanced defenses of prior use and prior sale. To the extent ThermoLife's MSJ does not already completely dispose of Creative's invalidity defense, the Court should consider this brief a cross-motion for summary judgment on the issues of prior use and prior sale.

    **A.**    **Creative Cannot Prove Prior Sale Under § 102(b) by Clear and Convincing Evidence.**

Case law is clear that "the on-sale bar applies when two conditions are satisfied before the critical date. First, the product must be the subject of a commercial offer for sale. . . . Second, the invention must be ready for patenting. That condition may be satis-

7

fied in at least two ways: by proof of reduction to practice before the critical date; or by proof that prior to the critical date the inventor had prepared drawings or other descriptions of the invention that were sufficiently specific to enable a person skilled in the art to practice the invention." *Pfaff v. Wells Electronics, Inc.*, 525 U.S. 55, 67-68 (1998). "A defendant must prove that both prongs of the test occurred before the critical date." *Honeywell Int'l Inc. v. Universal Avionics Sys. Corp*., 488 F.3d 982, 996 (Fed. Cir. 2007). And importantly, the *Pfaff* test applies to alleged sales by a third party. *See Minnesota Min. & Mfg. Co. v. Chemque, Inc.*, 303 F.3d 1294, 1307 (Fed. Cir. 2002) (applying *Pfaff* to an alleged third-party sale).

Creative bases its entire argument on the first prong without even addressing the crucial second prong. The evidence suggests that Tabak sold Cornelius a sample of DIAC but all of the evidence definitively proves that the invention was not ready for patenting. Once Cornelius obtained the sample of DIAC, he conducted tests that he concedes were "subjective" and the results "anecdotal." (T-SOF ¶¶ 22-26.) He cannot remember the effect of the DIAC on his blood pressure or weight loss and made no efforts to determine if his weight loss was due to DIAC or other factors. (*Id*. at ¶ 20.) He kept no records of his "tests." (*Id*. at ¶ 21.) He did not publish any results. He did not contact any patent attorneys. (*Id*. at ¶ 24.) In other words, at no point did Cornelius ever have anything that could be described as "ready for patenting." Needless to say, if Cornelius never had anything ready for patenting, there was no invention ready for patenting ***before*** the sale of the DIAC sample.

Case law confirms that as a matter of law Creative cannot meet its burden under § 102(b). "An invention is 'ready for patenting' when evidence shows that the invention was reduced to practice or described in a written description sufficient to permit one of ordinary skill in the art to practice the invention without undue experimentation." *Honeywell*, 488 F.3d at 997. Clearly, Cornelius never made any written description sufficient to permit one of ordinary skill in the art to practice the invention without undue experi-

mentation. First, Creative has *no* documentary evidence of *anything* Cornelius did. Second, Cornelius could not provide anything that would allow anyone to practice the invention without undue experimentation. This conclusion is obvious because Cornelius himself required extensive experimentation. (T-SOF ¶¶ 22-26.)

So, in order to show that the invention was "ready for patenting," Creative would have to show that the invention was reduced to practice. "An invention is reduced to practice when the patentee has an embodiment that meets every limitation and operates for its intended purpose. . . . An invention works for its intended purpose when there is a demonstration of the workability or utility of the claimed invention." *Honeywell*, 488 F.3d at 997 (internal citations omitted). Cornelius made no efforts to determine if his weight loss was due to DIAC or other factors. (T-SOF ¶ 20.) Instead, his tests were "subjective" and the results "anecdotal." (T-SOF ¶¶ 22-26.) As a matter of law, Creative cannot show that Cornelius ever reduced anything to practice. In *Honeywell*, the Federal Circuit concluded that the lack of reduction to practice prevented the application of the on-sale bar under § 102(b). The same result must hold here.

### B. Creative Cannot Prove Prior Use of the '533 Patent by Clear and Convincing Evidence.

"Prior public use, like all elements of invalidity, must be proven by clear and convincing evidence." *TradeCard, Inc. v. S1 Corp.*, 509 F. Supp. 2d 304, 329-30 (S.D.N.Y. 2007). "A party claiming anticipation under 35 U.S.C.A. § 102 because of prior use is put to the strictest of proofs." 3 Pat. L. Fundamentals § 10:9 (2d ed.). This case demonstrates why the standard is high—Creative is asking the Court to invalidate a properly issued patent because Cornelius alleges that he once conducted undocumented, unpublished, and inconclusive tests on the substance DIAC. Creative's argument that the '533 Patent is invalid for prior use under § 102(a) suffers from similar logical deficiencies as its argument regarding the on-sale bar—specifically Creative is alleging use before any invention existed.

