Gregory B. Collins (#023158)
Eric B. Hull (#023934)
KERCSMAR & FELTUS PLLC
6263 North Scottsdale Road, Suite 320
Scottsdale, Arizona 85250
Telephone: (480) 421-1001
Facsimile: (480) 421-1002
gbc@kflawaz.com
ebh@kflawaz.com

Attorneys for Plaintiffs Ron Kramer, Sal Abraham, and ThermoLife International LLC

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ron Kramer, an Arizona resident; Sal Abraham, a Florida resident; ThermoLife International LLC, an Arizona limited liability company,<br><br>Plaintiffs,<br><br>v.<br><br>Creative Compounds LLC, a Nevada limited liability company,<br><br>Defendant. | Case No. 2:11-cv-01965-PHX-JAT (Lead)<br>2:11-cv-02033-PHX-JAT (Cons)<br><br>**PLAINTIFFS' RESPONSE TO DEFENDANTS' STATEMENT OF FACTS**<br>**-AND-**<br>**CONTROVERTING STATEMENT OF FACTS** |
| Creative Compounds LLC, a Nevada limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>Ron Kramer, an Arizona resident; and Sal Abraham, a Florida resident,<br><br>Defendants. | |

Pursuant to Rule 56, Fed.R.Civ.P., Plaintiffs Ron Kramer, Sal Abraham and ThermoLife International, LLC (collectively, "Plaintiffs" or "ThermoLife"), hereby respond to Defendant's Statement of Facts and submit their controverting statement of facts as follows:

1

## RESPONSE TO DEFENDANTS' STATEMENT OF FACTS

1.  Derek Cornelius ("Cornelius") holds a degree in biology from Loyola University. In 1998, he formed Syntrax Innovations, Inc. ("Syntrax"), located in Cape Girardeau, Missouri. Syntrax was actively involved in the manufacture, marketing, and distribution of nutrition and dietary supplements. *See* Deposition of Derek Cornelius, attached hereto as Exhibit A, at 14:20-15:8; 18:20-22; 23:12-25; 36:20-37:2.

**RESPONSE:**

The first sentence regarding Cornelius' background is undisputed but does not raise any genuine issue as to any material fact. "Material" means that the fact, under governing substantive law, could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997). For a dispute to be "genuine," a reasonable jury must be able to return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248.

The second sentence is disputed. Nothing in the cited material supports the proposition that "Syntrax was actively involved in the manufacture, marketing, and distribution of nutrition and dietary supplements." "It is well established that conclusory statements of counsel or a witness that a patent is invalid do not raise a genuine issue of fact." *Biotec Biologische Naturverpackungen GmbH & Co. KG v. Biocorp, Inc.*, 249 F.3d 1341, 1353 (Fed. Cir. 2001) (citing *Applied Companies v. United States*, 144 F.3d 1470, 1475 (Fed. Cir. 1998) ("It is well settled that 'a conclusory statement on the ultimate issue does not create a genuine issue of fact.'")).

2.  Among other things, Syntrax marketed "Triax," a nutritional supplement in the fat-burning category that contained triiodothyroacetic acid ("TRIAC"). TRIAC is a metabolite of T3 or triiodothyronine, a human thyroid hormone. Exhibit A, at 37:9-38:2. Syntrax also marketed Triax for protecting lean body mass while promoting fat loss. Exhibit A, at 64:4-4.

**RESPONSE:**

Undisputed but the statement does not raise any genuine issue as to any material fact. "Material" means that the fact, under governing substantive law, could affect the outcome of the case. *Anderson*, 477 U.S. at 248; *Freeman v. Arpaio*, 125 F.3d at 735. For a dispute to be "genuine," a reasonable jury must be able to return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248.

The very passage cited as support for the second sentence states that any statement regarding the effect of DIAC or comparisons with TRIAC or Triax would be "subjective." Exhibit A, at 64:4-22.

