WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ron Kramer, an Arizona resident; Sal Abraham, a Florida resident; ThermoLife International LLC, an Arizona limited liability company,<br><br>Plaintiffs,<br><br>v.<br><br>Creative Compounds LLC, a Nevada limited liability company,<br><br>Defendant. | No. CV-11-01965-PHX-JAT (Lead)<br>No. CV-11-02033-PHX-JAT (Con)<br><br>**ORDER** |

Pending before the Court is Ron Kramer's, Sal Abraham's, and ThermoLife International LLC's (collectively, "ThermoLife") Motion for Summary Judgment on Defendant's Declaratory Judgment Complaint and Plaintiff's Claim for Patent Infringement, Creative Compounds LLC's ("Creative") Motion for Summary Judgment, and ThermoLife's Cross-Motion for Summary Judgment on Creative's Newly Asserted Defense of Invalidity Pursuant to 102(a) and (b). Additionally, the Court examines the ripeness of ThermoLife's patent infringement claims *sua sponte*.

**I.   Background**

Ron Kramer and Sal Abraham are the sole inventors listed on U.S. Patent No. 7,919,533 ("the '533 Patent"). (CV 11-1965, Doc. 52-1, Exhibit 2). The '533 Patent generally concerns the use of diiodothyroacetic acid ("DIAC") as a dietary supplement to promote lean body mass. *See id.* The claim at issue in this suit, Claim 11 of the '533

Patent, reads "[a] dietary supplement comprising [DIAC]." *Id*.

On September 23, 2011, Creative filed a complaint in the Eastern District of Missouri seeking a declaratory judgment that Creative did not infringe the '533 Patent and that the '533 Patent is invalid. (CV 11-02033, Doc. 1). In response, ThermoLife filed a complaint in this Court alleging that Creative infringes the '533 Patent, induces infringement of the '533 Patent, contributes to infringement of the '533 Patent, and falsely advertises its products in violation 15 U.S.C. § 1125(a)(1)(B). (CV 11-1965, Doc. 1). These two actions were eventually consolidated and assigned to this Court. (CV 11-1965, Doc. 12).

In the pending motions for summary judgment, ThermoLife now admits that Creative has not sold any products containing DIAC. (CV 11-1965, Doc. 51 at 2 n.1). Instead, ThermoLife now asserts that Creative infringed the '533 Patent by offering DIAC for sale through emails with attached advertisements. *Id.* at 4.

In response, Creative requests that the Court grant summary judgment that the '533 Patent is invalid under 35 U.S.C. § 102(a) and (b) because the invention was both publicly used and on sale before the patent was filed.[1] (CV 11-1965, Doc. 53 at 6-10). In particular, Creative alleges that, sometime in the year 2000, Derek Cornelius, currently a consultant to Creative, received and used a sample of DIAC from Francisco Tabak as part of an offer by Mr. Tabak to sell DIAC to Syntrax, Mr. Cornelius's company. *Id.* Creative contends that these actions invalidate the '533 Patent because DIAC was used by others and offered for sale more than one year before the '533 Patent was filed on October 20, 2004. *Id.*

**II.  Analysis and Conclusions**

In the motions before the Court, the parties seek summary judgment on ThermoLife's claims of direct, contributory, and induced patent infringement and

---

[1] Although Creative has cited to 35 U.S.C. §102(a) and (b), 35 U.S.C. § 102 has recently been amended. The two defenses to patent validity Creative alleges, however, have been included in the new version of 35 U.S.C. §102, under subsection (a)(1). Thus, the Court will refer to the new version of the statute from this point forward.

- 2 -

Creative's claims that the '533 Patent is invalid as anticipated under 35 U.S.C. §102(a)(1). But, the Court is concerned that it lacks jurisdiction over ThermoLife's claims of direct, contributory, and induced infringement because ThermoLife has admitted that Creative has not sold any DIAC. Thus, the Court will first examine the ripeness of ThermoLife's direct, contributory, and induced patent infringement claims and then determine whether summary judgment is appropriate on any remaining issues.

### A. Ripeness

"[I]nquiring whether the court has jurisdiction is a federal judge's first duty in every case." *Belleville Catering Co. v. Champaign Mkt. Place, L.L.C.*, 350 F.3d 691, 693 (7th Cir. 2003); *see also Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1116 (9th Cir. 2004). In order for a federal court to have jurisdiction, the action before it must meet the case or controversy requirement of Article III of the Constitution. *See Caraco Pharm. Labs., Ltd. v. Forest Labs., Inc.*, 527 F.3d 1278, 1290 (Fed. Cir. 2008). "[A]n action is justiciable under Article III only where . . . the issues presented are ripe for judicial review." *Id.* at 1291.

