Gregory B. Collins (#023158)
Eric B. Hull (#023934)
KERCSMAR & FELTUS PLLC
7150 East Camelback Road, Suite 285
Scottsdale, Arizona 85251
Telephone: (480) 421-1001
Facsimile: (480) 421-1002
gbc@kflawaz.com
ebh@kflawaz.com

Attorneys for Plaintiffs Ron Kramer, Sal Abraham, and
ThermoLife International LLC

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ron Kramer, an Arizona resident; Sal Abraham, a Florida resident; ThermoLife International LLC, an Arizona limited liability company,<br><br>Plaintiffs,<br><br>v.<br><br>Creative Compounds LLC, a Nevada limited liability company,<br><br>Defendant. | Case No. 2:11-cv-01965-PHX-JAT (Lead)<br>2:11-cv-02033-PHX-JAT (Cons)<br><br>**RON KRAMER AND SAL ABRAHAM'S MOTION FOR AWARD OF ATTORNEYS' FEES AND NON-TAXABLE EXPENSES** |
| Creative Compounds LLC, a Nevada limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>Ron Kramer, an Arizona resident; and Sal Abraham, a Florida resident,<br><br>Defendants. | |

Pursuant to Fed. R. Civ. P. 54, LRCiv 54.2, and 35 U.S.C. § 285, Defendants Ron Kramer and Sal Abraham (collectively, "Kramer") seek an award of attorneys' fees incurred in the amount of $81,508.00. This motion is supported by the following Memorandum of Points and Authorities, the attached Rule L.R. 54.2 Certification, and the Dec-

1

laration of Gregory B. Collins (attached as Exhibit 1).

## I. INTRODUCTION

Creative Compounds LLC ("Creative") never had any chance of invalidating U.S. Patent No. 7,919,533 B2 (the "'533 Patent"). Creative staked its entire case to "anecdotal" and "subjective" tests its consultant, Derek Cornelius, had performed over a decade prior. When Kramer offered Creative the chance to drop the litigation over a year ago without any monetary payment, Creative demanded a monetary payment in the form of reverse patent royalty, a remedy Creative could not possibly have been granted in this lawsuit. This was extortion, plain and simple. Creative wasted its own time and (apparently someone else's) money, Plaintiffs' time and money, and, most importantly, the time and resources of this Court. And notably, Creative knew that its invalidity claim would fail. Not two years ago, it suffered a similar defeat on summary judgment based on Cornelius' shoddy evidence in *Creative Compounds, LLC v. Starmark Labs.*, 651 F.3d 1303 (Fed. Cir. 2011). Creative's cavalier attitude towards its vexatious litigation renders this case exceptional and Kramer is entitled to an award of attorneys' fees.

## II. RELEVANT FACTS

This dispute began on September 22, 2011, Creative Compounds sent out a targeted email marketing diiodothyroacetic acid ("DIAC") for use in dietary supplements to 11 potential customers. (Plaintiff's Statement of Facts in Support of Their Motion for Summary Judgment on Defendant's Declaratory Judgment Complaint and Plaintiffs' Claim for Patent Infringement ("SOF"), Dkt.# 52 ¶ 9.) Creative has never denied that a sale pursuant to that email would infringe on the '533 Patent. Indeed, Creative's President Corey McNeely testified that DIAC "is something we definitely want to sell." (SOF ¶ 11.) To that end, on September 23, 2011 (the day after issuing its targeted email), Creative filed a complaint in the Eastern District of Missouri seeking a declaratory judgment that Creative did not infringe the '533 Patent and that the '533 Patent is invalid. (CV 11-02033, Doc. 1). In response, ThermoLife filed a complaint in this Court alleging that Creative

2

Kercsmar & Feltus PLLC
7150 East Camelback Road, Suite 285
Scottsdale, Arizona 85251
(480) 421-1001

infringed the '533 Patent, induced infringement of the '533 Patent, contributed to infringement of the '533 Patent, and falsely advertised its products in violation 15 U.S.C. § 1125(a)(1)(B). (CV 11-1965, Dkt.# 1). Those two actions were eventually consolidated and assigned to this Court. (CV 11-1965, Dkt.# 12).

