Gregory B. Collins (#023158)
Eric B. Hull (#023934)
KERCSMAR & FELTUS PLLC
7150 East Camelback Road, Suite 285
Scottsdale, Arizona 85251
Telephone: (480) 421-1001
Facsimile: (480) 421-1002
gbc@kflawaz.com
ebh@kflawaz.com

Attorneys for Plaintiffs Ron Kramer, Sal Abraham, and ThermoLife International LLC

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ron Kramer, an Arizona resident; Sal Abraham, a Florida resident; ThermoLife International LLC, an Arizona limited liability company,<br><br>Plaintiffs,<br><br>v.<br><br>Creative Compounds LLC, a Nevada limited liability company,<br><br>Defendant. | Case No. 2:11-cv-01965-PHX-JAT (Lead)<br>2:11-cv-02033-PHX-JAT (Cons)<br><br>**RON KRAMER AND SAL ABRAHAM'S REPLY IN SUPPORT OF MOTION FOR AWARD OF ATTORNEYS' FEES AND NON-TAXABLE EXPENSES** |
| Creative Compounds LLC, a Nevada limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>Ron Kramer, an Arizona resident; and Sal Abraham, a Florida resident,<br><br>Defendants. | |

Creative initiated this litigation with its Declaratory Judgment action in Missouri to invalidate the '533 Patent. Plaintiffs responded by filing this action for patent infringement, a wholly logical reaction considering that Creative sent a solicitation to sell a product that violated the '533 Patent the day before filing the Declaratory Judgment action.

1

Kercsmar & Feltus PLLC
7150 East Camelback Road, Suite 285
Scottsdale, Arizona 85251
(480) 421-1001

When Plaintiffs discovered that Creative had not sold any infringing product and were relying on testing that their own witness called "anecdotal" and "subjective" (Creative's words, not Plaintiffs'), Plaintiffs offered to stop the litigation in exchange for the attorneys' fees wasted in Creative's baseless efforts. As all parties agree, more than a year ago, Plaintiffs dropped even that demand and simply demanded that Creative agree not to infringe the '533 Patent. Creative refused to walk away from the litigation unless Plaintiffs awarded it a reverse royalty and other compensation. Compensation Creative could not possibly be awarded in this lawsuit, even if it succeeded. And Creative made these extortionist demands based on evidence so thin it did not survive summary judgment.

So here we are – in the exact position that Plaintiffs offered over a year ago. Why did it take this long? Because, as Creative explained, for a "variety of reasons, attorneys' fees are simply not an issue for Creative" and "as Creative sees it, it ha[d] little to lose while retaining a relatively cost-free shot at invalidating the '533 Patent." (Ex. 5 to the Motion.) In other words, Creative was willing to waste the Court's time and Plaintiffs' time and money on the off chance that the Court would buy Mr. Cornelius' anecdotal evidence. That is, of course, unless Plaintiffs paid Creative to go away. Creative's strategy is the very definition of vexatious litigation and renders this case exceptional.

Creative offers no explanation and no excuse for its actions. Contrary to Creative's contentions, Rule 408 does not bar the Court from considering Creative's ridiculous and vexatious settlement demands. Contrary to Creative's protestations, Plaintiffs are absolutely the prevailing party. Plaintiffs obtained the result they desired – Creative cannot sell products that infringe on the '533 Patent. That was the dispute that started this litigation (the Declaratory Judgment action in Missouri) and that is the issue that prolonged this litigation (because Plaintiffs would not pay Creative money and a reverse royalty).

From the very first filing, Creative's lawsuit has been utterly baseless (whether those contentions formed the basis for the Declaratory Judgment action or the affirmative defenses to Plaintiffs' Complaint). Creative's decision to prolong this litigation was vexa-

2

tious and in bad faith. This case is exceptional and warrants an award of fees.

## I.     CREATIVE MISSTATES THE LEGAL STANDARDS

Before regurgitating its summary judgment argument whole cloth, Creative attempts to avoid a fee award based on two erroneous legal standards. First, Creative argues that Rule 408 bars consideration of its settlement demands. Ninth Circuit precedent is clear that Rule 408 does no such thing. Creative then argues that Plaintiffs did not achieve their goal in this litigation. But in the Response, Creative acknowledges that Plaintiffs goal in the litigation was to keep Creative from selling products that would infringe on the '533 Patent. Plaintiffs have accomplished that goal. Creative also refuses to acknowledge that it initiated this entire lawsuit by directly challenging the '533 Patent in an affirmative suit. Plaintiffs won that suit. Plaintiffs are undoubtedly the prevailing party.

