Gregory B. Collins (#023158)
Eric B. Hull (#023934)
KERCSMAR & FELTUS PLLC
7150 East Camelback Road, Suite 285
Scottsdale, Arizona 85251
Telephone: (480) 421-1001
Facsimile: (480) 421-1002
gbc@kflawaz.com
ebh@kflawaz.com

Attorneys for Plaintiffs Ron Kramer, Sal Abraham, and
ThermoLife International LLC

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ron Kramer, an Arizona resident; Sal Abraham, a Florida resident; ThermoLife International LLC, an Arizona limited liability company,<br><br>                   Plaintiffs,<br><br>v.<br><br>Creative Compounds LLC, a Nevada limited liability company,<br><br>                   Defendant. | Case No. 2:11-cv-01965-PHX-JAT (Lead)<br>                    2:11-cv-02033-PHX-JAT (Cons)<br><br>**RON KRAMER AND SAL ABRAHAM'S AMENDED MOTION FOR AWARD OF ATTORNEYS' FEES AND NON-TAXABLE EXPENSES** |
| Creative Compounds LLC, a Nevada limited liability company,<br><br>                   Plaintiff,<br><br>v.<br><br>Ron Kramer, an Arizona resident; and Sal Abraham, a Florida resident,<br><br>                   Defendants. | |

Pursuant to Fed. R. Civ. P. 54, LRCiv 54.2, 35 U.S.C. § 285, and the Court's May 12, 2014 Order (Dkt. #96), Defendants Ron Kramer and Sal Abraham (collectively, "Kramer") file this Amended Motion for an Award of Attorneys' Fees. The Court denied

Kercsmar & Feltus PLLC
7150 East Camelback Road, Suite 285
Scottsdale, Arizona 85251
(480) 421-1001

1

Kramer's previous motion for fees without prejudice due to a change in the standard governing fee awards under § 285 as explained in the recent Supreme Court cases *Octane Fitness, LLC v ICON Health and Fitness, Inc.¸* 134 S.Ct. 1749 (2014) and *Highmark Inc., v. Allcare Health Management Sys., Inc*., 134 S.Ct. 1744 (2014). In this Amended motion, Kramer seeks an award of attorneys' fees incurred in the amount of $81,508.00. This motion is supported by the following Memorandum of Points and Authorities, the attached Rule L.R. 54.2 Certification, and the Declaration of Gregory B. Collins (attached as Exhibit 1).

## I.  INTRODUCTION

In the original Motion for an Award of Attorneys' Fees, Kramer presented a compelling case that fees were warranted under the standard stated in *Brooks Furniture Mfg., Inc. v. Dutailier Int'l, Inc.*, 393 F.3d 1378, 1381 (Fed. Cir. 2005). The Supreme Court has now abrogated that case, lowering the burden of proof and making the standard for a finding of exceptionality more flexible. Viewed under this more lenient standard, the Court should award Kramer his fees expended litigating Creative Compounds LLC's ("Creative's") baseless invalidity claim. Creative never had anywhere near sufficient evidence to invalidate U.S. Patent No. 7,919,533 B2 (the "'533 Patent"). Creative never produced any hard, documentary evidence regarding prior use or sale of the patented invention. Instead, Creative staked its entire case on the oral testimony of its consultant, Derek Cornelius, who allegedly performed tests related to the '533 Patent—tests that, in his own words, Mr. Cornelius called "anecdotal" and "subjective."

When Kramer offered Creative the chance to drop the litigation in August 2012 without any monetary payment, Creative not only refused, it demanded that Kramer pay it a reverse patent royalty—a remedy Creative could not possibly obtain in the lawsuit. Kramer refused Creative's extortionist demand and litigated the case to its predicted conclusion—Creative's loss on summary judgment. So now, over a year later, the parties find themselves in the exact position that Kramer offered over a year ago. Why did it take

Kersmar & Feltus PLLC
7150 East Camelback Road, Suite 285
Scottsdale, Arizona 85251
(480) 421-1001

2

this long? Because, as Creative's counsel explained, for a "variety of reasons, attorneys' fees are simply not an issue for Creative" and "as Creative sees it, it ha[d] little to lose while retaining a relatively cost-free shot at invalidating the '533 Patent." (Ex. 5 to the Motion.) In other words, Creative was willing to waste the Court's time and Kramer's time and money on the off chance that the Court would buy Mr. Cornelius' anecdotal evidence. That is, of course, unless Kramer paid Creative to go away. Creative's strategy is the very definition of vexatious litigation and renders this case exceptional.