"It is axiomatic that there can be no public use of an invention before it exists." 3 Pat. L. Fundamentals § 10:9 (2d ed.). Accordingly, "[i]n order for a use to qualify as prior art under 35 U.S.C.A. § 102(a) and (b), it must have been reduced to practice." 3 Pat. L. Fundamentals § 10:9 (2d ed.).[3] Even Creative agrees that § 102(a) requires reduction to practice: "Public testing before the critical date by a third party for his own unique purposes *of an invention previously reduced to practice* and obtained from someone other than the patentee, when such testing is independent of an not controlled by the patentee, is an invalidating public use, not an experimental use." (Creative's MSJ at 7:23-8:1 (emphasis added) (citing *Baxter Int'l, Inc. v. COBE Laboratories, Inc.*, 88 F.3d 1054, 1060-61 (Fed. Cir. 1996).)

Strangely, even though Creative takes pains to show that Kramer and Abraham did not conceive of their invention or reduce it to practice "until sometime in 2003," Creative makes no efforts at all to show that Cornelius or Tabak had ever reduced the invention to practice. (*See* Creative's MSJ at 6:6-7:5.) "The test for establishing reduction to practice requires that 'the prior inventor must have (1) constructed an embodiment or performed a process that met all the claim limitations and (2) determined that the invention would work for its intended purpose.'" *Fox Group, Inc. v. Cree, Inc.*, 700 F.3d 1300, 1305 (Fed. Cir. 2012) (quoting *Teva Pharm. Indus. Ltd. v. AstraZeneca Pharms. LP & IPR Pharms., Inc.*, 661 F.3d 1378, 1383 (Fed. Cir. 2011)). As demonstrated above, it is indisputable that Cornelius never reduced anything to practice. Creative has no evidence even suggesting that Cornelius ever constructed an embodiment of the '533 Patent or established that his compound would work for its intended purpose. Instead, Cornelius made no efforts to confirm that his anecdotal results were the result of DIAC. Needless to say, this evidence falls woefully short of "clear and convincing" evidence.

---

[3] Even if the Court generously considers Cornelius' theories about DIAC as "conception" of the invention, Creative's argument regarding prior use still fails. "Alleged use of 'the invention' when only the concept of the invention is shown to exist is insufficient to establish public use." Patent Law Basics § 7:9.

Without any defense for its infringing conduct, Creative attempts to lower the legal bar for a finding of invalidity through a flawed reading of the experimental use doctrine. In advancing the argument that Cornelius' tests do not qualify as experimental use, Creative misses the point of the doctrine. The doctrine allows an inventor to conduct public experiments on an invention prior to patenting without precluding a later patent for invalidity under § 102. While the doctrine does allow invalidation through third party testing, no case suggests that a third party can invalidate a patent through tests that render no result and predate reduction to practice.

Indeed, Creative's own cited case law undermines its entire argument. Before a use may qualify as disqualifying, the third party must test "an invention ***previously reduced to practice*** . . . ." *Baxter Int'l*, 88 F.3d at 1060-61 (cited by Creative at 7-8) (emphasis added). In *Baxter*, the Federal Circuit further noted that the invention that the third party tested "met all the limitations of the representative claims of the . . . patent. [The third party] testified that the centrifuge worked as a separator as soon as he operated it, which verified that it would work for its intended purpose . . . as recited in the claims." *Id*. The Federal Circuit specifically found that the third party's experiments did not relate to "the basic purpose of the invention . . . nor the representative claims . . . ." *Id*. at 1060. "These experiments, which [plaintiff] allege[d] constituted experimental use, were directed to fine-tuning the centrifuge to work for [the third party's] particular purpose . . . ***not to determining if it would work . . . as recited in the claims and which [the third party] had already verified***." *Id*. (emphasis added).

Here, Cornelius' experiments were based on whether the DIAC would work as a dietary supplement to "protect[] lean body mass while promoting fat loss." (Creative's SOF at ¶ 2; T-SOF at ¶¶ 17-18.) And, importantly, Cornelius never even reached a conclusion. As he admitted, Cornelius made no efforts to determine whether the weight loss was attributable to the DIAC or other factors—instead the results were "subjective." (T-

SOF at ¶ 23.) Cornelius cannot even remember the actual results of his testing other than that he "think[s] people lost a small amount of weight and felt pretty good on it." (*Id.*)

Cornelius' anecdotal testing and subjective results cannot possibly form the basis for invalidity due to prior use. He never reduced any invention to practice. The experimental use doctrine is irrelevant to Cornelius' testing. As a matter of law, Creative cannot demonstrate reduction to practice – a prerequisite for invalidation under § 102(a). Not only is Creative not entitled to summary judgment, but the Court should grant summary judgment in favor of ThermoLife.