3. Syntrax sourced the TRIAC used in Triax from Francisco Tabak and Mr. Tabak's company, Tolbiac S.R.L. (collectively "Tabak"). Exhibit A, at 39:17-20. Syntrax also sourced T2, another thyroid metabolite from Tabak, for sale in a different fatburner product, Lipokinetix. Exhibit A, at 40:5-18[.]

**RESPONSE:**

Undisputed but the statement does not raise any genuine issue as to any material fact. "Material" means that the fact, under governing substantive law, could affect the outcome of the case. *Anderson*, 477 U.S. at 248; *Freeman v. Arpaio*, 125 F.3d at 735. For a dispute to be "genuine," a reasonable jury must be able to return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248.

4. In 2000, the Food and Drug Administration (the "FDA") determined that TRIAC was not appropriate for use in dietary supplements and Syntrax quit selling Triax. Exhibit A, at 38:10-39:16.

**RESPONSE:**

Undisputed but the statement does not raise any genuine issue as to any material fact. "Material" means that the fact, under governing substantive law, could affect the out-

come of the case. *Anderson*, 477 U.S. at 248; *Freeman v. Arpaio*, 125 F.3d at 735. For a dispute to be "genuine," a reasonable jury must be able to return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248.

5. As part of his initial research on TRIAC, or in looking for a suitable replacement for TRIAC, Cornelius became familiar with diiodothyroacetic acid ("DIAC"). Exhibit A, at 9:24-10:5; 44:12-45:13. Cornelius decided to use DIAC as a replacement for TRIAC. Exhibit A, at 42:23-44:11.

**RESPONSE:**

The first sentence is undisputed but the statement does not raise any genuine issue as to any material fact. "Material" means that the fact, under governing substantive law, could affect the outcome of the case. *Anderson*, 477 U.S. at 248; *Freeman v. Arpaio*, 125 F.3d at 735. For a dispute to be "genuine," a reasonable jury must be able to return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248. The cited testimony reveals that Mr. Cornelius "tr[ied] to lay out every possible naturally occurring compound that had thyroid hormone activity . . . . I was looking at anything and everything." Cornelius' familiarity with DIAC is not material to any genuine issue.

The second sentence is disputed. Nothing in the cited material supports the proposition that "Cornelius decided to use DIAC as a replacement for TRIAC." "It is well established that conclusory statements of counsel or a witness that a patent is invalid do not raise a genuine issue of fact." *Biotec Biologische Naturverpackungen GmbH & Co. KG v. Biocorp, Inc.*, 249 F.3d 1341, 1353 (Fed. Cir. 2001) (citing *Applied Companies v. United States*, 144 F.3d 1470, 1475 (Fed. Cir. 1998) ("It is well settled that 'a conclusory statement on the ultimate issue does not create a genuine issue of fact.'")).

6. During the fall of 2000, Cornelius discussed sourcing DIAC from Tabak as a replacement for TRIAC. When he started having discussions with Tabak about DIAC,

4

Cornelius received assurances that DIAC's price range would be similar to the price for T2 and TRIAC. Exhibit A, at 160:1-13.

**RESPONSE:**

Undisputed but the statement does not raise any genuine issue as to any material fact. "Material" means that the fact, under governing substantive law, could affect the outcome of the case. *Anderson*, 477 U.S. at 248; *Freeman v. Arpaio*, 125 F.3d at 735. For a dispute to be "genuine," a reasonable jury must be able to return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248. Neither Tabak nor Cornelius ever reduced anything to practice with regards to DIAC.

7.     On October 24, 2000, Cornelius emailed Tabak, stating: "As per our conversation and to reiterate what we talked about before, I would like an exclusive on the DIAC for nutritional purposes to be sold in the U.S." *See* email from Cornelius to Tabak, dated October 24, 2000, attached hereto as Exhibit B; Exhibit A, at 138:3-11.