In the Federal Circuit,

> [w]hether an action is "ripe" requires an evaluation of both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration. As to the first prong, an action is fit for judicial review where further factual development would not significantly advance a court's ability to deal with the legal issues presented. As to the second prong, withholding court consideration of an action causes hardship to the plaintiff where the complained-of conduct has an immediate and substantial impact on the plaintiff.

*Id.* at 1294-95 (internal citations and quotations omitted). Here, the Court is particularly concerned with the second prong of the ripeness test because Creative has not actually sold any DIAC.

### 1. The Ripeness of ThermoLife's Direct and Contributory Patent Infringement Claims

ThermoLife has alleged that Creative has infringed the '533 Patent under 35

U.S.C. § 271(a). 35 U.S.C. § 271(a) provides that "whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent." But, ThermoLife concedes that Creative has not made, used, or sold any infringing product and that ThermoLife is not seeking any monetary damages. (CV 11-1965, Doc. 51 at 2 n.1).

Instead, the "complained-of conduct" ThermoLife points to is an email and attached product sheet that Creative sent to approximately eleven potential customers. *Id.* at 4. The full text of the email is presented below:

> Creative Compounds is pleased to introduce ***DIACtive*** brand of diiodothyroacetic acid (DIAC), one of the most exciting dietary supplements of the decade. Having worked extensively with this novel ingredient, Creative Compounds knows all of the intricacies surrounding its pharmacology and usage. We have the unique ability to help your company properly formulate and integrate this ingredient into a top selling product on the market. Beware of other diiodothyroacetic acid products on the market that are not pure! Beware of other products on the market that are highly diluted but sell for an extremely high price. DIACtive is the most pure, highest quality DIAC in the industry and is GUARANTEED to be the lowest price diiodothyroacetic acid in the industry.
>
> Please see attached product summary and contact Creative Compounds for more info today.

(CV 11-1965, Doc. 51-1 at 13) (emphasis in original). The attached product summary contained language similar to the above email. *Id.* at 14. It further included a brief description of the effects of DIAC. *Id.* The product summary ended with a request to "[c]ontact Creative Compounds and get the best quality at the lowest price." *Id.*

As an initial matter, it is difficult to see how an advertisement which resulted in zero actual sales has a "substantial and immediate harm" on ThermoLife, particularly when the product was not advertised to the general market but only to eleven specific potential customers. But, 35 U.S.C. § 271(a) does provide that a patent can be infringed by "offers to sell." Accordingly, the Court will examine whether the Creative email constitutes an offer to sell.

In *Rotec Industries, Inc. v. Mitsubishi Corp.*, 215 F.3d 1246 (Fed. Cir. 2000), the Federal Circuit examined the meaning of the offer to sell language of 35 U.S.C. § 271(a). After a thorough analysis, the Federal Circuit concluded that "the meaning of 'offer to sell' is to be interpreted according to its ordinary meaning in contract law, as revealed by traditional sources of authority." *Id.* at 255. One such traditional source of authority, the Restatement (Second) of Contracts, defines an offer as "the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it." Restatement (Second) of Contracts § 24.

Examining the Creative email under this standard, it is clear, as a matter of law, that Creative did not make an offer to sell under the meaning of 35 U.S.C. § 271(a). An important requirement for a communication to be an offer is that the reader understands that assent by them will conclude the deal. In the present case, both the email and the attached product summary instruct the recipient to contact Creative for more information. Thus, a recipient of the email would understand that more than their assent is required to conclude the deal, *i.e.* additional communication with Creative.

Next, the email is missing key information typically associated with an offer for sale. In particular, price and quantity information, which typically accompany any offer, are noticeably absent from the Creative email. These absent terms show that a reader of the email could not believe that only his or her assent was required to create a binding contract. Thus, the Creative email is not an offer and could not have produced the substantial and immediate harm of direct patent infringement. Accordingly, the Court will dismiss ThermoLife's direct patent infringement claim without prejudice for failing to meet the jurisdictional requirement of ripeness.[2]

ThermoLife's contributory patent infringement claim similarly rests on the Creative emails being offers for sale. *See* 35 U.S.C. § 271(b). Accordingly, the Court

---

[2] It is worth noting that Creative appears to concede that it made an offer to sell DIAC. (CV 11-1965, Doc. 56 at 4). Whether a communication is an offer, however, is a question of law. Thus, Creative's concession is not binding on this Court.

will dismiss ThermoLife's contributory patent claim without prejudice for failing to meet the jurisdictional requirement of ripeness.