Creative's entire case rested on proving by clear and convincing evidence that the '533 Patent is invalid. But Creative never had any evidence, let alone clear and convincing evidence, to overcome the '533 Patent's presumption of validity. McNeely testified that he did not know of any facts to support the invalidity claim and that he had "delegated authority with respect to the company's handling of this litigation" to Derek Cornelius, an outside consultant to Creative. (C. McNeely Dep. (2/12/13), attached as Exhibit 2, at 54:6-9; *see also id*. at 51:8-52:7.)

Cornelius' "evidence" fell woefully short of clear and convincing. Cornelius described his testing results as "anecdotal." (SOF ¶ 22.) He conceded that he did not remember the results of the testing other than that he "think[s] people lost a small amount of weight and felt pretty good on it." (*Id*.) Cornelius made no efforts to determine whether the weight loss was attributable to the DIAC or other factors—instead he described the results as "subjective." (SOF ¶ 23.) He never published the results of his tests. (SOF ¶ 24.) He never called an attorney regarding the possibility of obtaining a patent. (SOF ¶ 25.) He never commissioned a study of DIAC—all of his testing was "anecdotal." (SOF ¶ 26.)

Yet based on the scant evidence, Creative forged ahead even when Plaintiffs offered Creative the chance to walk away from the litigation ***over a year ago***. On August 26, 2012, after Plaintiffs had discovered that Creative had not sold any DIAC based on

Kercsmar & Feltus PLLC
7150 East Camelback Road, Suite 285
Scottsdale, Arizona 85251
(480) 421-1001

the targeted email,[1] Plaintiffs' counsel wrote to Creative's counsel:

> I have been authorized to make the following non-monetary settlement offer to Creative Compounds. In settlement of this dispute, my clients propose that Creative Compounds enter into a stipulated judgment in which: (1) Creative Compounds stipulates to the entry of permanent injunction barring further infringement of the patent at issue; (2) Creative Compounds acknowledges that the patent is valid and enforceable; and (3) Creative Compounds dismisses its counterclaim with prejudice with both sides to bear their own attorneys' fees and costs. If Creative Compounds is willing to enter into a stipulated judgment incorporating the terms outlined above, this matter will be resolved with both sides bearing their own attorneys' fees and costs.

(Email (8/26/12) from G. Collins to T. DeGroot, attached as Exhibit 3.) When that offer went nowhere, Plaintiffs' counsel tried again:

> I suppose ThermoLife would forgo its demand that Creative Compounds stipulate to an injunction as long as Creative agreed not to sell the infringing product going forward. The crux of the offer is that ThermoLife is willing to settle this matter without a monetary payment from Creative Compounds. In light of this offer, the only reason for Creative Compounds to go forward with the lawsuit is to invalidate the patent. As you know Creative Compounds has the burden here and given the evidence I've reviewed thus far, it does not appear that Creative Compounds can meet its burden.

(Email (10/2/12) from G. Collins to T. DeGroot, attached as Exhibit 4.)

Plaintiffs' counsel proved correct. More than a year after this email, the Court granted summary judgment for Kramer on Creative's invalidity claim. Not only could Creative not carry its burden, it could not even survive summary judgment. But Creative did not care about its lack of evidence or heavy burden. As Creative's counsel explained, "For a variety of reasons, attorneys' fees are simply not an issue for Creative. So, as Cre-

---

[1] Creative asserts that the targeted email in question was sent to just six companies and that one those companies just happened to be ThermoLife International, LLC. This is a highly questionable assertion, given that that there are thousands of dietary supplement companies and there is simply no reason that ThermoLife would have received this targeted advertisement and not at least a hundred other companies. This questionable assertion calls into question every other fact that Creative asserted in this case, including the fact that it claims not to have sold any DIAC. But once Creative made these representations under oath, there was no cost effective way for Plaintiffs to challenge these assertions. This doesn't render Creative's unsupported assertions beyond reproach