### A.     Rule 408 is Irrelevant to Fee Applications.

Creative calls Plaintiffs' use of Creative's extortionist settlement demands "extraordinary," claiming that Rule 408 "unequivocally bans the use of statements made in settlement proposals or discussions to prove liability or a claim." (Resp. at 6:23-25.) Not unlike its underlying claims of patent invalidity, had Creative done even cursory legal research it would have realized its position had no merit. In *Ingram v. Oroudjian*, the Ninth Circuit joined other circuits in holding "that settlement negotiations may be considered by the district court as a factor in determining a fee award." 647 F.3d 925, 927 (9th Cir. 2011) (citing *Lohman v. Duryea Borough,* 574 F.3d 163, 167 (3d Cir. 2009); *Parke v. First Reliance Standard Life Ins. Co.,* 368 F.3d 999, 1012 (8th Cir. 2004); *Moriarty v. Svec,* 233 F.3d 955, 967 (7th Cir. 2000)). Subsequent case law is in accord. *See A.D. v. California Highway Patrol*, 712 F.3d 446, 460-61 (9th Cir. 2013) *cert. denied,* 134 S. Ct. 531 (U.S. 2013) ("Under the law now in effect, Federal Rule of Evidence 408 does not bar district courts in the Ninth Circuit from considering amounts discussed in settlement negotiations as evidence of the extent of the plaintiff's success."); *In re Kekauoha-Alisa*, 674 F.3d 1083, 1093-94 (9th Cir. 2012) ("Rule 408 does not preclude admission of evidence

3

of a settlement agreement for the purpose of calculation of attorneys' fees").

Instead of citing recent, relevant, and controlling Ninth Circuit law, Creative cites only general case law on Rule 408 from other circuits that predates all of the above-cited Ninth Circuit law. Simply put, the Court can, and should, consider Creative's settlement demands in deciding whether this case is exceptional and the appropriate fee award.

### B. Plaintiffs are the Prevailing Party.

To argue that Plaintiffs did not prevail is to ignore the history of the case. Creative distributed an offer to sell product that would infringe on the '533 Patent. The very next day, Creative filed a declaratory judgment action seeking to invalidate the '533 Patent. Because the court in Missouri did not have personal jurisdiction over the Plaintiffs, that case ended up before this Court. Plaintiffs filed the affirmative claims in this case for one reason. Plaintiffs made the logical conclusion that if Creative had offered to sell infringing product and instantly filed a lawsuit invalidate the patent, Creative was infringing the '533 Patent. Plaintiff did not dismiss its affirmative claims because case law suggesting that Plaintiffs could obtain some relief despite the lack of sales.

But as even Creative acknowledges, Plaintiffs obtained the relief it sought – preventing Creative from infringing on a viable patent. Creative claims that it believed that "Plaintiffs were using an invalid patent to keep Creative from selling a profitable product." (Resp. at 7:26-28.) The Judgment affirms that the '533 Patent is valid and Creative cannot sell infringing product. Creative also contends that "[a]t no time did Plaintiffs formally propose any [settlement] deal that did not involve Creative either agreeing to an injunction or stipulating to not selling product that Plaintiffs contend infringed the '533 Patent." (Resp. at 7:2-23.) That is essentially the outcome of the case – because the '533 Patent is valid, Creative cannot sell infringing products. Importantly, in this lawsuit Creative never argues it did not infringe the patent if the patent was valid; and now there is no question the patent is valid.

Plaintiffs obtained the relief they sought – an outcome they offered to Creative

over a year ago. Creative cannot infringe the '533 Patent. Even before that date, Plaintiffs' monetary settlement demands were related to attorneys' fees – because Creative initiated this lawsuit. (*See* Exs. A & C to the Resp.) Creative's insistence that Plaintiffs did not obtain the relief they sought and that the relationship between the parties was unchanged is mystifying. Plaintiffs are undoubtedly the prevailing party and are eligible for fees.

## II. CREATIVE'S BASELESS, VEXATIOUS CASE RENDERS THIS CASE EXCEPTIONAL.

Creative initiated this litigation when it filed an affirmative claim to invalidate – a claim that requires clear and convincing evidence that the '533 Patent is invalid. Creative had no such evidence – it "delegated authority with respect to the company's handling of this litigation" to Derek Cornelius, an "outside" consultant to Creative. (Ex. 2 to the Motion at 54:6-9.) Instead of clear and convincing evidence, Creative relied on testing Cornelius described as "anecdotal." (SOF ¶ 22.) In the Response, Creative suggests that this is a "label" Plaintiffs used. (Resp. at 4:9-12.) But Plaintiffs did not label the testing as "anecdotal" – those are Mr. Cornelius' own words. He also used the word "subjective" to describe that testing and conceded that he did not remember the results of the testing other than that he "think[s] people lost a small amount of weight and felt pretty good on it." (SOF ¶ 22 & 23.)