## II.   RELEVANT FACTS

This dispute began on September 22, 2011 when Creative sent out a targeted email marketing diiodothyroacetic acid ("DIAC") for use in dietary supplements to 11 potential customers. (Plaintiff's Statement of Facts in Support of Their Motion for Summary Judgment on Defendant's Declaratory Judgment Complaint and Plaintiffs' Claim for Patent Infringement ("SOF"), Dkt.# 52 ¶ 9.) Creative has never denied that a sale pursuant to that email would infringe on the '533 Patent. Indeed, Creative's President Corey McNeely testified that DIAC "is something we definitely want to sell." (SOF ¶ 11.)

To that end, on September 23, 2011—the day after issuing its targeted email— Creative filed a complaint in the Eastern District of Missouri seeking a declaratory judgment that Creative did not infringe the '533 Patent and that the '533 Patent is invalid. (CV 11-02033, Doc. 1). In response, Kramer filed a complaint in this Court alleging that Creative infringed the '533 Patent, induced infringement of the '533 Patent, contributed to infringement of the '533 Patent, and falsely advertised its products in violation 15 U.S.C. § 1125(a)(1)(B). (CV 11-1965, Dkt.# 1). Those two actions were eventually consolidated and assigned to this Court. (CV 11-1965, Dkt.# 12).

Conceding infringement, Creative's entire case rested on proving—by clear and convincing evidence—that the '533 Patent is invalid. But Creative never had any evidence, let alone clear and convincing evidence, to overcome the '533 Patent's presumption of validity. Creative had no internal witnesses who could testify on the subject.

Kersmar & Feltus PLLC
7150 East Camelback Road, Suite 285
Scottsdale, Arizona 85251
(480) 421-1001

3

Kercsmar & Feltus PLLC
7150 East Camelback Road, Suite 285
Scottsdale, Arizona 85251
(480) 421-1001

1   McNeely testified that he did not know of any facts to support the invalidity claim and

2   that he had "delegated authority with respect to the company's handling of this litigation"

3   to Derek Cornelius, an outside consultant to Creative. (C. McNeely Dep. (2/12/13), at-

4   tached as Exhibit 2, at 54:6-9; *see also id*. at 51:8-52:7.)

5       Cornelius' "evidence" fell woefully short of clear and convincing. Cornelius de-

6   scribed his testing results as "anecdotal." (SOF ¶ 22.) He conceded that he did not re-

7   member the results of the testing other than that he "think[s] people lost a small amount

8   of weight and felt pretty good on it." (*Id*.) Cornelius made no efforts to determine wheth-

9   er the weight loss was attributable to the DIAC or other factors—instead he described the

10  results as "subjective." (SOF ¶ 23.)  Cornelius did not keep journals of either set of tests.

11  (*Id*. ¶¶ 19, 21.) He never published the results of his tests. (*Id*. ¶ 24.) He believes he may

12  have discussed the tests on a message board but "[n]one of that information would've

13  been kept. That website is -- no parts of that website are around anymore as far as I

14  know." (*Id*.) He never called an attorney regarding the possibility of obtaining a patent.

15  (SOF ¶ 25.) He never commissioned a study of DIAC. (SOF ¶ 26.) Simply put, Creative

16  produced no documentation whatsoever corroborating anything Cornelius stated at his

17  deposition.

18      But based on the scant evidence, Creative forged ahead, even when offered the

19  chance to walk away from the litigation for nothing. On August 26, 2012, after Kramer

20  had discovered that Creative had not sold any DIAC based on the targeted email,[1] Kra-

21  mer's counsel wrote to Creative's counsel:

22      I have been authorized to make the following non-monetary settle-
23      ment offer to Creative Compounds. In settlement of this dispute, my

24  ---
[1] Creative asserts that the targeted email in question was sent to just six companies and
25  that one those companies just happened to be ThermoLife International, LLC.  This is a
    highly questionable assertion, given that that there are thousands of dietary supplement
    companies and there is simply no reason that ThermoLife would have received this target-
26  ed advertisement and not at least a hundred other companies.  This questionable assertion
    calls into question every other fact that Creative asserted in this case, including the fact
27  that it claims not to have sold any DIAC.  But once Creative made these representations
    under oath, there was no cost effective way for Kramer to challenge these assertions.  This
28  doesn't render Creative's unsupported assertions beyond reproach.

clients propose that Creative Compounds enter into a stipulated judgment in which: (1) Creative Compounds stipulates to the entry of permanent injunction barring further infringement of the patent at issue; (2) Creative Compounds acknowledges that the patent is valid and enforceable; and (3) Creative Compounds dismisses its counterclaim with prejudice with both sides to bear their own attorneys' fees and costs. If Creative Compounds is willing to enter into a stipulated judgment incorporating the terms outlined above, this matter will be resolved with both sides bearing their own attorneys' fees and costs.