### 1. Creative's evidence lacks corroboration.

Even if Creative and Cornelius' work constituted an invalidating use of the '533 Patent, summary judgment against Creative would still be appropriate because Cornelius' uncorroborated testimony cannot establish clear and convincing evidence of prior use. "The law has long looked with disfavor upon invalidating patents on the basis of mere testimonial evidence absent other evidence that corroborates that testimony." *Finnigan Corp. v. Int'l Trade Comm'n*, 180 F.3d 1354, 1366 (Fed. Cir. 1999). Accordingly, "[w]hen the asserted basis of invalidity is prior public use, the party with the burden of proof must show that 'the subject of the barring activity met each of the limitations of the claim, and thus was an embodiment of the claimed invention.' . . . Generally, oral testimony of prior public use must be corroborated in order to invalidate a patent." *Juicy Whip, Inc. v. Orange Bang, Inc.*, 292 F.3d 728, 737-38 (Fed. Cir. 2002) (quoting *Scaltech Inc. v. Retec/Tetra, L.L.C.*, 178 F.3d 1378, 1383 (Fed. Cir. 1999). "The Supreme Court recognized over one hundred years ago that testimony concerning invalidating activities can be 'unsatisfactory' due to 'the forgetfulness of witnesses, their liability to mistakes, their proneness to recollect things as the party calling them would have them recollect them, aside from the temptation to actual perjury.'" *Finnigan*, 180 F.3d at 1366 (quoting *The Barbed–Wire Patent*, 143 U.S. 275, 284 (1892)).

Explaining the rationale for this rule, the Federal Circuit held, "Mere testimony concerning invalidating activities is received with further skepticism because such activities are normally documented by tangible evidence such as devices, schematics, or other materials that typically accompany the inventive process." *Id*. at 1366-67. The result is that "without some type of corroborating evidence, an alleged inventor's testimony cannot satisfy the 'clear and convincing evidence' standard." *Price v. Symsek*, 988 F.2d 1187, 1194 (Fed. Cir. 1993).

Here, Creative offers no public art or documents backing up its claims of prior use. Instead, Creative offers the testimony of Derek Cornelius, Brenda Nixon, and Richard Nixon. Similarly, Creative asserts "Through postings on its website and communications from its employees to its customers and distributors, Syntrax made publicly available information that DIAC was a dietary supplement that would replace TRIAC as a product for fat loss." (Creative's MSJ at 4:2-6.) In support of this statement, Creative does not offer websites, forum posts, emails, advertisements or letters. Again, it simply cites the testimony of Derek Cornelius and Brenda Nixon. In explaining why none of Cornelius' work ever came to light until ThermoLife sued Creative, Creative again relies on Cornelius' testimony.

The Supreme Court has held "in light of the absence of any written corroboration and the length of time between the anticipating events and the trial, the oral evidence alone [i]s insufficient to invalidate the patent. . . . The Supreme Court's view of human nature as well as human recollection, whether deemed cynical or realistic, retains its cogency. This view is reinforced, in modern times, by the ubiquitous paper trail of virtually all commercial activity. It is rare indeed that some physical record (e.g., a written document such as notes, letters, invoices, notebooks, or a sketch or drawing or photograph showing the device, a model, or some other contemporaneous record) does not exist." *Juicy Whip*, 292 F.3d at 742 (quoting *Woodland Trust v. Flowertree Nursery*, 148 F.3d 1368, 1373 (Fed. Cir. 1998)). In filing its MSJ, Creative wholly ignores the

13

Supreme Court's warning and asks this Court to simply take the fuzzy, decade-old recollections of Cornelius (Creative's consultant) and his former employees as absolute fact and invalidate the '533 Patent. Not surprisingly, the law requires more.