**RESPONSE:**

Undisputed but the statement does not raise any genuine issue as to any material fact. "Material" means that the fact, under governing substantive law, could affect the outcome of the case. *Anderson*, 477 U.S. at 248; *Freeman v. Arpaio*, 125 F.3d at 735. For a dispute to be "genuine," a reasonable jury must be able to return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248. Neither Tabak nor Cornelius ever reduced anything to practice with regards to DIAC.

8.     On October 25, 2000, Tabak offered to give Cornelius an exclusive for the supply of DIAC that, among other things, would be "restricted to Diac used for nutritional purposes in the U.S." *See* email from Tabak to Cornelius, dated October 25, 2000, attached hereto as Exhibit C; Exhibit A, at 160:14-161:17

**RESPONSE:**

Disputed. Exhibit C is inadmissible hearsay and has not been authenticated. In addition, the statement does not raise any genuine issue as to any material fact. "Material" means that the fact, under governing substantive law, could affect the outcome of the case. *Anderson*, 477 U.S. at 248; *Freeman v. Arpaio*, 125 F.3d at 735. For a dispute to be "genuine," a reasonable jury must be able to return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248. Neither Tabak nor Cornelius ever reduced anything to practice with regards to DIAC.

9.   Cornelius understood Tabak's email to constitute an "offering to basically sell this to me under these terms and with a price range that we talked about previously" Tabak's offer was one that Cornelius was willing to accept. Exhibit A, at 161:18-162:2.

**RESPONSE:**

Disputed. It is undisputable that neither Tabak nor Cornelius ever reduced anything to practice with regards to DIAC. The sale of a component of a dietary supplement is not material to Creative's claim for invalidation. Furthermore, Creative has no support for Tabak's intention regarding the sale. Accordingly, the statement does not raise any genuine issue as to any material fact. "Material" means that the fact, under governing substantive law, could affect the outcome of the case. *Anderson*, 477 U.S. at 248; *Freeman v. Arpaio*, 125 F.3d at 735. For a dispute to be "genuine," a reasonable jury must be able to return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248.

10.   Richard Nixon worked as the shipping manager at Syntrax from 1999 to the last part of 2002, where he oversaw all incoming and outgoing shipments for the company. *See* Deposition of Richard Nixon, attached hereto as Exhibit D, at 8:21-9:12.

6

**RESPONSE:**

Undisputed but the statement does not raise any genuine issue as to any material fact. "Material" means that the fact, under governing substantive law, could affect the outcome of the case. *Anderson*, 477 U.S. at 248; *Freeman v. Arpaio*, 125 F.3d at 735. For a dispute to be "genuine," a reasonable jury must be able to return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248.

11. Brenda Nixon started at Syntrax in March 1999 as a marketing manager. *See* Deposition of Brenda Nixon, attached hereto as Exhibit E, at 7:14-8:1. She left Syntrax in March 2001 due to a falling out with Cornelius. Exhibit E, at 19:8-12; 25:14-26:13.

**RESPONSE:**

Undisputed but the statement does not raise any genuine issue as to any material fact. "Material" means that the fact, under governing substantive law, could affect the outcome of the case. *Anderson*, 477 U.S. at 248; *Freeman v. Arpaio*, 125 F.3d at 735. For a dispute to be "genuine," a reasonable jury must be able to return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248.

12. Richard Nixon first heard of DIAC in late 2000 or early 2001 as a replacement fat-burner product. Exhibit D, at 13:8-14:21.

**RESPONSE:**

Undisputed but the statement does not raise any genuine issue as to any material fact. "Material" means that the fact, under governing substantive law, could affect the outcome of the case. *Anderson*, 477 U.S. at 248; *Freeman v. Arpaio*, 125 F.3d at 735. For a dispute to be "genuine," a reasonable jury must be able to return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248. No evidence demonstrates that either Tabak or Cornelius ever reduced anything to practice with regards to DIAC.