### 2. The Ripeness of ThermoLife's Induced Infringement Claim

ThermoLife also claims that Creative has induced infringement of the '533 Patent. 35 U.S.C. §271(b) provides that "[w]hoever actively induces infringement of a patent shall be liable as an infringer." "To establish liability under section 271(b), a patent holder must prove that once the defendants knew of the patent, they actively and *knowingly* aided and abetted another's direct infringement." *DSU Med. Corp. v. JMS Co., Ltd.*, 471 F.3d 1293, 1305 (Fed. Cir. 2006) (emphasis in original) (internal citations and quotations omitted). Notably, induced infringement does not require "offers to sell," distinguishing induced infringement from direct and contributory infringement.

Under this lesser standard, the Creative email could have produced the substantial immediate harm of induced patent infringement simply by informing and encouraging the public how to use DIAC in an infringing way. The Creative email explains that DIAC is "one of the most exciting dietary supplements of the decade" and that Creative has "the unique ability to help your company properly formulate and integrate this ingredient into a top selling product on the market." (CV 11-1965, Doc. 51-1 at 13). This arguably induces others to infringe Claim 11 of the '533 Patent. Thus, the Court concludes that ThermoLife's claim for induced infringement is ripe and will reach the merits of Creative's motion for summary judgment that there was no induced infringement

### B. Summary Judgment

In summary, after the Court's examination of jurisdiction, the remaining issues are ThermoLife's allegations of induced infringement and Creative's defenses of patent invalidity under 35 U.S.C. §102(a)(1). The Court will now examine whether either party is entitled to summary judgment on these issues.

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). "A party asserting that a fact cannot be or is genuinely

disputed must support that assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits, or declarations, stipulations . . . admissions, interrogatory answers, or other materials," or by "showing that materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed.R.Civ.P. 56(c)(1)(A)&(B). Thus, summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Initially, the movant bears the burden of pointing out to the Court the basis for the motion and the elements of the causes of action upon which the non-movant will be unable to establish a genuine issue of material fact. *Id.* at 323. The burden then shifts to the non-movant to establish the existence of material facts. *Id.* The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts" by "com[ing] forward with 'specific facts showing that there is a *genuine* issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (quoting Fed.R.Civ.P. 56(e) (1963) (amended 2010)). A dispute about a fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The non-movant's bare assertions, standing alone, are insufficient to create a material issue of fact and defeat a motion for summary judgment. *Id.* at 247-48. However, in the summary judgment context, the Court construes all disputed facts in the light most favorable to the non-moving party. *OddzOn Products, Inc. v. Just Toys, Inc.*, 122 F.3d 1396, 1401 (Fed. Cir. 1997).

### 1. Induced Patent Infringement (Count II in CV 11-1965)

Creative argues that the Court should grant summary judgment to Creative that no induced patent infringement occurred because ThermoLife has not shown evidence of another direct infringer. (CV 11-1965, Doc. 56 at 4). ThermoLife has provided no

argument in response. As the Court has already stated, induced infringement requires that "once the defendants knew of the patent, they actively and *knowingly* aided and abetted another's direct infringement." *DSU Med. Corp.*, 471 F.3d at 1305 (emphasis in original) (internal citations and quotations omitted). Because ThermoLife has provided no evidence of "another's direct infringement," the Court grants summary judgment to Creative on Thermolife's induced infringement claim.

### 2. Creative's Declaratory Judgment Action (CV 11-2033)

Having considered ThermoLife's claims for patent infringement, the Court now turns to Creative's request that the Court issue a declaratory judgment that the '533 Patent is invalid.

In the context of patent law, a court has jurisdiction over a declaratory judgment action under 28 U.S.C. § 2201 when "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007). Here, Creative has actually been sued for patent infringement, despite the dismissal of some claims as unripe. This suit for of patent infringement creates sufficient controversy to support an examination of the '533 Patent's validity. *See Benitec Australia, Ltd. v. Nucleonics, Inc.*, 495 F.3d 1340, 1345 (Fed. Cir. 2007). Accordingly, the Court will now examine whether either party is entitled to summary judgment on Creative's defenses of patent invalidity.