4

ative sees it, it has little to lose while retaining a relatively cost-free shot at invalidating the '533 Patent." (Email (10/19/12) from T. DeGroot to G. Collins, attached as Exhibit 5.) Instead, Creative offered to settle the case only if Plaintiffs provided a king's ransom:

> Creative is willing settle this matter on the following terms: (1) payment by your clients of a royalty of 10% of the net proceeds from the sale of any its products containing DIAC from the date of its patent (4/5/11) through the date of any settlement, along with 10% of any gross royalty income they have received from others (for example, through licensing the '533 Patent), (2) after settlement, payment on a going-forward basis to Creative of 5% of the net proceeds from the sale of any your clients' products containing DIAC, along with 5% of any gross royalty income they receive from others (for example, through licensing the '533 Patent, (3) a non-exclusive royalty-free license in favor of Creative under the '533 Patent, (4) a joint press release regarding settlement of the lawsuit that discloses the existence of the royalty-free license and acknowledges Mr. Cornelius contribution to development of DIAC, while keeping confidential the rest of the settlement terms, and (5) dismissal with prejudice of all claims by all parties, each party to bear their own costs.

(*Id*.)

Creative's decision over a year ago to forge ahead without any evidence based on a "relatively cost-free shot at invalidating the '533 Patent" renders this case exceptional and warrants attorneys' fees.[2]

## III. KRAMER IS ELIGIBLE AND ENTITLED TO RECOVER FEES

Both Plaintiffs and Creative filed suit under the Patent Act. Under the Patent Act, "The court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. Kramer prevailed on the invalidity claims that initiated this action and that forced the continuation of this action despite the lack of any justification for its position. Importantly, though fees are typically awarded to defendants, Section 285 protects plaintiffs from abusive litigation as much as it does defendants: "Like patentees who assert infringement claims in bad faith, attorneys fees may be awarded against an accused

---

[2] Despite its complete lack of evidence, Creative has also indicated that it intends to appeal this Court's Order granting summary judgment in favor of Plaintiff's on Creative's claim for invalidation of the patent. (Email (12/2/13) from T. DeGroot to G. Collins, attached as Exhibit 6.)

5

infringer for asserting a defense in bad faith." 5 ANNOTATED PATENT DIGEST § 33:23. Here, Creative pursued its baseless invalidity claims simply because it was a "relatively cost-free shot at invalidating the '533 Patent . . . ." In doing so, Creative knowingly took the risk that the Court would not find this case exceptional. (*See* Exhibit 5 ("Creative believes that it is highly unlikely that a court would find this an exceptional case so as to justify an award of attorneys' fees.").) As demonstrated below, the Court should disagree with Creative's assessment of its risk. Kramer is eligible and entitled to attorneys' fees.

### A. Kramer is the Prevailing Parties.

"Determination of the prevailing party is based on the relation of the litigation result to the overall objective of the litigation, and not on a count of the number of claims and defenses." *Brooks Furniture Mfg., Inc. v. Dutailier Int'l, Inc.*, 393 F.3d 1378, 1381 (Fed. Cir. 2005). As the United States Supreme court held, ("'[P]laintiffs may be considered "prevailing parties" for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing the suit.'" *Texas State Teachers Ass'n v. Garland Independent School Dist.,* 489 U.S. 782, 789, 109 S.Ct. 1486 (1989) (quoting *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933 (1983)).

Here, Creative sent a targeted email to sell a product it acknowledges would infringe the '533 Patent. The next day, it filed a declaratory judgment action to invalidate the '533 Patent. It refused to settle the case for a walk away when Plaintiffs realized that their claims had limited monetary value. In other words, this case has always centered on Creative's claims for the invalidity of the '533 Patent. Kramer prevailed on the invalidity claims in the entirety on summary judgment. Even though the court held that Plaintiffs' patent claims were not ripe, Plaintiffs should still be the prevailing party in the litigation.