Despite anything remotely close to clear and convincing evidence, Creative forged ahead with its case. Why? Because – in Creative's counsel's own words – "**For a variety of reasons, attorneys' fees are simply not an issue for Creative. So, as Creative sees it, it has little to lose while retaining a relatively cost-free shot at invalidating the '533 Patent.**" (Ex. 5 to the Motion (emphasis added).) Accordingly, Creative demanded a royalty fee on the '533 Patent to end the litigation – a remedy unavailable had the case gone forward. Creative spins its actions by suggesting, "That demand was logically related to Creative's good-faith belief that Plaintiffs were using an invalid patent to keep Creative

5

from selling a profitable product." (Resp. at 7:26-28.) But that's not what the settlement E-mail states. Instead, Creative doubted that the Court will find the case exceptional, did not have to worry about fees, and saw no downside to dragging out its baseless case. That vexatious approach to the litigation makes this case exceptional.

Creative also insists that its strikingly similar defeat in *Creative Compounds, LLC v. Starmark Labs., Inc.* is distinguishable because that case was really about Creative's lack of expert testimony. The district court case attached to the Response demonstrates otherwise. The district court criticized Mr. Cornelius' work, finding, "Mr. Cornelius, who was a biology major as an undergraduate and was taught to keep lab notebooks, testified that he kept no lab notebook relating to his alleged invention of dicreatine malate." *Creative Compounds, LLC v. Starmark Labs., Inc.*, 07-22814-CIV, 2009 WL 8741975, at *10 (S.D. Fla. Sept. 17, 2009) aff'd in part, vacated in part, rev'd in part sub nom. *Creative Compounds, LLC v. Starmark Labs.*, 651 F.3d 1303 (Fed. Cir. 2011). Mr. Cornelius' lack of notes was relevant in this case as well.

On Creative's anticipation claim, the district court held:

> [T]he only facts in support of Creative's anticipation claim are the November 2001 and January 2002 emails referencing "dicreatine malate." The emails do not describe the invention, and while Mr. Cornelius wrote that "the technology behind the creatine malates should be nearly the same as the creatine citrates," this language does not describe the process with sufficient clarity and detail to establish anticipation. In sum, the emails do not provide sufficient clarity and detail to establish that the subject matter existed and that its existence was recognized by persons of ordinary skill in the field of the invention, and the mere use of the term "dicreatine malate" in the November 2001 and January 2002 emails does not indicate anticipation.

*Id*. at 14. In this case, Creative again tried to demonstrate a crucial element through the mere mention in an E-mail from Derek Cornelius.

Regarding Creative's derivation claim, the district court found:

> The only evidence Creative points to is the uncorroborated deposition testimony and declaration of Mr. Cornelius. And even in this testi-

mony, Mr. Cornelius states, he "believed" that Mr. Rodrigues stole trade secrets and passed them on to Mr. Boldt. Mr. Cornelius himself points to no personal knowledge or corroborating evidence of such facts. Mr. Cornelius' uncorroborated testimony and statements grounded in belief and conjecture rather than personal knowledge will simply not withstand summary judgment. I therefore conclude that Creative's derivation claim fails.

*Id*. In this case, Creative's reliance on Mr. Cornelius' uncorroborated conjecture again failed to establish its claim. Furthermore, just like Creative's defense in *Starmark*, Creative did not offer any expert testimony here.

The *Starmark* case demonstrates a disturbing trend in Creative's litigation. It seeks to invalidate patents not with the required clear and convincing evidence but with the uncorroborated musings of "outside" consultant Derek Cornelius. The *Starmark* case presents persuasive evidence of Creative's vexatious litigation strategy. Notably, even though the district court did not find the *Starmark* case extraordinary, it did find "Creative's aggressive litigation tactics . . . ***unprofessional and of questionable effectiveness*** . . . ." *Creative Compounds, LLC v. Starmark Labs., Inc.*, 07-22814-CIV, 2010 WL 2757196, at *8 (S.D. Fla. July 13, 2010) (emphasis added). Creative's continued use of unprofessional and ineffective litigation tactics renders this second case exceptional.