(Email (8/26/12) from G. Collins to T. DeGroot, attached as Exhibit 3.) When that offer went nowhere, Kramer's counsel tried again, less than 40 days later:

I suppose ThermoLife would forgo its demand that Creative Compounds stipulate to an injunction as long as Creative agreed not to sell the infringing product going forward.  The crux of the offer is that ThermoLife is willing to settle this matter without a monetary payment from Creative Compounds. In light of this offer, the only reason for Creative Compounds to go forward with the lawsuit is to invalidate the patent.  As you know Creative Compounds has the burden here and given the evidence I've reviewed thus far, it does not appear that Creative Compounds can meet its burden.

(Email (10/2/12) from G. Collins to T. DeGroot, attached as Exhibit 4.)

Kramer's counsel proved correct. After more than a year of costly litigation, the Court granted summary judgment for Kramer on Creative's invalidity claim. Not only could Creative not carry its burden, it could not even survive summary judgment. But Creative did not care about its lack of evidence or heavy burden. As Creative's counsel explained, "For a variety of reasons, attorneys' fees are simply not an issue for Creative. So, as Creative sees it, it has little to lose while retaining a relatively cost-free shot at invalidating the '533 Patent." (Email (10/19/12) from T. DeGroot to G. Collins, attached as Exhibit 5.) Instead, Creative offered to settle the case only if Kramer provided a king's ransom:

Creative is willing settle this matter on the following terms: (1) payment by your clients of a royalty of 10% of the net proceeds from the sale of any its products containing DIAC from the date of its patent (4/5/11) through the date of any settlement, along with 10% of any gross royalty income they have received from others (for example,

Kercsmar & Feltus PLLC
7150 East Camelback Road, Suite 285
Scottsdale, Arizona 85251
(480) 421-1001

through licensing the '533 Patent), (2) after settlement, payment on a going-forward basis to Creative of 5% of the net proceeds from the sale of any your clients' products containing DIAC, along with 5% of any gross royalty income they receive from others (for example, through licensing the '533 Patent, (3) a non-exclusive royalty-free license in favor of Creative under the '533 Patent, (4) a joint press release regarding settlement of the lawsuit that discloses the existence of the royalty-free license and acknowledges Mr. Cornelius contribution to development of DIAC, while keeping confidential the rest of the settlement terms, and (5) dismissal with prejudice of all claims by all parties, each party to bear their own costs.

(*Id.*)

Creative's decision over a year ago to forge ahead without any evidence based on a "relatively cost-free shot at invalidating the '533 Patent" renders this case exceptional and warrants attorneys' fees.[2]

## III.   KRAMER IS ELIGIBLE AND ENTITLED TO RECOVER FEES

### A.   Legal Standard

Both Kramer and Creative filed suit under the Patent Act. Under the Patent Act, "The court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. Kramer prevailed on the invalidity claims that initiated this action and that forced the continuation of this action despite the lack of any justification for its position. Importantly, though fees are typically awarded to defendants, Section 285 protects plaintiffs from abusive litigation as much as it does defendants: "Like patentees who assert infringement claims in bad faith, attorneys fees may be awarded against an accused infringer for asserting a defense in bad faith." 5 ANNOTATED PATENT DIGEST § 33:23. Here, Creative pursued its baseless invalidity claims simply because it was a "relatively cost-free shot at invalidating the '533 Patent . . . ." Simply put, Creative knowingly took the risk that the Court would not find this case exceptional. (*See* Exhibit 5 ("Creative believes that it is highly unlikely that a court would find this an exceptional case so as to justify an award of attorneys' fees.").)

---

[2] As predicted in the original Motion, despite its complete lack of evidence, Creative has appealed this Court's Order granting summary judgment in favor of Kramer on Creative's claim for invalidation of the patent.

Kercsmar & Feltus PLLC
7150 East Camelback Road, Suite 285
Scottsdale, Arizona 85251
(480) 421-1001

1    In doing so, Creative also took the risk that the Supreme Court would re-examine

2  the standard for attorneys' fees, lowering the bar for harassed litigants to recover fees

3  from unreasonable parties. The Supreme Court held: "Under the standard crafted in

4  *Brooks Furniture*, a case is 'exceptional' only if a district court either finds litigation-

5  related misconduct of an independently sanctionable magnitude or determines that the

6  litigation was both 'brought in subjective bad faith' and 'objectively baseless.' 393 F.3d,

7  at 1381. This formulation superimposes an inflexible framework onto statutory text that

8  is inherently flexible*." Octane Fitness*, 134 S. Ct. at 1756. In re-formulating the standard,

9  the Court ruled that "an 'exceptional' case is simply one that stands out from others with

10  respect to the substantive strength of a party's litigating position (considering both the

11  governing law and the facts of the case) or the unreasonable manner in which the case

12  was litigated. District courts may determine whether a case is 'exceptional' in the case-

13  by-case exercise of their discretion, considering the totality of the circumstances." *Id.*