Notably, "the need for corroboration exists regardless whether the party testifying concerning the invalidating activity is interested in the outcome of the litigation (*e.g.*, because that party is the accused infringer) or is uninterested but testifying on behalf of an interested party." *Finnigan*, 180 F.3d at 1367. Even if the distinction mattered, Cornelius is interested—as Creative states in their MSJ, Cornelius is "currently a consultant to Creative . . . ." (Creative's MSJ at 2:16.) Both Brenda and Richard Nixon worked for Cornelius at Syntrax where the alleged tests were conducted. Even if this status makes the Nixons "uninterested," the circumstances here make their testimony inherently problematic. Even "'[g]ranting the witnesses to be of the highest character, and never so conscientious in their desire to tell only the truth, the possibility of their being mistaken as to the exact device used, which, though bearing a general resemblance to the one patented, may differ from it in the very particular which makes it patentable, is such as to render oral testimony peculiarly untrustworthy; particularly so if the testimony be taken after the lapse of years from the time the alleged anticipating device was used.'" *Finnigan*, 180 F.3d at 1368 (quoting *Deering v. Winona Harvester Works*, 155 U.S. 286, 300–01 (1894)). That is the exact scenario presented in this case. Accordingly, case law has settled on a simple rule: "In the context of the public use or on-sale bar, verbal testimony by interested parties must be corroborated by documentary testimony; testimony of one witness cannot be used to corroborate that of another witness." *Lacks Indus., Inc. v. McKechnie Vehicle Components USA, Inc.*, 322 F.3d 1335, 1349 (Fed. Cir. 2003).

Discounting unsupported testimonial evidence, Creative is left with no evidence at all demonstrating any prior use of Claim 11 of the '533 Patent.

        **2.**        <u>**Creative has no evidence that Cornelius' use was "public".**</u>

14

Creative's lack of corroborated evidence raises yet another deficiency in its case. Though Cornelius and Brenda Nixon testify that Syntrax shared its tests on DIAC with its distributors and customers and on websites, there is no documentation to back up their claims. Creative cannot prove that any of Cornelius' tests on DIAC were ever known outside of Syntrax's office or that any use was ever public. "[W]hen an asserted prior use is not that of the applicant, *§ 102(b) is not a bar when that prior use or knowledge is not available to the public*." *Woodland Trust v. Flowertree Nursery, Inc.*, 148 F.3d 1368, 1371 (Fed. Cir. 1998) (emphasis added) (citing *W.L. Gore & Assocs., Inc. v. Garlock, Inc.*, 721 F.2d 1540, 1550 (Fed. Cir. 1983). Creative's affirmative claim fails on many levels. Perhaps most glaringly through, Creative's use was never public.

## V.  CONCLUSION

ThermoLife filed its own motion for summary judgment regarding the scant evidence forming the basis for Creative's defense. Creative offers nothing more than Cornelius' testimony that at some time over a decade ago he recalls conducting "subjective" tests with "anecdotal" results on the substance DIAC. He cannot even remember if the tests worked and made no efforts to determine if his anecdotal results were due to DIAC or other factors.

On the basis of these tests, Creative argues it has evidence of prior use or sale of the invention described in Claim 11 of the '533 Patent. But Creative skips a crucial step – Cornelius could not use an invention or buy an invention that has yet to be invented. If the law were otherwise, it would essentially end patent protection. A competitor could invalidate patents simply by asserting that someone in its office tinkered with a component of the invention prior to the date of patenting (even where, as here, that tinkering produced absolutely no results or patentable invention). Not only is Creative not entitled to summary judgment in its favor, as a matter of law no reasonable jury could find that Creative's evidence demonstrates clear and convincing proof of prior use or sale. ThermoLife is entitled to judgment as a matter of law that Creative infringed the '533 Patent

and has no defense for doing so.

RESPECTFULLY SUBMITTED this 29th day of April, 2013.

KERCSMAR & FELTUS PLLC

By *s/ Gregory B. Collins*
Gregory B. Collins
6263 North Scottsdale Road, Suite 320
Scottsdale, Arizona 85250
*Attorneys for Plaintiffs Ron Kramer, Sal Abraham, and ThermoLife International LLC*

## **CERTIFICATE OF SERVICE**

    I certify that on April 29, 2013, I electronically transmitted the foregoing to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following.

Thomas DeGroot
LAW OFFICES OF THOMAS DEGROOT, LLC
7733 Forsyth Blvd., Suite 1100
St. Louis, MO 63105
tom@degrootlaw.net
*Attorney for Defendant Creative Compounds, LLC*

Maria Crimi Speth
Adam S. Kunz
JABURG & WILK, P.C.
3200 N. Central Avenue, Suite 2000
Phoenix, Arizona 85012
mcs@jaburgwilk.com
ask@jaburgwilk.com
*Attorneys for Creative Compounds, LLC*

  *s/ Gregory B. Collins*