13.     In late 2000 or early 2001, Syntrax received a sample of DIAC from Tabak. The box containing the sample came from Tolbiac S.R.L. and was labeled diiodothyroacetic acid. The sample of DIAC was in a vial about 4 or 5 inches long that contained 10-20 grams of white powder. Exhibit A, at 45:14-50:13; Exhibit D, at 14:22- 17:12; 18:20-20:2, Exhibit E, at 9:22-10:19.

**RESPONSE:**

Undisputed but the statement does not raise any genuine issue as to any material fact. "Material" means that the fact, under governing substantive law, could affect the outcome of the case. *Anderson*, 477 U.S. at 248; *Freeman v. Arpaio*, 125 F.3d at 735. For a dispute to be "genuine," a reasonable jury must be able to return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248. Neither Tabak nor Cornelius ever reduced anything to practice with regards to DIAC.

14.     Because Triax was a "good seller" for Syntrax, people in the office were pretty excited when Cornelius obtained the sample of DIAC; "this was--had a good opportunity or good chance of being a replacement for [TRIAC] and TRIAC had a very --even a strong following in our office." Exhibit A, at 51:1-52:1.

**RESPONSE:**

Undisputed but the statement does not raise any genuine issue as to any material fact. "Material" means that the fact, under governing substantive law, could affect the outcome of the case. *Anderson*, 477 U.S. at 248; *Freeman v. Arpaio*, 125 F.3d at 735. For a dispute to be "genuine," a reasonable jury must be able to return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248. Neither Tabak nor Cornelius ever reduced anything to practice with regards to DIAC. The quoted testimony reveals this fact's immateriality: "this was--***had a good opportunity or good chance*** of being a replacement for [TRIAC] . . . ." (emphasis added). It is undisputed that Cornelius never reduced an invention to practice. Instead, Cornelius cannot remember the effect of the DIAC on his

blood pressure or weight loss – "I don't remember the exact, but it wasn't -- I didn't lose ten pounds. I remember losing a few, so." (T-SOF at ¶ 20.) Cornelius did not make any effort to determine of his weight loss was due to DIAC or other factors. (*Id*.) Cornelius described his testing results as "anecdotal." (*Id*. at ¶ 22.) He concedes that he does not remember the results of the testing other than that he "think[s] people lost a small amount of weight and felt pretty good on it." (*Id*.) Cornelius made no efforts to determine whether the weight loss was attributable to the DIAC or other factors—instead the results were "subjective." (*Id*. at ¶ 23.)

15. After he received the sample of DIAC, Cornelius tested the DIAC on himself and eventually four or five others for marketing purposes, and determined that it was going to be a good replacement for TRIAC. Exhibit A, at 52:5-61:18; 65:13-72:13; Exhibit E, at 10:17-16:14.

**RESPONSE:**

Disputed. Nothing in the cited testimony supports the conclusions stated in this statement of fact. "It is well established that conclusory statements of counsel or a witness that a patent is invalid do not raise a genuine issue of fact." *Biotec Biologische Naturverpackungen GmbH & Co. KG v. Biocorp, Inc.*, 249 F.3d 1341, 1353 (Fed. Cir. 2001) (citing *Applied Companies v. United States*, 144 F.3d 1470, 1475 (Fed. Cir. 1998) ("It is well settled that 'a conclusory statement on the ultimate issue does not create a genuine issue of fact.'")).

In addition, the statement does not raise any genuine issue as to any material fact. "Material" means that the fact, under governing substantive law, could affect the outcome of the case. *Anderson*, 477 U.S. at 248; *Freeman v. Arpaio*, 125 F.3d at 735. For a dispute to be "genuine," a reasonable jury must be able to return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248. The statement ignores substantial testimony from the cited passage that undermines the author's conclusions. Cornelius testified that he cannot re-

member the effect of the DIAC on his blood pressure or weight loss – "I don't remember the exact, but it wasn't -- I didn't lose ten pounds. I remember losing a few, so." (T-SOF at ¶ 20.) Cornelius did not make any effort to determine of his weight loss was due to DIAC or other factors. (*Id.*) Cornelius described his testing results as "anecdotal." (*Id.* at ¶ 22.) He concedes that he does not remember the results of the testing other than that he "think[s] people lost a small amount of weight and felt pretty good on it." (*Id.*) Cornelius made no efforts to determine whether the weight loss was attributable to the DIAC or other factors—instead the results were "subjective." (*Id.* at ¶ 23.)