### a. Anticipation under 35 U.S.C. §102(a)(1) through Prior Public Use

Creative asserts that the '533 Patent is invalid as anticipated under 35 U.S.C. §102(a) through public use. (CV 11-1965, Doc. 53 at 6-9). 35 U.S.C. §102(a)(1) provides that a patent is invalid if the invention "was . . . in public use . . . before the effective filing date of the claimed invention." In particular, Creative argues that the claimed invention was in public use before the filing date of the invention because Mr. Cornelius and Mr. Cornelius's employee Brenda Nixon used DIAC as a nutritional

supplement before the patent was filed. (CV 11-1965, Doc. 53 at 8-9). Creative relies on the deposition of testimony of Mr. Cornelius and Ms. Nixon for this argument. *Id.* Creative has also produced three emails between Mr. Tabak and Mr. Cornelius discussing the sale of DIAC to Syntrax, Mr. Cornelius' company. *See* (CV 11-1965, Doc. 54-2); (CV 11-1965, Doc. 54-3).

In response, ThermoLife asserts that Creative has failed to meet the clear and convincing standard required to prove invalidity because Mr. Cornelius' and Ms. Nixon's testimony is uncorroborated. (CV 11-1965, Doc. 57 at 12-14). Further, ThermoLife contends that Mr. Cornelius and Ms. Nixon could not have used "the invention" because Mr. Cornelius and Ms. Nixon did not know how DIAC would act a nutritional supplement. *Id.* at 9-12.

In *Juicy Whip, Inc. v. Orange Bang, Inc.*, 292 F.3d 728, 740-44 (Fed. Cir. 2002), the Federal Circuit decided whether the testimony of six witnesses, without any corresponding documentation, was sufficient evidence as a matter of law to invalidate a patent. All of the witnesses were either defendants or business associates of the defendants and the events the witnesses described happened eight to twelve years before trial. *Id.* at 743. The Federal Circuit explained that the witness's credibility must be examined under the *Reuter* factors. *Id.* at 741. These factors include:

> (1) delay between event and trial, (2) interest of witness, (3) contradiction or impeachment, (4) corroboration, (5) witnesses' familiarity with details of the alleged prior structure, (6) improbability of prior use considering state of the art, (7) impact of the invention on the industry, and (8) relationship between the witness and alleged prior user.

*Id.* (citing *In re Reuter*, 670 F.2d 1015, 1021 n.9 (C.C.P.A. 1981)). Examining only the delay between the event and trial and the interest of the witnesses, the Federal Circuit concluded that the witnesses' testimony "was insufficient as a matter of law to surmount the clear and convincing evidence hurdle" required to invalidate a patent.

In the present case, Mr. Cornelius is employed as a consultant by defendant Creative and Ms. Nixon was a previous employee of Mr. Cornelius. Thus, Mr. Cornelius

and Ms. Nixon are interested witness for the purpose of the *Reuter* factors. *See id.* at 743; *see also Oney v. Ratliff*, 182 F.3d 893, 896 (Fed. Cir. 1999) ("The uncorroborated oral testimony of [the accused infringer], as the inventor, and his close associates would be insufficient to prove invalidity."). Further, the events described by Mr. Cornelius and Ms. Nixon occurred in the year 2000, approximately 13 years before any possible trial date. Taken together, these two factors weigh heavily in favor of a finding that Creative has not provided the necessary clear and convincing evidence to prove invalidity.

Next, the emails between Mr. Cornelius and Mr. Tabak do not corroborate any of Mr. Cornelius' or Ms. Nixon's testimony. No email ever mentions that Mr. Cornelius or Ms. Nixon used DIAC. The emails only contemplate the sale of DIAC. Thus, the emails do not sufficiently corroborate Mr. Cornelius's and Ms. Nixon's testimony. *See Finnigan Corp. v. Int'l Trade Comm'n*, 180 F.3d 1354, 1370 (Fed. Cir. 1999) (holding that an article written by a witness describing the use of every claim limitation except one was insufficient to corroborate that witness' oral testimony that he had practiced the final limitation). Accordingly, the Court finds that, as a matter of law, Creative has failed to produce clear and convincing evidence of prior use.

### b. Anticipation under 35 U.S.C. §102(a)(1) through the On Sale Bar

Alternatively, Creative asserts that the '533 Patent is invalid as anticipated under 35 U.S.C. §102(a)(1) because the invention was on sale before the patent was filed. (CV 11-1965, Doc. 53 at 9-10). 35 U.S.C. §102(a)(1) provides that a patent is invalid if the invention "was . . . on sale . . . before the effective filing date of the claimed invention." Creative particularly alleges that an email sent from Mr. Tabak to Mr. Cornelius was a commercial offer to sell the invention before the filing date of the patent. (CV 11-1965, Doc. 53 at 9-10).