One court that recently examined the issue held that the plaintiff in a similar position was the prevailing party. In *Kellogg v. Nike, Inc.*, the District of Nebraska ruled that "Nike's claim of invalidity was dismissed with prejudice, over objection by Kellogg, on

6

the eve of trial." 74 Fed. R. Serv. 3d 1028, at *12 (D. Neb. 2009) aff'd, 421 F. App'x 971 (Fed. Cir. 2011). The court held "that Nike's conduct in asserting and pursuing the claim of invalidity was frivolous and was intended to delay the proceedings, obfuscate the issues and increase Kellogg's costs of litigation. Its actions in pursuing the counterclaim of invalidity long after it was shown not to be meritorious amounts to vexatious conduct. Defending against Nike's claims of invalidity was a considerable financial burden to Kellogg in terms of attorney time, firm resources, and out-of-pocket expense." *Id*. Accordingly, the Court found that "[i]n light of Nike's unjustified prosecution of the invalidity claim, its litigation misconduct and borderline abusive advocacy, costs cannot justly be assessed against Kellogg. Although Nike is the prevailing party with respect to infringement, Kellogg is the equivalent of a prevailing party with respect to the invalidity claim." *Id.* at *13. The court determined "that Nike's conduct makes this an exceptional case under 35 U.S.C. § 285 and that an award of attorney fees and costs reasonably related to the invalidity claim is warranted." *Id.* at *12.

### B. This Is an Exceptional Case.

A patent case is "'exceptional' for either of two basic reasons: (1) misconduct of a party giving rise to the litigation (*e.g.*, willful infringement by the infringer or inequitable conduct before the Patent Office by the patent owner), or (2) misconduct of a party during litigation (*e.g.*, vexatious tactics, discovery abuse, pressing of insupportable claims, frivolous suit, or violation of an injunction)." Patent Damages Law and Practice § 4:33; *see also Brooks Furniture*, 393 F.3d at 1381 ("A case may be deemed exceptional when there has been some material inappropriate conduct related to the matter in litigation, such as willful infringement, fraud or inequitable conduct in procuring the patent, misconduct during litigation, vexatious or unjustified litigation, conduct that violates Fed.R.Civ.P. 11, or like infractions."). The Federal Circuit has also held that "[i]f the patentee prolongs litigation in bad faith, an exceptional finding may be warranted." *Computer Docking Station Corp. v. Dell, Inc.*, 519 F.3d 1366, 1379 (Fed. Cir. 2008); *see also*

Kercsmar & Feltus PLLC
7150 East Camelback Road, Suite 285
Scottsdale, Arizona 85251
(480) 421-1001

*Eon-Net LP v. Flagstar Bancorp*, 653 F.3d 1314, 1324 (Fed. Cir. 2011) *cert. denied*, 132 S. Ct. 2391, 182 L. Ed. 2d 1020 (U.S. 2012) ("Regarding the court's factual finding, as a general matter, we have observed that many varieties of misconduct can support a district court's exceptional case finding, including lodging frivolous filings and engaging in vexatious or unjustified litigation.").

Here, Creative's declaratory judgment claim to invalidate the '533 Patent was utterly baseless and frivolous. Creative ignored that every patent is presumptively valid and requires clear and convincing evidence for a ruling of invalidity. Creative knew that Cornelius had done nothing more than tinker with an ingredient, producing "anecdotal" and "subjective" results. Creative knew that Cornelius had never followed through on those results to try to obtain a patent. It knew that Cornelius had no documentary evidence backing up his "experiments." In short, Creative had no evidence whatsoever. Yet, Creative forced Plaintiffs to engage in costly discovery, including numerous depositions, and summary judgment briefing. That summary judgment led to the predictable result of utter defeat on Creative's invalidity claims. The Federal circuit has held that a defendant engaged in vexatious litigation where it "pleaded further defenses which were of only marginal relevance to the case, and engaged in various discovery and trial abuses." *Beckman Instruments, Inc. v. LKB Produkter AB*, 892 F.2d 1547, 1552 n.1 (Fed. Cir. 1989). For that reason alone, this case is exceptional.