Left with no other recourse, Creative simply reargues its position in summary judgment. Creative's argument was baseless then and is baseless now. When the Court examines Creative's cavalier approach to litigation, its baseless claims, and history of reliance on Mr. Cornelius to establish baseless claims, it should find this case exceptional.

**III.   THE REQUESTED FEES ARE REASONABLE.**

Creative does not dispute the fact that Plaintiffs' counsel charged a reasonable fee and expended reasonable time on this case. It advances only two arguments regarding the fees. First, Creative contends that Plaintiffs did not provide a full copy of the fee agreement as required by the Local Rules. While Plaintiffs described the agreement and provided their billing entries, Creative is correct that Plaintiffs failed to file the actual agreement. Plaintiffs attach that Agreement as Exhibit A.

7

Creative's other argument regarding fees is that Plaintiffs should not recover fees related to their affirmative claims. As an initial note, Creative initiated this lawsuit when it filed its declaratory judgment action to invalidate the '533 Patent the day after it offered an infringing product for sale. The claims that followed were the logical outcome of Creative's actions. But after filing that action, and certainly after Creative revealed it had not made any sales of the infringing product, the issue in this case became Creative's defenses. In fact, for the vast majority of the case, the only issue actually contested was the invalidity defenses. Creative did not argue that it did not infringe. Creative seemingly accepted the notion that if the '533 Patent was valid, its offer to sell infringing products constituted infringement. The infringement claims and Creative's invalidity claims were so intertwined and the issues so focused, separating out the little time spent on Plaintiffs' infringement claims would be impossible.

As the Court can see in the summary judgment briefing, the invalidity claims were the crux of this case. Damages were not at issue. Creative never argued that the product it attempted to sell would not infringe on the '533 Patent. Creative essentially stipulated that it had made an offer for sale. This entire case centered on Creative's defenses and what Mr. Cornelius did or did not do to establish those defenses.

Creative tries to point to the affirmative claims as grounds to reduce the fee award but point to no time entries that even mention those claims. Creative notes the Court's ruling that the parties should bear their own costs on Count IV. But after including Count IV in the Complaint, Plaintiffs' counsel spent little to no time dealing with the False Advertising claim. Creative's case law does little to bolster its argument. That case did not deal with interrelated claims or the apportionment of claims. Instead, that case dealt with a ruling that awarded "separate compensation for [prevailing counsel based on] assuming the risk of not being paid." *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 483 U.S. 711, 715, 107 S. Ct. 3078, 3081 (1987). But the Court held that there is no entitlement to fees above and beyond those paid. *Id.*

Here, the issue remains that Creative filed a baseless lawsuit, pursued it long after logic and good faith dictated, and the vast majority of the time and expenses charged in this case involved litigating those baseless claims. The little time and money spent on Plaintiffs affirmative claims are interconnected to that spent on Creative's baseless defenses because those claims were the rational and logical reaction to Creative's initial declaratory judgment action.

## IV. CONCLUSION.

Creative saw this case as nothing more than "a relatively cost-free shot at invalidating the '533 Patent." (Ex. 5 to the Motion.) It did not concern itself with its shoddy evidence. When given a chance to walk away from the litigation over a year ago, Creative used this lawsuit to try and obtain a remedy from Plaintiffs it would not be entitled to even if it prevailed here. This case was baseless, vexatious, and exceptional. The Court should award Plaintiffs their fees in the amount of $81,508.00.

RESPECTFULLY SUBMITTED this 3rd day of March, 2014.

KERCSMAR & FELTUS PLLC

By  *s/Gregory B. Collins*
　　Gregory B. Collins
　　Eric B. Hull
　　7150 East Camelback Road, Suite 285
　　Scottsdale, Arizona 85251
　　*Attorneys for Plaintiffs Ron Kramer, Sal Abraham, and ThermoLife International LLC*

## **CERTIFICATE OF SERVICE**

I certify that on March 3, 2014, I electronically transmitted the foregoing to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following.

Thomas DeGroot
LAW OFFICES OF THOMAS DEGROOT LLC
7733 Forsyth Boulevard, Suite 1100
St. Louis, Missouri 63105
tom@degrootlaw.net
*Attorney for Defendant Creative Compounds LLC*


Maria Crimi Speth
Adam S. Kunz
JABURG & WILK PC
3200 North Central Avenue, Suite 2000
Phoenix, Arizona 85012
mcs@jaburgwilk.com
ask@jaburgwilk.com
*Attorneys for Creative Compounds LLC*


s/Gregory B. Collins