14    The Supreme Court specifically held that a litigant was not required to demon-

15  strate any of the standards stated in *Brooks Furniture*. It held that "[u]nder the standard

16  announced today, a district court may award fees in the rare case in which a party's un-

17  reasonable conduct—while not necessarily independently sanctionable—is nonetheless

18  so 'exceptional' as to justify an award of fees." *Id*. at 1756-57. The Supreme Court also

19  ruled that a district court no longer had to "determine *both* that the litigation is objective-

20  ly baseless *and* that the plaintiff brought it in subjective bad faith. But a case presenting

21  either subjective bad faith or exceptionally meritless claims may sufficiently set itself

22  apart from mine-run cases to warrant a fee award." *Id*. at 1757. And importantly, the Su-

23  preme Court "reject[ed] the Federal Circuit's requirement that patent litigants establish

24  their entitlement to fees under § 285 by 'clear and convincing evidence . . . .'" *Id.* at 1758

25  (quoting *Brooks Furniture,* 393 F.3d, at 1382).

26    Instead, "Section 285 demands a simple discretionary inquiry; it imposes no spe-

27  cific evidentiary burden, much less such a high one." *Id*.; *see also Highmark*, 134 S. Ct.

28

Kercsmar & Feltus PLLC
7150 East Camelback Road, Suite 285
Scottsdale, Arizona 85251
(480) 421-1001

at 1748 ("For reasons we explain in *Octane*, the determination whether a case is 'exceptional' under § 285 is a matter of discretion. And as in our prior cases involving similar determinations, the exceptional-case determination is to be reviewed only for abuse of discretion."). The Supreme Court suggested "a 'nonexclusive' list of 'factors,' including 'frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence.'" *Octane Fitness*, 134 S. Ct. at 1756 n.6 (quoting *Fogerty v. Fantasy, Inc.,* 510 U.S. 517, 114 S.Ct. 1023, 127 L.Ed.2d 455 (1994)).

Kramer was entitled to an award of attorneys' fees under the old standard.  The "new" standard sets a much lower bar; accordingly, there is now no question that fees should be awarded here.

### B.        Kramer is the Prevailing Party.

"Determination of the prevailing party is based on the relation of the litigation result to the overall objective of the litigation, and not on a count of the number of claims and defenses." *Brooks Furniture*, 393 F.3d 1378, 1381 (Fed. Cir. 2005) *abrogated on unrelated grounds by Octane Fitness*, 134 S. Ct. 1749 (U.S. 2014). As the United States Supreme Court held, "'[P]laintiffs may be considered "prevailing parties" for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing the suit.'" *Texas State Teachers Ass'n v. Garland Independent School Dist.,* 489 U.S. 782, 789, 109 S.Ct. 1486 (1989) (quoting *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933 (1983)).

Here, Kramer is the prevailing party. Kramer obtained the result he desired—Creative cannot sell products that infringe on the '533 Patent. That dispute started this litigation (the Declaratory Judgment action in Missouri) and that is the issue that prolonged this litigation (because Plaintiffs would not pay Creative a reverse royalty on products under the '533 Patent). Creative refused to walk away from this lawsuit when given the opportunity and now that Creative has lost on summary judgment, it is barred

Kersmar & Feltus PLLC
7150 East Camelback Road, Suite 285
Scottsdale, Arizona 85251
(480) 421-1001

1    from infringing on the '533 Patent—the same outcome Kramer offered Creative over a

2    year ago. Clearly, Kramer is the prevailing party.

3        One court that recently examined the issue held that the plaintiff in a similar posi-

4    tion was the prevailing party. In *Kellogg v. Nike, Inc.*, the District of Nebraska ruled that

5    "Nike's claim of invalidity was dismissed with prejudice, over objection by Kellogg, on

6    the eve of trial." 74 Fed. R. Serv. 3d 1028, at *12 (D. Neb. 2009) *aff'd*, 421 F. App'x 971

7    (Fed. Cir. 2011). The court held "that Nike's conduct in asserting and pursuing the claim

8    of invalidity was frivolous and was intended to delay the proceedings, obfuscate the is-

9    sues and increase Kellogg's costs of litigation. Its actions in pursuing the counterclaim of

10    invalidity long after it was shown not to be meritorious amounts to vexatious conduct.

11    Defending against Nike's claims of invalidity was a considerable financial burden to Kel-

12    logg in terms of attorney time, firm resources, and out-of-pocket expense." *Id.* Accord-

13    ingly, the Court found that "[i]n light of Nike's unjustified prosecution of the invalidity

14    claim, its litigation misconduct and borderline abusive advocacy, costs cannot justly be

15    assessed against Kellogg. Although Nike is the prevailing party with respect to infringe-

16    ment, Kellogg is the equivalent of a prevailing party with respect to the invalidity claim."