16. With respect to the testing on DIAC, Syntrax employees did not have any secrecy agreements. They did not have any confidentiality agreements; there was nothing in place to keep them from disclosing to anybody else the existence of DIAC or what the company was going to do with it. When an employee left the company, no steps were taken to impose any restrictions on what they said about DIAC. Exhibit A, at 162:3-17.

**RESPONSE:**

Undisputed but the statement does not raise any genuine issue as to any material fact. "Material" means that the fact, under governing substantive law, could affect the outcome of the case. *Anderson*, 477 U.S. at 248; *Freeman v. Arpaio*, 125 F.3d at 735. For a dispute to be "genuine," a reasonable jury must be able to return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248. Neither Tabak nor Cornelius ever reduced anything to practice with regards to DIAC.

17. Because many people were interested in what Syntrax would use to replace TRIAC, Cornelius posted discussions about DIAC on Syntrax's internet message board. Exhibit A, at 75:4-76:17. In addition to posting discussions about DIAC on the internet and disclosing information to employees, Cornelius told friends about the product. He specifically recalls telling Patrick Wong, a customer living in St. Louis, about DIAC. He

shared the name of the product, that it was very similar to TRIAC, and that it felt like it worked equivalently to TRIAC. Exhibit A, at 128:16-132:19.

**RESPONSE:**

Disputed. Creative has produced no evidence from any websites or the testimony of anyone who Cornelius told about DIAC. Importantly, the statement does not raise any genuine issue as to any material fact. "Material" means that the fact, under governing substantive law, could affect the outcome of the case. *Anderson*, 477 U.S. at 248; *Freeman v. Arpaio*, 125 F.3d at 735. For a dispute to be "genuine," a reasonable jury must be able to return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248. Neither Tabak nor Cornelius ever reduced anything to practice with regards to DIAC.

18.     While working at Syntrax, Brenda Nixon told distributors and customers that Syntrax was going to use DIAC to replace TRIAC. Mrs. Nixon specifically recalled having such conversations with distributors with whom she communicated on a regular basis, such as John at J and G Supplements in Pennsylvania; and Kim at Kim and Jack in Florida. She also discussed DIAC with family members. Exhibit E, at 19:20-25:13. In conversations with distributors and others, Brenda Nixon specifically used the term diiodothyroacetic acid. She also specifically told them and family members that the plan was to sell DIAC as a nutritional supplement to take the place of TRIAC as a metabolic regulator or a way to lose fat. Exhibit E, at 27:10-28:16.

**RESPONSE:**

Disputed. Again, Creative produced no evidence of any correspondence from Brenda Nixon or the testimony of anyone who Ms. Nixon told about DIAC. Importantly, the statement does not raise any genuine issue as to any material fact. "Material" means that the fact, under governing substantive law, could affect the outcome of the case. *Anderson*, 477 U.S. at 248; *Freeman v. Arpaio*, 125 F.3d at 735. For a dispute to be "genuine," a reasonable jury must be able to return a verdict for the nonmoving party. *Anderson*,

477 U.S. at 248. Neither Tabak nor Cornelius ever reduced anything to practice with regards to DIAC.

19. When Syntrax was testing DIAC and discussing it within the company and with family friends, customers, and distributors, it had no confidentiality agreements with any of the Plaintiffs and did not owe them any obligations to keep confidential information about DIAC. Exhibit A, at 162:18-163:10.