In *Pfaff v. Wells Electronics*, 525 U.S. 55, 67 (1998), the Supreme Court interpreted the "on sale" bar of the previous version of 35 U.S.C. §102. The Supreme Court explained that the on sale bar requires that "the product must be a commercial offer

for sale" and the "invention must be ready for patenting." *Id.* ThermoLife argues that Creative has failed as a matter of law to meet the second prong of this test. (CV 11-1965, Doc. 57 at 7-9). But, the Court must first consider, as a matter of law, whether the email sent by Mr. Tabak is a commercial offer for sale.

The Federal Circuit, interpreting *Pfaff*, has explained that "the language used [in *Pfaff*] strongly suggests that the offer must meet the level of an offer for sale in the contract sense, one that would be understood as such in the commercial community. Such a reading leaves no room for activity which does not rise to the level of a formal offer under contract law principles." *Grp. One, Ltd. v. Hallmark Cards, Inc.*, 254 F.3d 1041, 1046-47 (Fed. Cir. 2001) (internal quotations omitted). The "contract law principles" expressed in the Restatement (Second) of Contracts, as already explained, require an offer to be immediately acceptable by the person who receives it. *See* Restatement (Second) of Contracts § 24.

The email sent by Mr. Tabak purports to describe the "terms" for an "exclusive" on the purchase of DIAC. The terms are expressed as follows:

> 1) As far as we can control end usage, it will be restricted to [DIAC] used for nutritional purposes in the US.
> 2) An expiry date for the exclusive should be fixed, with a way to extend it if necessary or convenient.
> 3) You will give me an idea of how much [DIAC] you estimate you will be using after you launch your product with it. Once your product is in the market, a minimum sale amount should be agreed upon.
> 4) The exclusive arrangement will not be valid from the moment another firm starts supplies of [DIAC] to the US nutraceutical market. If this occurs you agree to buy only from us if price and quality are comparable to those of any competitor.
> 5) You will advise us immediately if, for any reason, you drop the [DIAC] project or do not need an exclusive any more.
> 6) If you have not yet launched your product, there should be some compensation for [Mr. Tabak's company] if we have to reject eventual quotation requests or orders for [DIAC] during the exclusive period. I have not thought about the way to calculate such a compensation; probably the best [sic] will be to discuss it when the moment comes.

(Doc. 54-3, Exhibit C). The email concludes with the statement: "Please let me have

- 11 -

your ideas on this. Once we reach an adequate agreement, I will have to ask the possible future owner of 50% of the company to give his approval." *Id.*

Examining the contents of the email, the Court determines, as a matter of law, that the email is not a commercial offer for sale. The email specifically requests that Mr. Cornelius provide Mr. Tabak with more information, and contemplates a discussion of terms "when the moment comes." Further, Mr. Tabak explains that any deal will require the approval of the "future owner of 50% of the company." Thus, the email specifically contemplates additional discussion and approval before any contract is made. Accordingly, the Tabak email is not an offer for sale and the '533 Patent is not invalid as anticipated.

### III. Conclusion

Based on the foregoing,

**IT IS ORDERED** that Creative's Motion for Summary Judgment (Doc. 53) asking this Court to declare the '533 Patent invalid is denied; Creative's Motion for Summary Judgment (Doc. 53) on Counts I and III is denied. Creative's Motion for Summary Judgment (Doc. 53) on Count II only is granted.

**IT IS FURTHER ORDERED** that ThermoLife's Motion for Summary Judgment (Doc. 51) is denied as to Count II. Consistent with this Order, Counts I and III are dismissed, without prejudice, because they are not ripe.

**IT IS FURTHER ORDERED** that ThermoLife's Cross-Motion for Summary Judgment (Doc. 57) on CV 11-2033 (in CV 11-2033 Creative seeks a declaration that the '533 Patent is invalid) is granted. ThermoLife shall submit a proposed form of judgment for CV 11-2033 within 17 days of the date of this order. Creative may file any objections to the judgment within 14 days of when it is filed.

/ / /

/ / /

/ / /

/ / /

**IT IS FINALLY ORDERED** that because neither party moved for summary judgment on Count IV in CV 11-1965, the Court will proceed to trial on that claim. An Order setting final pretrial conference will follow.

Dated this 15th day of November, 2013.

James A. Teilborg
Senior United States District Judge