But two other facts strengthen this finding. First, over a year ago Plaintiffs offered Creative the chance to walk away from the litigation without any monetary payment. Creative declined, stating, "For a variety of reasons, attorneys' fees are simply not an issue for Creative. So, as Creative sees it, it has little to lose while retaining a relatively cost-free shot at invalidating the '533 Patent." (Exhibit 5.) Creative then demanded that Plaintiffs pay Creative a royalty fee on the '533 Patent in order to make the case go away.

The Federal circuit has found this kind of litigation tactic "exceptional." It held that litigation had the "'indicia of extortion' because it was part of [the party's] history of

8

filing nearly identical patent infringement complaints against a plethora of diverse defendants, where [the party] followed each filing with a demand for a quick settlement at a price far lower than the cost to defend the litigation." *Eon-Net LP v. Flagstar Bancorp*, 653 F.3d 1314, 1326 (Fed. Cir. 2011) *cert. denied,* 132 S. Ct. 2391, 182 L. Ed. 2d 1020 (U.S. 2012). Here, Creative challenged the validity of the '533 Patent on baseless grounds and then demanded a royalty to make the litigation stop. Plaintiffs were left little choice but to litigate the matter through summary judgment.

Second, like the plaintiff in *Eon-Net*, Creative has a history of challenging competitors' patents on shaky validity grounds. In *Creative Compounds, LLC v. Starmark Labs.*, "Creative allege[ed] that Cornelius, named inventor on the '273 Patent, conceived the subject matter of the '373 Patent prior to Boldt, named inventor of the '373 Patent. For support, Creative point[ed] to an email order for 'dicreatine malate' placed with Creative's Chinese supplier as evidence of prior conception. This email, which also speculates that the method of making dicreatine malate should be the same as the method of making creatine citrate, predates the filing date of the provisional application that led to the '373 Patent." 651 F.3d 1303, 1311-12. The Federal circuit held that "Creative relied on the 2001 email order for 'dicreatine malate' and simply concluded that this sufficiently demonstrated conception of that compound. In this email, Cornelius speculates that the method of making dicreatine malate 'should' be like that of making creatine citrate. The district court concluded, and this court agrees, that this email is insufficient to establish prior conception of the subject matter of the '373 Patent." *Id.* at 1312.

Like the facts in the *Starmark* case, the result is disturbingly familiar. The Federal circuit found that "Creative failed to raise a single genuine issue of material fact as to even one of its three asserted invalidity theories. Thus, the district court properly granted Starmark's motion for summary judgment finding the '373 Patent not invalid." *Id.* at 1313. Clearly, Creative has made a business decision to use vexatious litigation to compete. It has decided that "for a variety of reasons, attorneys' fees are simply not an issue

for Creative. So, as Creative sees it, it has little to lose while retaining a relatively cost-free shot at invalidating [patents]." (Exhibit 5.) A finding that Creative's conduct is "exceptional" would take away its "cost-free" incentive to file baseless invalidity claims.

## IV. THE FEES ARE REASONABLE

Kramer seeks an award of attorneys' fees in the amount of $81,508.00. "35 U.S.C. § 285 permits a district court to award reasonable attorneys' fees in an exceptional case. . . . The amount of the award is assessed at the discretion of the district court." *Lam, Inc. v. Johns-Manville Corp.*, 718 F.2d 1056, 1068 (Fed. Cir. 1983) (internal citations omitted). "In determining the reasonableness of the award, there must be some evidence to support the reasonableness of, *inter alia,* the billing rate charged and the number of hours expended." *Id.* To assist the Court in determining the reasonableness of the fees, a detailed itemization is attached as Exhibit A to the Affidavit of Gregory B. Collins, which is Exhibit 1 to the Motion.