17    *Id.* at *13. Even under the previous, more demanding standard, the court determined "that

18    Nike's conduct makes this an exceptional case under 35 U.S.C. § 285 and that an award

19    of attorney fees and costs reasonably related to the invalidity claim is warranted." *Id.* at

20    *12.

21        **C.**     **This Is an Exceptional Case.**

22        "[A]n 'exceptional' case is simply one that stands out from others with respect to

23    the substantive strength of a party's litigating position (considering both the governing

24    law and the facts of the case) or the unreasonable manner in which the case was litigated.

25    District courts may determine whether a case is 'exceptional' in the case-by-case exercise

26    of their discretion, considering the totality of the circumstances." *Octane Fitness*, 134 S.

27    Ct. at 1756. The Court may consider "a 'nonexclusive' list of 'factors,' including 'frivo-

28

Kercsmar & Feltus PLLC
7150 East Camelback Road, Suite 285
Scottsdale, Arizona 85251
(480) 421-1001

lousness, motivation, objective unreasonableness (both in the factual and legal compo-nents of the case) and the need in particular circumstances to advance considerations of compensation and deterrence.'" *Id.* at 1756 n.6 (quoting *Fogerty,* 510 U.S. 517, 114 S.Ct. 1023 (1994)).

Here, Creative's declaratory judgment claim to invalidate the '533 Patent was ut-terly baseless and frivolous. Creative ignored that every patent is presumptively valid and requires clear and convincing evidence for a ruling of invalidity. Creative knew that Cor-nelius had done nothing more than tinker with an ingredient, producing, to use his words, "anecdotal" and "subjective" results. Creative knew that Cornelius had never followed through on those results to try to obtain a patent. It knew that Cornelius had no documen-tary evidence backing up his "experiments." In short, Creative had no evidence whatso-ever. Yet, Creative forced Kramer to engage in costly discovery, including numerous depositions, and summary judgment briefing—briefing that led to Creative's wholly pre-dictable defeat on its invalidity claims. Notably, the Federal Circuit has previously held that a defendant engaged in vexatious litigation where it "pleaded further defenses which were of only marginal relevance to the case, and engaged in various discovery and trial abuses." *Beckman Instruments, Inc. v. LKB Produkter AB*, 892 F.2d 1547, 1552 n.1 (Fed. Cir. 1989). For that reason alone, this case is exceptional.

But two other facts strengthen this finding. First, over a year ago Kramer offered Creative the chance to walk away from the litigation without any monetary payment. Creative declined, stating, "For a variety of reasons, attorneys' fees are simply not an is-sue for Creative.  So, as Creative sees it, it has little to lose while retaining a relatively cost-free shot at invalidating the '533 Patent." (Exhibit 5.) Creative then demanded that Plaintiffs pay Creative a royalty fee on the '533 Patent in order to make the case go away. Notably, in *Ingram v. Oroudjian*, the Ninth Circuit joined other circuits in holding "that settlement negotiations may be considered by the district court as a factor in determining a fee award." 647 F.3d 925, 927 (9th Cir. 2011) (citing *Lohman v. Duryea Borough,* 574

Kercsmar & Feltus PLLC
7150 East Camelback Road, Suite 285
Scottsdale, Arizona 85251
(480) 421-1001

F.3d 163, 167 (3d Cir. 2009); *Parke v. First Reliance Standard Life Ins. Co.,* 368 F.3d 999, 1012 (8th Cir. 2004); *Moriarty v. Svec,* 233 F.3d 955, 967 (7th Cir. 2000)). Subsequent case law is in accord. *See A.D. v. California Highway Patrol*, 712 F.3d 446, 460-61 (9th Cir. 2013) *cert. denied,* 134 S. Ct. 531 (U.S. 2013) ("Under the law now in effect, Federal Rule of Evidence 408 does not bar district courts in the Ninth Circuit from considering amounts discussed in settlement negotiations as evidence of the extent of the plaintiff's success."); *In re Kekauoha-Alisa*, 674 F.3d 1083, 1093-94 (9th Cir. 2012) ("Rule 408 does not preclude admission of evidence of a settlement agreement for the purpose of calculation of attorneys' fees").

Furthermore, under the previous, more stringent standard, the Federal Circuit found this kind of litigation tactic "exceptional" due to the "***'indicia of extortion'*** because it was part of [the party's] history of filing nearly identical patent infringement complaints against a plethora of diverse defendants, where [the party] followed each filing with a demand for a quick settlement at a price far lower than the cost to defend the litigation." *Eon-Net LP v. Flagstar Bancorp*, 653 F.3d 1314, 1326 (Fed. Cir. 2011) (emphasis added) *cert. denied,* 132 S. Ct. 2391, 182 L. Ed. 2d 1020 (U.S. 2012). Here, Creative challenged the validity of the '533 Patent on baseless grounds and then demanded a royalty to make the litigation stop. Plaintiffs were left little choice but to litigate the matter through summary judgment.