**RESPONSE:**

Disputed. Again, Creative produced no documents regarding these discussions, no evidence of any correspondence discussing DIAC, or the testimony of anyone who heard about DIAC. Importantly, the statement does not raise any genuine issue as to any material fact. "Material" means that the fact, under governing substantive law, could affect the outcome of the case. *Anderson*, 477 U.S. at 248; *Freeman v. Arpaio*, 125 F.3d at 735. For a dispute to be "genuine," a reasonable jury must be able to return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248. Neither Tabak nor Cornelius ever reduced anything to practice with regards to DIAC. Even the statement refers to the testing of a substance instead of any reduction to practice of an invention incorporating DIAC.

20. Eventually, Syntrax decided not to move forward with selling DIAC because of the stress and risks of dealing with the FDA on compliance issues. Exhibit A, at 83:18-85:2.

**RESPONSE:**

Undisputed but the statement does not raise any genuine issue as to any material fact. "Material" means that the fact, under governing substantive law, could affect the outcome of the case. *Anderson*, 477 U.S. at 248; *Freeman v. Arpaio*, 125 F.3d at 735. For a dispute to be "genuine," a reasonable jury must be able to return a verdict for the nonmov-

Kercsmar & Feltus PLLC
6263 North Scottsdale Road, Suite 320
Scottsdale, Arizona 85250
(480) 421-1001

ing party. *Anderson*, 477 U.S. at 248. Neither Tabak nor Cornelius ever reduced anything to practice with regards to DIAC.

21.     United States Patent No. 7,919,533 (the '533 Patent) issued on April 5, 2011. Claim 11 of the '533 Patent claims: "A dietary supplement comprising diiodothyroacetic acid." *See*, the '533 Patent, attached hereto as Exhibit F, at col. 6, lines 17-18. Claim 11 is the only claim that Plaintiffs contend Defendant has infringed. *See*Dk. 51 at 8. Plaintiffs expressly disclaims that claims 1-10 of the '533 Patent are at issue in this matter. *See* Dk. 51, at 14.

**RESPONSE:**

Undisputed.

22.     Ron Kramer did not conceive of the invention disclosed in the '533 Patent until after he and Sal Abraham got together in early 2003 to work on possible alternatives to TRIAC. *See* Deposition of Ron Kramer, attached hereto as Exhibit G, at 101:16-104:5.

**RESPONSE:**

Undisputed.

23.     The application that resulted in issuance of the '533 Patent was filed on October 24, 2004. Exhibit F, at page 1.

**RESPONSE:**

Undisputed.

**CONTROVERTING STATEMENT OF FACTS**

For the sake of simplicity, for its controverting statement of facts, Plaintiffs incorporate their Statement of Facts in Support of Their Motion for Summary Judgment on Defendant's Declaratory Judgment Complaint and Plaintiffs' Claim For Patent Infringement (the "T-SOF") filed on March 11, 2013 as if fully stated herein.

RESPECTFULLY SUBMITTED this 29th day of April, 2013.

                    KERCSMAR & FELTUS PLLC

By  *s/ Gregory B. Collins*

    Gregory B. Collins
    6263 North Scottsdale Road, Suite 320
    Scottsdale, Arizona 85250

    *Attorneys for Plaintiffs Ron Kramer, Sal Abraham, and ThermoLife International LLC*

**CERTIFICATE OF SERVICE**

I certify that on April 29, 2013, I electronically transmitted the foregoing to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following.

Thomas DeGroot
LAW OFFICES OF THOMAS DEGROOT LLC
7733 Forsyth Boulevard., Suite 1100
St. Louis, Missouri 63105
tom@degrootlaw.net
*Attorney for Defendant Creative Compounds LLC*

Maria Crimi Speth
Adam S. Kunz
JABURG & WILK PC
3200 North Central Avenue, Suite 2000
Phoenix, Arizona 85012
mcs@jaburgwilk.com
ask@jaburgwilk.com
*Attorneys for Creative Compounds LLC*

 *s/ Gregory B. Collins*