Courts have found that "[t]he compensatory purpose of § 285 is best served if the prevailing party is allowed to recover his reasonable expenses in prosecuting the entire action. These expenses include lawyers' fees for time spent on the issue of attorneys' fees itself . . . and disbursements necessary to the case." *Codex Corp. v. Milgo Elec. Corp.*, 541 F. Supp. 1198, 1201 (D. Mass. 1982) (internal citations omitted). "Where, as here, a prevailing party 'has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation....'" *Mathis v. Spears*, 857 F.2d 749, 755 (Fed. Cir. 1988) (quoting *Hensley v. Eckerhart,* 461 U.S. 424, 435, 103 S.Ct. 1933, 1940 (1983)).

"Another approach is the 'lodestar' method, used in a number of circuits." Patent Damages Law and Practice § 4:35. In other contexts, "When it sets a fee, the district court must first determine the presumptive lodestar figure by multiplying the number of hours reasonably expended on the litigation by the reasonable hourly rate. Next, in appropriate cases, the district court may adjust the 'presumptively reasonable' lodestar fig-

ure based upon the factors listed in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 69-70 (9th Cir. 1975), that have not been subsumed in the lodestar calculation." *Intel Corp. v. Terabyte Int'l, Inc.*, 6 F.3d 614, 622 (9th Cir. 1993) (internal citations omitted).

Under either formulation, the fees are reasonable.

### A. Counsel's Fees Are Well-Within Market Rate.

Market rate for attorneys' fees calculation can be derived in several different ways, including affidavits of the attorney seeking fees, affidavits from non-interested attorneys regarding prevailing fees in the community, and market rate determinations in other cases in the jurisdiction, "particularly those" setting a rate for the attorney whose fees are under scrutiny. *St. Bernard v. State Collection Serv., Inc.*, 782 F. Supp. 2d 823, 826-27 (D. Ariz. 2010) ("Affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiff's attorney, are satisfactory evidence of the prevailing market rate.") (citing *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990)). As set forth below, the fees sought here are supported by the affidavit of counsel and market rate determinations in other cases in Phoenix.

#### 1. *The Fees Are Presumptively Reasonable.*

Kramer was billed attorneys' fees on an hourly basis. Each attorney's level of experience and education served as the basis for his or her hourly billing rate. The accompanying Declaration of Gregory B. Collins attests that the hourly rates charged were fair and reasonable, given the education, experience and involvement of each individual attorney, the issues involved, and prevailing rates in the community. (*See* Exhibit 1 at ¶ 2.) All fees were charged in accordance with the agreement between Plaintiffs and their counsel. Because this matter involves intellectual property litigation, the attorneys' fees charged are presumptively reasonable. *Schweiger v. China Doll Rest., Inc.*, 138 Ariz. 183, 187-88, 673 P.2d 927, 931-32 (App. 1983) ("[T]he rate charged by the lawyer to the client is the best indication of which is reasonable under the circumstances of the particular

11

case."). The rates here are at or below the prevailing market rate for lawyers of comparable skill and experience in this jurisdiction. (*See* Exhibit 1 at ¶ 3.)

### 2. *Other Cases Support the Reasonableness of the Fees*.

Additional support can be gleaned from recent market rate determinations in other cases in this Court. LRCiv 54.2(c)(3)(L). A review of recent cases from this District shows that the fees charged in this matter are well within market rate. *See, e.g., Vesecky v. Wilshire Aspirations, LLC*, No. CV-11-1180-PHX-LOA, 2012 WL 715564, at *11 (D. Ariz. Mar. 6, 2012) ($375/hr reasonable); *Liberty Media Holdings, LLC v. Vinigay.com*, No. CV-11-280-PHX-LOA, 2011 WL 7430062, at *16 (D. Ariz. Dec. 28, 2011) ($450/hr for lawyer and $150/hr for paralegal in copyright matter reasonable); *Mazet v. Halliburton Co. Long-Term Disability Plan No.*, CV-04-0493-PHX-FJM, 2011 WL 3290468, at *1 (D. Ariz. Aug. 1, 2011) ($325/hr reasonable); *Broadcast Music, Inc. v. TLM Invs., P.L.C.*, No. CV 09-8131-PCT-JAT, 2010 WL 2891524, at *7 (D. Ariz. July 21, 2010) (in copyright matter, "Plaintiffs' counsel's rate of $450 per hour in 2009 and $475 per hour in 2010 are also reasonable. These are the rates BMI has agreed to and does pay for the legal services. . . . This rate is also commensurate with the rate for attorneys with similar levels of experience in the Phoenix legal market for similar types of services.").