In addition, like the plaintiff in *Eon-Net*, Creative has a history of challenging competitors' patents on shaky validity grounds. In *Creative Compounds, LLC v. Starmark Labs.*, "Creative allege[ed] that Cornelius, named inventor on the '273 Patent, conceived the subject matter of the '373 Patent prior to Boldt, named inventor of the '373 Patent. For support, Creative point[ed] to an email order for 'dicreatine malate' placed with Creative's Chinese supplier as evidence of prior conception. This email, which also speculates that the method of making dicreatine malate should be the same as the method of making creatine citrate, predates the filing date of the provisional application that led to

the '373 Patent." 651 F.3d 1303, 1311-12. The Federal Circuit held that "Creative relied on the 2001 email order for 'dicreatine malate' and simply concluded that this sufficiently demonstrated conception of that compound. In this email, Cornelius speculates that the method of making dicreatine malate 'should' be like that of making creatine citrate. The district court concluded, and this court agrees, that this email is insufficient to establish prior conception of the subject matter of the '373 Patent." *Id.* at 1312. Similar to the outcome here, the Federal Circuit found that "Creative failed to raise a single genuine issue of material fact as to even one of its three asserted invalidity theories. Thus, the district court properly granted Starmark's motion for summary judgment finding the '373 Patent not invalid." *Id.* at 1313.

An examination of the district court opinion contains even more parallels. The district court criticized Mr. Cornelius' work, finding, "Mr. Cornelius, who was a biology major as an undergraduate and was taught to keep lab notebooks, testified that he kept no lab notebook relating to his alleged invention of dicreatine malate." *Creative Compounds, LLC v. Starmark Labs., Inc.*, 07-22814-CIV, 2009 WL 8741975, at *10 (S.D. Fla. Sept. 17, 2009) *aff'd in part, vacated in part, rev'd in part sub nom*. Mr. Cornelius' lack of notes was relevant in this case as well.

On Creative's anticipation claim, the district court held:

> [T]he only facts in support of Creative's anticipation claim are the November 2001 and January 2002 emails referencing "dicreatine malate." The emails do not describe the invention, and while Mr. Cornelius wrote that "the technology behind the creatine malates should be nearly the same as the creatine citrates," this language does not describe the process with sufficient clarity and detail to establish anticipation. In sum, the emails do not provide sufficient clarity and detail to establish that the subject matter existed and that its existence was recognized by persons of ordinary skill in the field of the invention, and the mere use of the term "dicreatine malate" in the November 2001 and January 2002 emails does not indicate anticipation.

*Id.* at 14. In this case, Creative again tried to demonstrate a crucial element through the mere mention in an E-mail from Derek Cornelius.

Kersmar & Feltus PLLC
7150 East Camelback Road, Suite 285
Scottsdale, Arizona 85251
(480) 421-1001

Regarding Creative's derivation claim, the district court found:

> The only evidence Creative points to is the uncorroborated deposition testimony and declaration of Mr. Cornelius. And even in this testimony, Mr. Cornelius states, he "believed" that Mr. Rodrigues stole trade secrets and passed them on to Mr. Boldt. Mr. Cornelius himself points to no personal knowledge or corroborating evidence of such facts. Mr. Cornelius' uncorroborated testimony and statements grounded in belief and conjecture rather than personal knowledge will simply not withstand summary judgment. I therefore conclude that Creative's derivation claim fails.

*Id*. In this case, Creative's reliance on Mr. Cornelius' uncorroborated conjecture again failed to establish its claim. Furthermore, just like Creative's defense in *Starmark*, Creative did not offer any expert testimony here.

The *Starmark* case presents persuasive evidence of Creative's vexatious litigation strategy. Notably, even though the district court did not find the *Starmark* case extraordinary, it did find "Creative's aggressive litigation tactics . . . **unprofessional and of questionable effectiveness** . . . ." *Creative Compounds, LLC v. Starmark Labs., Inc.*, 07-22814-CIV, 2010 WL 2757196, at *8 (S.D. Fla. July 13, 2010) (emphasis added). Clearly, Creative has made a business decision to use vexatious litigation to compete. It has decided that "for a variety of reasons, attorneys' fees are simply not an issue for Creative. So, as Creative sees it, it has little to lose while retaining a relatively cost-free shot at invalidating [patents]." (Exhibit 5.) A finding that Creative's conduct is "exceptional" would take away its "cost-free" incentive to file baseless invalidity claims.