### B. The Number of Hours Expended Is Reasonable.

The number of hours Kramer's attorneys worked on this case is imminently reasonable in light of the tasks that litigating this case involved. Five depositions were taken, with the four or these depositions occurring in Missouri. Counsel had to travel and prepare for those depositions. Furthermore, a substantial amount of time was spent addressing Creative's moving target approach to this litigation. In discovery, Creative disclosed that its invalidity claim was premised only on its belief that Cornelius was a prior inventor under 102(g). (*See* SOF ¶ 29.) When Plaintiff's Motion for Summary Judgment thoroughly debunked this argument, Creative switched course. In response to Plaintiff's Motion for Summary Judgment for the first time Creative argued that its discovery re-

sponses "merely la[id] out the facts that Mr. Cornelius received DIAC in this country in 2000 and took it as a dietary supplement. In fact, Plaintiffs have long known that Creative has at least claimed as a defense that the invention described in the '533 Patent was known or used by others before the invention by Plaintiffs." (Defendant Creative Compounds, LLC's Memorandum in Opposition to Plaintiff's Motion for Summary Judgment on Defendants' Declaratory Judgment Complaint and Plaintiff's Claim for Patent Infringement, Dkt.# 56, at 6:3-4.) While Creative's new claim was disclosed late and entirely improper, it was also factually and legally wrong. In order to address this claim on its merits, Plaintiffs were forced to cross-move for summary judgment, doubling the amount of work necessary to seek summary judgment on Creative's baseless claims. (*See* Plaintiff's Response to Creative Compounds' Motion for Summary Judgment-and-Cross-Motion for Summary Judgment on Creative's Newly Asserted Defense of Invalidity Pursuant to §§ 102(a) and (b).) And all this work could have been avoided had Creative not sought to use its invalidity claim to extort Plaintiff's for money, seeking a royalty payment for a patent they did not own and could never legally be awarded. The time spent on this vexatious litigation was all required to defeat Plaintiff's vexatious strategy.

## V.  CONCLUSION

Creative had the heavy burden of proving the invalidity of the '533 Patent by clear and convincing evidence. Creative had no evidence to meet that burden. But Creative's case was never about the evidence. Instead, its case was baseless and vexatious. Creative prolonged the litigation more than a year after Plaintiffs were willing to walk away. Instead of acting like a reasonable litigant, Creative indicated that it wasn't paying its attorneys' fees, so any resolution of this case was going to necessitate a payment to Creative. This is definition of extortion. Accordingly, this is an exceptional case warranting an award of fees in the amount of $81,508.00.

RESPECTFULLY SUBMITTED this 17th day of January, 2014.

KERCSMAR & FELTUS PLLC

By  *s/Gregory B. Collins*
    Gregory B. Collins
    Eric B. Hull
    7150 East Camelback Road, Suite 285
    Scottsdale, Arizona 85251
    *Attorneys for Plaintiffs Ron Kramer, Sal Abraham, and ThermoLife International LLC*

## CERTIFICATE OF SERVICE

I certify that on January 17, 2014, I electronically transmitted the foregoing to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following.

Thomas DeGroot
LAW OFFICES OF THOMAS DEGROOT LLC
7733 Forsyth Boulevard, Suite 1100
St. Louis, Missouri 63105
tom@degrootlaw.net
*Attorney for Defendant Creative Compounds LLC*

Maria Crimi Speth
Adam S. Kunz
JABURG & WILK PC
3200 North Central Avenue, Suite 2000
Phoenix, Arizona 85012
mcs@jaburgwilk.com
ask@jaburgwilk.com
*Attorneys for Creative Compounds LLC*

*s/Gregory B. Collins*

15