## IV. THE FEES ARE REASONABLE

Kramer seeks an award of attorneys' fees in the amount of $81,508.00. "35 U.S.C. § 285 permits a district court to award reasonable attorneys' fees in an exceptional case. . . . The amount of the award is assessed at the discretion of the district court." *Lam, Inc. v. Johns-Manville Corp.*, 718 F.2d 1056, 1068 (Fed. Cir. 1983) (internal citations omitted). "In determining the reasonableness of the award, there must be some evidence to support the reasonableness of, *inter alia,* the billing rate charged and the number of hours ex-

13

Kercsmar & Feltus PLLC
7150 East Camelback Road, Suite 285
Scottsdale, Arizona 85251
(480) 421-1001

pended." *Id.* To assist the Court in determining the reasonableness of the fees, a detailed itemization is attached as Exhibit A to the Affidavit of Gregory B. Collins, which is Exhibit 1 to the Motion.

Courts have found that "[t]he compensatory purpose of § 285 is best served if the prevailing party is allowed to recover his reasonable expenses in prosecuting the entire action. These expenses include lawyers' fees for time spent on the issue of attorneys' fees itself . . . and disbursements necessary to the case." *Codex Corp. v. Milgo Elec. Corp.*, 541 F. Supp. 1198, 1201 (D. Mass. 1982) (internal citations omitted). "Where, as here, a prevailing party 'has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation....'" *Mathis v. Spears*, 857 F.2d 749, 755 (Fed. Cir. 1988) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 435, 103 S.Ct. 1933, 1940 (1983)).

"Another approach is the 'lodestar' method, used in a number of circuits." Patent Damages Law and Practice § 4:35. In other contexts, "When it sets a fee, the district court must first determine the presumptive lodestar figure by multiplying the number of hours reasonably expended on the litigation by the reasonable hourly rate. Next, in appropriate cases, the district court may adjust the 'presumptively reasonable' lodestar figure based upon the factors listed in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 69-70 (9th Cir. 1975), that have not been subsumed in the lodestar calculation." *Intel Corp. v. Terabyte Int'l, Inc.*, 6 F.3d 614, 622 (9th Cir. 1993) (internal citations omitted).

Under either formulation, the fees are reasonable.

### A.    Counsel's Fees Are Well-Within Market Rate.

Market rate for attorneys' fees calculation can be derived in several different ways, including affidavits of the attorney seeking fees, affidavits from non-interested attorneys regarding prevailing fees in the community, and market rate determinations in other cases in the jurisdiction, "particularly those" setting a rate for the attorney whose fees are under scrutiny. *St. Bernard v. State Collection Serv., Inc.*, 782 F. Supp. 2d 823,

14

Kercsmar & Feltus PLLC
7150 East Camelback Road, Suite 285
Scottsdale, Arizona 85251
(480) 421-1001

826-27 (D. Ariz. 2010) ("Affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiff's attorney, are satisfactory evidence of the prevailing market rate.") (citing *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990)). As set forth below, the fees sought here are supported by the affidavit of counsel and market rate determinations in other cases in Phoenix.

### 1.   *The Fees Are Presumptively Reasonable.*

Kramer was billed attorneys' fees on an hourly basis. Each attorney's level of experience and education served as the basis for his or her hourly billing rate. The accompanying Declaration of Gregory B. Collins attests that the hourly rates charged were fair and reasonable, given the education, experience and involvement of each individual attorney, the issues involved, and prevailing rates in the community. (*See* Exhibit 1 at ¶ 2.) All fees were charged in accordance with the agreement between Plaintiffs and their counsel. Because this matter involves intellectual property litigation, the attorneys' fees charged are presumptively reasonable. *Schweiger v. China Doll Rest., Inc.*, 138 Ariz. 183, 187-88, 673 P.2d 927, 931-32 (App. 1983) ("[T]he rate charged by the lawyer to the client is the best indication of which is reasonable under the circumstances of the particular case."). The rates here are at or below the prevailing market rate for lawyers of comparable skill and experience in this jurisdiction. (*See* Exhibit 1 at ¶ 3.)

### 2.   *Other Cases Support the Reasonableness of the Fees.*

Additional support can be gleaned from recent market rate determinations in other cases in this Court. LRCiv 54.2(c)(3)(L). A review of recent cases from this District shows that the fees charged in this matter are well within market rate. *See, e.g., Vesecky v. Wilshire Aspirations, LLC*, No. CV-11-1180-PHX-LOA, 2012 WL 715564, at *11 (D. Ariz. Mar. 6, 2012) ($375/hr reasonable); *Liberty Media Holdings, LLC v. Vinigay.com*, No. CV-11-280-PHX-LOA, 2011 WL 7430062, at *16 (D. Ariz. Dec. 28, 2011) ($450/hr for lawyer and $150/hr for paralegal in copyright matter reasonable); *Mazet v. Hallibur-*

Kersmar & Feltus PLLC
7150 East Camelback Road, Suite 285
Scottsdale, Arizona 85251
(480) 421-1001

*ton Co. Long-Term Disability Plan No.*, CV-04-0493-PHX-FJM, 2011 WL 3290468, at *1 (D. Ariz. Aug. 1, 2011) ($325/hr reasonable); *Broadcast Music, Inc. v. TLM Invs., P.L.C.*, No. CV 09-8131-PCT-JAT, 2010 WL 2891524, at *7 (D. Ariz. July 21, 2010) (in copyright matter, "Plaintiffs' counsel's rate of $450 per hour in 2009 and $475 per hour in 2010 are also reasonable. These are the rates BMI has agreed to and does pay for the legal services. . . . This rate is also commensurate with the rate for attorneys with similar levels of experience in the Phoenix legal market for similar types of services.").

### B.    The Number of Hours Expended Is Reasonable.

The number of hours Kramer's attorneys worked on this case is imminently reasonable in light of the tasks that litigating this case involved. Five depositions were taken, with the four or these depositions occurring in Missouri. Counsel had to travel and prepare for those depositions. Furthermore, a substantial amount of time was spent addressing Creative's moving target approach to this litigation. In discovery, Creative disclosed that its invalidity claim was premised only on its belief that Cornelius was a prior inventor under 102(g). (*See* SOF ¶ 29.) When Plaintiff's Motion for Summary Judgment thoroughly debunked this argument, Creative switched course.  In response to Plaintiff's Motion for Summary Judgment for the first time Creative argued that its discovery responses "merely la[id] out the facts that Mr. Cornelius received DIAC in this country in 2000 and took it as a dietary supplement. In fact, Plaintiffs have long known that Creative has at least claimed as a defense that the invention described in the '533 Patent was known or used by others before the invention by Plaintiffs."  (Defendant Creative Compounds, LLC's Memorandum in Opposition to Plaintiff's Motion for Summary Judgment on Defendants' Declaratory Judgment Complaint and Plaintiff's Claim for Patent Infringement, Dkt.# 56, at 6:3-4.) While Creative's new claim was disclosed late and entirely improper, it was also factually and legally wrong.  In order to address this claim on its merits, Plaintiffs were forced to cross-move for summary judgment, doubling the amount of work necessary to seek summary judgment on Creative's baseless claims.

1    (*See* Plaintiff's Response to Creative Compounds' Motion for Summary Judgment-and-

2    Cross-Motion for Summary Judgment on Creative's Newly Asserted Defense of Invalidi-

3    ty Pursuant to §§ 102(a) and (b).) And all this work could have been avoided had Crea-

4    tive not sought to use its invalidity claim to extort Plaintiffs for money, seeking a royalty

5    payment for a patent they did not own and could never legally be awarded.  The time

6    spent on this vexatious litigation was all required to defeat Plaintiff's vexatious strategy.

7    **V.    CONCLUSION**

8         Creative had the heavy burden of proving the invalidity of the '533 Patent by clear

9    and convincing evidence. Creative had no evidence to meet that burden. But Creative's

10   case was never about the evidence. Instead, its case was baseless and vexatious. Creative

11   prolonged the litigation more than a year after Kramer was willing to walk away.  Instead

12   of acting like a reasonable litigant, Creative indicated that it wasn't paying its attorneys'

13   fees, so any resolution of this case was going to necessitate a payment to Creative.  This

14   is definition of extortion.  Accordingly, this is an exceptional case warranting an award of

15   fees in the amount of $81,508.00.

16

17        RESPECTFULLY SUBMITTED this 9th day of June, 2014.

18

19                    KERCSMAR & FELTUS PLLC

20

21        By   *s/Gregory B. Collins*

22              Gregory B. Collins
                Eric B. Hull

23              7150 East Camelback Road, Suite 285
                Scottsdale, Arizona 85251

24              *Attorneys for Plaintiffs Ron Kramer, Sal Abraham,*
                *and ThermoLife International LLC*

25

26

27

28

Kercsmar & Feltus PLLC
7150 East Camelback Road, Suite 285
Scottsdale, Arizona 85251
(480) 421-1001

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Kersmar & Feltus PLLC
7150 East Camelback Road, Suite 285
Scottsdale, Arizona 85251
(480) 421-1001

## **CERTIFICATE OF SERVICE**

I certify that on June 9, 2014, I electronically transmitted the foregoing to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following.

Thomas DeGroot
LAW OFFICES OF THOMAS DEGROOT LLC
32 S. Elm Ave.
St. Louis, Missouri 63119
tom@degrootlaw.net
*Attorney for Defendant Creative Compounds LLC*


Maria Crimi Speth
Adam S. Kunz
JABURG & WILK PC
3200 North Central Avenue, Suite 2000
Phoenix, Arizona 85012
mcs@jaburgwilk.com
ask@jaburgwilk.com
*Attorneys for Creative Compounds LLC*


*s/Gregory B. Collins*

18