Thomas DeGroot (admitted *pro hac*)
LAW OFFICES OF THOMAS DEGROOT, LLC
32 S. Elm Ave.
Saint Louis, MO 63119
Telephone: (314) 824-8032
tom@degrootlaw.net

Maria Crimi Speth (012574)
Adam S. Kunz (018827)
Jaburg & Wilk, P.C.
3200 N. Central Ave., Suite 2000
Phoenix, AZ 85012
Telephone: (602) 248-1000
mcs@jaburgwilk.com
ask@jaburgwilk.com

Attorneys for Defendant Creative Compounds, LLC

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ron Kramer, an Arizona resident; Sal Abraham, a Florida resident; ThermoLife International LLC, an Arizona limited liability company,<br><br>Plaintiffs,<br><br>v.<br><br>Creative Compounds LLC, a Nevada limited liability company,<br><br>Defendant.<br><br>Creative Compounds LLC, a Nevada limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>Ron Kramer, an Arizona resident; and Sal Abraham, a Florida resident,<br><br>Defendants. | Case No. 2:11-cv-1965-PHX-JAT (Lead)<br>2:11-cv-2033-PHX-JAT (Cons)<br><br>**CREATIVE COMPOUNDS, LLC's RESPONSE TO PLAINTIFFS' RON KRAMER AND SAL ABRAHAM'S AMENDED MOTION FOR AWARD OF ATTORNEYS' FEES AND NON-TAXABLE EXPENSES (DE 98)** |

Comes Now, Creative Compounds, LLC, ("Creative"), and for its Response to Ron Kramer and Sal Abraham's Amended Motion for Award of Attorneys' Fees and Non-Taxable Expenses (DE 98), and states as follows:

## I. INTRODUCTION

Plaintiffs seek an award of attorneys' fees and non-taxable costs pursuant to 35 U.S.C. § 285, which requires that the Court first find that this was an "exceptional case." If the Court determines that this case was exceptional (and it was not), the Court would then have to determine that Plaintiffs were prevailing parties, despite the fact that they did not prevail on a single claim for which they sought affirmative relief and nothing has changed in the legal relationship between the parties. Indeed, contrary to their claim that Plaintiffs got just the result they desired-- that "Creative cannot sell products that infringe on the '533 Patent," *see* DE 98, at 8--they obtained no such a result. The Court did not find that Creative infringed anything. The Court never construed the terms of U.S. Patent No. 7,919,533 (the '533 Patent). The Court entered no injunction or any affirmative relief against Creative. Creative remains free to sell whatever products it sees fit to sell. And, Plaintiffs' claim that Creative has "never denied that a sale [pursuant to certain emails] would infringe on the '533 Patent," *see* DE 98, at 3, and was "[c]onceding infringement", *id.*, is patently false.

This case involved claim 11 of the '533 Patent: "A dietary supplement comprising diiodothyroacetic acid." The parties did not ask for and the Court held no *Markman* hearing to construe the terms of claim 11. Section II of Creative's Response to Plaintiffs' motion for summary judgment on infringement did state that:

Creative Concedes That The DIAC It Offered For Sale Falls Within the Scope of Claim 11 of the '533 Patent.

DE 56, at 4.  But, titles to sections (whether they involve statutes, contracts, or, in this case a brief) are of limited interpretive value, especially when they are ambiguous. *Brotherhood of R. R. Trainmen v. Baltimore & O. R. Co.*, 331 U.S. 519, 528-529 (1947); *Georgia-Pacific v. Officemax, Inc.*, 2013 WL 5273007, *9 (N.D. Cal.).  The text controls.  In the text of Section II, Creative simply stated that it "admits that it was offering to sell DIAC as a dietary supplement." *Id.*  In neither the title nor the text did Creative concede that it products infringed claim 11 based on what turned out to be Plaintiffs' twisted construction of the term "dietary supplement."  When it became clear that Plaintiffs were actually pushing forward with an interpretation of claim 11 unsupported by the intrinsic evidence of the patent claim, specification, or prosecution history, Creative emphatically argued that Plaintiffs' construction was wrong and expressly stated that:

> In fact, if Plaintiffs now claim that a product must be labeled as a "dietary supplement," Creative withdraws its concession regarding infringement because Plaintiffs has [sic] failed to prove (and did not even raise) a critical fact on which it had the burden of proof:  that Creative had products that bore a label with the words "dietary supplement" on it.

DE 66, at 3-6.[1]  Creative's denial that its products infringed claim 11 of the '533 Patent, as Plaintiffs' construe the terms of that claim, was plainly on record with the Court more than a year before Plaintiffs filed their amended motion and wrongly represented to the Court

---

[1] On appeal, Plaintiffs muddy the waters further by claiming no less than six (6) inconsistent definitions for the term "dietary supplement," none of which are grounded in the intrinsic evidence of the '533 Patent.  *See* Reply Brief of Appellant, at 14-15, attached hereto as Exhibit A.

Law Offices of Thomas DeGroot, LLC
32 S. Elm Ave
Saint Louis, MO 63119
(314) 824-8032

that Creative had never denied that selling its products would infringe the '533 Patent. Maybe Plaintiffs can tell the Court why they misrepresented the record.

## II.   FACTUAL BACKGROUND

On October 7, 2011, Plaintiffs filed their Complaint in this matter, charging Creative with infringement of the '533 Patent, inducing third parties to infringe the '533 Patent, contributing to the infringement by others of the '533 Patent, and false advertising under the Lanham Act. DE 1. In response, Creative denied Plaintiffs' allegations and raised as an affirmative defense the invalidity of the '533 Patent under 35 U.S.C. §§ 101, 102, 103, and 112. DE 11.[2]

During this case, no discovery disputes were presented to the Court. There were no motions to compel, no motions for sanctions, no motions to make pleadings more definite and certain, no Rule 11 motions (indeed, neither party sent the other a Rule 11 letter), or any other motions where either party claimed that the other party was engaged in frivolous litigation, engaged in litigation or discovery misconduct, or acting in bad faith

That Plaintiffs' infringement action was central to their goals in this litigation is illustrated by the fact that, even though they knew within three (3) months of filing their Complaint (before any discovery was conducted and more than fourteen (14) months before they filed their first motion for summary judgment on infringement), Plaintiffs knew that Creative had never sold **any** DIAC, never offered any for sale (none of the emails on which Plaintiffs attempted to build their case constituted an offer because they

---

[2] Creative's Declaratory Judgment action, consolidated in this matter, *see* DE 12, raised no issues regarding the invalidity of the '533 Patent different from the affirmative defenses disclosed in Creative's Answer. DE 11.

4

contained no price, quantity, or shipping terms that would have allowed anyone who received one of those emails to immediately accept it, *see* DE 52-1, at 18-33 (page numbers appearing at the top of the document generated by the Court's CM/ECF system); DE 71, at 11-12), and had never imported any for sale.[3]

Shortly after notifying the Court that Creative's lead counsel had died (DE 16), Plaintiffs made their first settlement demand in this matter. *See* letter from Gregory B. Collins to Adam Kunz, dated December 16, 2011, attached hereto as Exhibit B. As Plaintiffs continually said throughout the pendency of this matter, they believed that "Plaintiffs will prevail at trial." Plaintiffs went on to demand from Creative $15,000.00 in attorneys' fees and costs, another $15,000.00 as nominal damages, an affirmation from Creative that the '533 Patent was valid, and a requirement that Creative enter into a consent judgment affirming the validity of the '533 Patent and agreeing not to infringe the patent. *See* Exhibit B, at 2.

On the day that Creative's new lead counsel entered his appearance in this matter, Plaintiffs informed Creative that unless it responded to Plaintiffs' demand by the end of the day, their offer would expire. *See* DE 17; email from Greg Collins to Tom DeGroot, dated January 6, 2012, attached hereto as Exhibit C. Because Plaintiffs' claims were without merit, Creative rejected Plaintiffs' demand.

On January 27, 2012, the parties filed their Joint Case Management Report. DE 19. In it, Creative made abundantly clear that "Creative has not sold any products that fall

---

[3] Despite knowing those same facts, Plaintiffs also waited until after the close of fact discovery and completion of summary judgment briefing to voluntarily dismiss Count IV of its Complaint (its false advertising claim).

5

within the scope of the '533 Patent." DE 19, at 4. Indeed, Creative expressly claimed that it "has never sold DIAC, does not offer it for sale, and does not import or export DIAC." *Id.* Further, regarding the invalidity of the '533 Patent, Creative expressly stated that DIAC was known to others in the United States before the date of the claimed invention by [Plaintiffs]. *Id.* That Creative claimed prior public knowledge of Plaintiffs' claimed invention was made early in this case and consistently throughout its prosecution.

Despite knowing that Creative had not infringed the '533 Patent, Plaintiffs again relied on their infringement and false advertising claims when they served Creative with another settlement demand.[4]  Again, Plaintiffs demanded payment of $30,000.00 and entry of a permanent injunction whereby Creative acknowledged the validity of the '533 Patent and was barred from selling "the patented invention." *See* letter from Gregory Collins to Thomas DeGroot, dated May 16, 2012, attached hereto as Exhibit D. Again, Creative rejected Plaintiffs' proposal.

On July 5, 2012, Creative notified Plaintiffs that in late fall and early winter of 2000-2001, Derek Cornelius had discussed DIAC with Francisco Tabak ("Tabak") and by

---

[4] The questionable good faith demonstrated by Plaintiffs in prosecuting their infringement claims against Creative, using dismissal of it as any consideration for settling this matter, and in bringing their amended motion for attorneys' fees is readily demonstrated by footnote 1 to Plaintiffs' Amended Motion. In support of their Motion for Summary on Patent Infringement, Plaintiffs submitted a Statement of Undisputed Material Facts to which they attached the only six (6) emails promoting DIAC that Creative sent to anyone. DE 52-1, at 18-33. Plaintiffs engage in nothing but unbridled speculation that similar emails were sent to hundreds or thousands of companies that sell dietary supplements. DE 98, at 4, n. 1. Plaintiffs then use that fantasy to "call[] into question every other fact that Creative asserted in this case, including the fact that it claims not to have sold any DIAC." *Id.* While assassination by innuendo sadly may be standard operating procedure in modern society, one strains to find a grain of good faith in Plaintiffs' baseless accusations, especially because Plaintiffs have the temerity to admit that that they have no evidence to support their claims.

Law Offices of Thomas DeGroot, LLC
32 S. Elm Ave.
Saint Louis, MO 63119
(314) 824-8032

approximately February 2001, Mr. Cornelius had received from Tabak an approximately 5 to 10 gram sample of DIAC. *See* Defendant's Response to Plaintiffs' First Set of Interrogatories, attached hereto as Exhibit E, at 3.[5] Most significantly, Plaintiffs admitted that Mr. Cornelius received that sample of DIAC. *See* DE 58, at 8.

Continuing a theme adopted in their motions for summary judgment, throughout their amended motion for attorneys' fees, Plaintiffs take aim at Cornelius' testing results for DIAC, labeling them anecdotal and woefully inadequate. Plaintiffs, however, are shooting at the wrong target.

The '533 Patent does, indeed, include a number of method claims. Claims 1 through 10 involve methods of promoting lean muscle mass in certain humans. However, the only claim on which Plaintiffs sought summary judgment was claim 11. The only claim for which Creative sought summary judgment of invalidity was claim 11. Claim 11 is a straightforward composition claim; it requires no use of the claimed subject for anything.

Claim 11 merely reads "[a] dietary supplement comprising diiodothyroacetic acid [DIAC]." *See* DE 54-6, col. 6. Plaintiffs themselves defined a "dietary supplement" as something that had never been investigated or sold as a new drug." *See* DE 54-6, at col. 4, line 28-31. When, as Plaintiffs admitted, Cornelius and Syntrax obtained by February 11, 2001 (at least two years before Plaintiffs' claimed invention of DIAC), a sample of DIAC from Tabak, Syntrax and its employees had public knowledge about a composition that

---

[5] Creative served its Response on July 5, 2012. It, however, was unable to obtain a notarized signature of its president until July 9, 2012, which it promptly sent to Plaintiffs.

met all the limitations contained in claim 11 of the '533 Patent.[6] With Plaintiffs' admission, the issue of whether Creative needed any further proof corroborating the public knowledge of Cornelius and Syntrax about DIAC prior to Plaintiffs' supposed invention was withdrawn from the case and was conclusively binding on the Court; Creative needed no further corroboration. *American Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988); *Amgen Inc. v. Connecticut Retirement Plans and Trust Funds*, 568 U.S. __ (2013) (slip op., at 14-15, fn. 6) (citing with approval *American Title Ins. Co. v. Lacelaw Corp. supra)*. And, because Cornelius and the employees of Syntrax were members of the public, not under the control of Plaintiffs, their knowledge of DIAC constituted public knowledge of the claimed invention before its "invention" by Plaintiffs. *In re Caveney*, 761 F.2d 671, 676 (Fed. Cir. 1985); *Minnesota Min. & Mfg. Co. v. Cheque, Inc.*, 303 F.3d 1294, 1301 (Fed. Cir. 2002). At a minimum, Creative had a strong basis in fact and law for making that claim.

Other than itself and its employees, Syntrax told others that DIAC could be used as a dietary supplement. On numerous occasions, Creative argued to the Court that claim 11 of the '533 Patent was invalid because it was "publicly known" prior to Plaintiffs' supposed invention. For example, in support of its own motion for summary judgment

---

[6] Necessarily, if DIAC had never been investigated or sold as a drug and could therefore be sold as a dietary supplement as of October 20, 2004, when Plaintiffs filed the application that matured into the '533 Patent, that was true when Cornelius and Syntrax obtained possession and public knowledge of DIAC in 2001. As such, it was an inherent feature of the claimed invention. *See Schering Corp. v. Geneva Pharmaceuticals, Inc.*, 339 F.3d 1373, 1377 (Fed. Cir. 2003); *In re Cruciferous Sprout Litig.*, 361 F.3d 1343, 1351 (Fed. Cir. 2002);*Schering Corp. v. Geneva Pharmaceuticals, Inc.*, 339 F.3d at 1377. Creative anticipates that Plaintiffs will claim that Creative never made this argument to the Court. It did. DE 66, at 4, 9.

and in opposition to Plaintiffs' motion for summary judgment, Creative argued:

> By Plaintiffs' own admission, Cornelius and Syntrax had possession of DIAC no later than early 2001. The testimony of Brenda Nixon corroborates Cornelius' testimony that Syntrax publicly used DIAC and **further made publicly known** the use of DIAC as a dietary supplement, **even going so far as to tell the public at large** that Syntrax planned to use DIAC as a replacement for TRIAC as a way to lose fat. Creative's Motion for Summary Judgment that Claim 11 of the '533 Patent is invalid under § 102 (a) should be granted.

DE 66, at 17 (emphasis added). Creative pointed out that "the undisputed evidence clearly and convincingly demonstrates that (1) the claimed invention was publicly known or used by others in this country . . . ." *Id.*, at 1-2.[7] Throughout its summary judgment briefing, Creative argued to the district court that claim 11 of the '533 Patent was invalid because it was publicly known prior to Kramer's invention.

Creative also claimed that DIAC was publicly used before Plaintiffs' invention of it and that DIAC had been sold or offered for sale more than one year prior to the filing of Plaintiffs' patent application.[8] While case law does suggest that for those who claim to be

---

[7] *see also* Creative's Opposition to Kramer's Motion for Summary Judgment On Creative's Declaratory Judgment Complaint and for Patent Infringement, DE 56, at 3 ("Creative relies on the undisputed facts demonstrating that claim 11 of the '533 Patent is invalid . . . because of prior public use and knowledge of DIAC.") Similar examples populate Creative's summary judgment briefs.

[8] The Court's summary judgment opinion did not address Creative's claim that Plaintiffs admission that Cornelius and Syntrax obtained possession of DIAC obviated the need for corroboration of that fact, that such DIAC automatically qualified as a "dietary supplement," as that term is used in the '533 Patent, or that Cornelius and Syntrax' employees constituted members of the public. This forms the basis for Creative's appeal. While Creative respectfully disagrees with the Court's decision, Creative has not appealed the Court's determination that Creative had not proven public use of DIAC prior to Plaintiffs' "invention" of what is described in claim 11 of the '533 Patent or the Court's determination that Creative had not shown that DIAC has been offered for sale in this country more than one year before Plaintiffs filed their patent application.

inventors contemporaneous physical corroborating evidence is preferred, corroboration can be sufficiently supplied by the testimony of others. *Price v. Symsek*, 988 F.2d 1187 (Fed. Cir. 1993). Here, Creative did not seek to invalidate the '533 Patent by claiming to be a prior inventor. It did, however, claim that it offered DIAC to sale to the general public as a substitute for TRIAC, a weight-loss product. And, it did so principally through the testimony of a witness hostile to Creative. *See* DE 66, at 14-18; DE 54, at ¶¶ 11 and 18. Further, Plaintiffs admitted that the facts suggested that Tabak had sold a sample of DIAC to Cornelius. DE 57, at 8. At a minimum, Creative's invalidity defense had a good faith basis in the facts and the existing law.

### III. PLAINTIFFS HAVE FAILED TO SHOW THAT THIS IS AN EXCEPTIONAL CASE UNDER 35 U.S.C. § 285

*Octane Fitness, LLC v. Icon Health & Fitness, Inc.*, 572 U.S. ___, 134 S. Ct. 1749 (2014) established that an "exceptional case under 35 U.S.C. § 285 "is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated. District Courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances." *Id.*, slip op., at 7-8.[9] While more flexible than the standard previously articulated by Federal Circuit, *Octane Fitness* did not, as Plaintiffs contend, establish a "much lower bar" for an award of attorneys' fees under § 285. To the contrary, *Octane Fitness* first noted that the statute did not contemplate that the recovery

---

[9] *Highmark, Inc. v. Allcare Health Management System, Inc.*, 572 U.S.__, 134 S. Ct. 1744 (2014) established the Court's exercise of its discretion under § 285 is reviewable under an "abuse of discretion" standard.

of attorneys' fees would become an ordinary thing in patent suits. *Id.*, slip op., at 2, n. 1. And, the Supreme Court animated the meaning of its standard by suggesting:

> a "non-exclusive" list of "factors," including "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance consideration of compensations and deterrence."

*Id.*, slip op., at 8, fn. 6, *citing Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534, n. 19 (1994) (which also cautions that use of such factors is appropriate only so long as they are faithful to the purposes of the enabling act and are applied in an evenhanded manner. *Id.*).

For the proposition that Creative engaged in vexatious litigation that was frivolous and without basis, Plaintiffs cite no Court Order that Creative disobeyed and no discovery misconduct in which Creative supposedly engaged. Plaintiffs do not dispute that claim 11 of the '533 Patent is a composition claim and that Cornelius and Syntrax possessed and knew about DIAC prior to Plaintiffs' claimed invention. Further, while the Court rejected Creative's on-sale bar claim, Plaintiffs conveniently forget that even they agreed that the facts suggested that Tabak sold Cornelius a sample of DIAC, *see* DE 57, at 8. Plaintiffs cannot, on the one hand, agree that the evidence showed that a sale of DIAC had occurred; yet, on the other hand, claim that Creative's on-sale bar claim was frivolous and baseless. Finally, Plaintiffs do not dispute that *Price v. Symsek, supra,* stands for the proposition that Creative had the right to try to show corroboration through the testimony of others of its public offers for sale of DIAC and its communications to others about the knowledge that DIAC was a dietary supplement prior to Plaintiffs claimed invention. Simply because the Court disagreed with Creative does render frivolous or baseless Creative's defense of

11

Plaintiffs' infringement and false advertising claims and Creative's assertion that the '533 Patent was invalid.

Unable to point to any court order that Creative disobeyed or any litigation position taken by Creative that was unsupported by existing case law or that was objectively baseless,[10] Plaintiffs make their argument that this is an exceptional case on two principal grounds: Creative refused to settle this case even though Plaintiffs finally withdrew their monetary demands; and Creative's loss in another patent case shows that it has a history of challenging patents on shaky grounds. The latter claim is risible, the former claim in insufficient to justify an award of fees.

In this case, the settlement discussions as evidence of the parties' good faith in pursuing litigation is, at best, neutral. From December 2011 through August 23, 2012, during which most of the time Plaintiffs knew that Creative had not sold, offered for sale, or imported any DIAC (in short, Plaintiffs knew all their claims were without merit) Plaintiffs always demanded money from Creative to settle this matter. *See* Exhibits B and D. Finally, on August 26, 2012, Plaintiffs dropped their demand for money, but continued to demand that Creative stipulate to the entry of a permanent injunction barring

---

[10] Plaintiffs altogether ignore that the Court never construed the terms of the patent, and that in light of possession and knowledge of Cornelius and Syntrax about DIAC in 2001, which they are judicially estopped from denying, Creative's positions had a basis in fact and law. *Infra*, at 6-10. The only case Plaintiffs cite to support their belief that Creative's lack of success justifies an award of their fees, *Beckman v. Instruments, Inc., LKB Produkter AB*, 892 F. 2d 1547 (Fed. Cir. 1989), involved an award of attorneys' fees against a party who deliberately and repeatedly violated an injunction, who filed a jurisdiction defense that was dropped, filed an antitrust counterclaim that was dropped, filed an inequitable conduct defense that the district court thought was baseless, **and** pleaded further defenses which were of only marginal relevance to the case, **and** engaged in various discovery and trial abuses. That is a far, far cry from anything that happened in this case. Indeed, none of those things happened in this case.

Law Offices of Thomas DeGroot, LLC
32 S. Elm Ave.
Saint Louis, MO 63119
(314) 824-8032

infringement of the '533 Patent and acknowledge the validity of the '533 Patent. *See* email from Gregory Collins to Thomas DeGroot, dated August 26, 2012, attached hereto as Exhibit F. At no time did Plaintiffs formally propose any deal that did not involve Creative either agreeing to an injunction or stipulating to not selling product that Plaintiffs contend infringed the '533 Patent. As set out above, Creative had good faith basis for its contention that the '533 Patent was invalid. It was not required to acquiescence to Plaintiffs' demands and walk away from that position. It is true that Creative proposed settlement of this matter under terms that involved Plaintiffs paying money to Creative. That demand was logically related to Creative's good-faith belief that Plaintiffs were using an invalid patent to keep Creative from selling a profitable product. Settlement negotiations often encompass issues not raised by the formal pleadings in an action. Simply because Creative's settlement demand involved more issues between the parties than was presented in the formal pleadings before the Court does not make them extortionate. Simply put, Creative's singular settlement demand in this case is wholly insufficient to justify qualifying this case as "exceptional."

The cases cited by Plaintiffs in support of their motion, *Beckman Instruments, Inc. v. LKB Produkter AB*, 892 F.2d 1547 (Fed. Cir. 1989); *Kellogg v. Nike, Inc.*, 2009 WL 3165529 (D. Neb. Sept. 2009), and *Eon-Net LP V. Flagstar Bancorp*, 653 F.3d 1314 (Fed. Cir. 2011), *cert. denied*, 132 S. Ct 2391, 182 L.Ed. 2d 1020 (U.S. 2012), all involved situations where a party either ignored multiple court orders, took positions in court even after the court had determined those positions were without merit, committed multiple discovery abuses, constantly shifted positions during the course of a case so that the

opposing party could not determine what claims it faced, or engaged in a pattern of filing dozens of similar claims without merit only to strike bargain-basement settlements. No such conduct has occurred in this case; Plaintiffs' cited cases are, therefore, inapposite.

Plaintiffs also cite *Creative Compounds, LLC v. Starmark Labs, Inc.*, 651 F.3d 1303 (Fed. Cir. 2011) for the proposition that Creative has a history of challenging competitor's patents on shaky invalidity grounds, supposedly for the proposition that the Court needs to put a stop to such conduct. Attached hereto as Exhibit G is a copy of the District Court's summary judgment opinion that was affirmed, in part, by the Federal Circuit. As is readily ascertainable, the trial court based its opinion almost entirely on the failure of Creative's counsel to timely provide an expert report that was necessary to the validity analysis. In fact, written evidence existed that showed that Creative had reduced to practice the invention claimed by Starmark prior to Starmark's supposed invention of the subject matter. It was not that Creative's invalidity grounds were shaky. The failure of Creative's counsel to include any of that written corroborating evidence into the record failure to meet deadlines on expert disclosures that cost it that case. Creative has pending a malpractice action against its former counsel for his gross failure to comply with court imposed deadlines. *See* Petition, attached hereto as Exhibit H. Unlike the *Starmark* matter, there was no need for Plaintiff to retain an invalidity expert in this matter. Plaintiffs admitted that Cornelius and Syntrax had possession (and, therefore, necessarily knowledge) of DIAC long before Plaintiffs "invented" it as a dietary supplement. It is a factual certainty that if, as of October 20, 2004, when Kramer filed his application, DIAC had never been sold or investigated as a new drug, that was necessarily true in 2001 when

Syntrax obtained DIAC. No expert testimony is necessary to prove that point. In any event one unsuccessful attempt to invalidate a competitor's patent does not a pattern, such as was present in *Eon-Net,* make.

### IV. PLAINTIFFS ARE NOT THE PREVAILING PARTY

Even if the Court determines that this case is exceptional (and it is not), Plaintiff is not the prevailing party. "[R]espect for ordinary language requires that a plaintiff receive at least some relief on the merits of his claim before he can be said to **prevail**." *Texas State Teachers Assn. v. Garland Independent School District,* 489 U.S. 782, 792 (1989)(emphasis original). At a minimum, "to be considered a prevailing party . . ., the plaintiff must point to a resolution of the dispute which changes the legal relationship between itself and the defendant. *Id.*

In the main case, Plaintiffs filed a Complaint comprising four counts. Count I of Plaintiffs' Complaint sought damages and injunctive relief against Defendant for patent infringement. The Court dismissed Counts I and III of Plaintiffs' Complaint. (DE 81). The Court granted Summary Judgment against Plaintiff in favor of Defendant on Count II of Plaintiffs' Complaint. (DE 81). The Court dismissed Count IV of Plaintiffs' Complaint, with each party to bear their own costs and fees as to it. (DE 80). Plaintiffs, therefore, did not receive any of the relief they sought when they filed their Complaint. In no way can Plaintiffs be considered a prevailing party. They are, therefore, not entitled to an award of costs.

Plaintiffs argue that they are entitled to costs because they won summary judgment on Creative's claim that Plaintiffs' patent was invalid. That position is without merit for

Law Offices of Thomas DeGroot, LLC
32 S. Elm Ave.
Saint Louis, MO 63119
(314) 824-8032

at least two reasons. First, as the Supreme Court stated, at a minimum, "the plaintiff must be able to point to a resolution of the dispute which changes the legal relationship between itself and the defendant." *Id.* Plaintiffs cannot point to such a resolution. The Court merely dismissed Creative's claims that Plaintiffs' patent was invalid. (DE 81). But, it did not enter any damages award against Creative, it did not issue any injunction against Creative, and it did not find that Creative had infringed the patent in any way. And, as previously noted, Plaintiffs did not get the result they desired-- that "Creative cannot sell products that infringe on the '533 Patent. The Court's determination that Creative's claim that Plaintiffs' patent was invalid was without merit does nothing to alter the relationship between the parties. Thus, even though judgment on Creative's claims was technically entered in favor of Plaintiffs, they fail to meet any of the criteria to qualify as a "prevailing party."

Seoncly, in a case where a patent holder asserts infringement claims against a competitor, but loses them, while the competitor loses its claims that the patents are invalid, neither party prevailed as required to be a prevailing party entitled to fees and costs. *Silicon Graphics, Inc. v. ATI Technologies, Inc.*, 569 F. Supp. 2d 819 (W.D. Wisc. 2008), *aff'd.*, 607 F.3d 784 (Fed. Cir. 2010). The *Kellogg* case cited by Plaintiffs is wholly inapposite. In *Kellogg*, even though Kellogg did not prevail on its infringement claims, the court determined that it was the prevailing party because Nike continuously pursued frivolous claims of invalidity after the trial court had already ruled against it on those claims. Despite the court already having determined that Nike's invalidity claims were without merit, Nike argued them to the jury, ignored the Court's claim construction

rulings and otherwise engaged in misconduct. *See Kellogg v. Nike*, 2009 WL 3165529 (D. Neb. Sept. 2009). That justified the court's determination that Kellogg was a prevailing party. Nothing close to those circumstances are present in this case.

This is really a very simple matter. Each party lost every claim they brought. No legal relationships were changed. Neither party qualifies as a prevailing party for purposes of awarding attorneys' fees and non-taxable costs, either under 35 U.S.C. § 285, or Local Rule 54.2.

### V. PLAINTIFFS' CLAIM FOR ATTORNEYS' FEES AND NON-TAXABLE COSTS IS DEFECTIVE BECAUSE IT DOES NOT COMPLY WITH THE LOCAL RULES AND SEEKS TO RECOVER FEES ON MATTERS ON WHICH IT DID NOT PREVAIL.

#### A. Plaintiffs' Claim For Attorneys' Fees and Non-Taxable Costs Fails to Comply with LRCiv 54.2

Local Rule 54.2 requires "a complete copy of any written fee agreement, or a full recitation of any oral fee agreement, must be attached to the supporting memorandum. If no fee agreement exists, then counsel must attach a statement to that effect." *See* LRCiv 54.2 (d)(2). Plaintiffs' counsel has attached neither the required fee agreement nor any statement to the effect that no fee agreement exists.

Further, pursuant to Local Rule 54.2 (f), counsel is required to attach receipts for expenses for which it seeks reimbursement. On almost every invoice, Plaintiffs seek recovery of computer research charges (Westlaw), but attach no receipts for same. The same is true for car rental expenses and expert fees for which they seek reimbursement. Failure to include a receipt for each expense for which Plaintiffs seek recovery provides grounds for denying an award of any of them.

17

### B. Plaintiffs Seek Recovery of Fees and Non-Taxable Costs on Claims On Which They Did Not Prevail.

When Plaintiffs dismissed Count IV of its Complaint (in which they alleged that Creative engaged in false advertising), they agreed to bear their own costs and attorneys' fees relating to that claim. *See* DE 80. Yet throughout their invoices, Plaintiffs fail to allocate any of their claimed fees and costs to Count IV. So, for example, in their invoices, they seek to recover all amounts associated with drafting Plaintiffs' Complaint. *See* DE 82-1, at pp. 8 and 11. At least some of that work had to relate to Count IV, yet Plaintiffs improperly seek recovery of all of it. The same is true for Plaintiffs work on its first request for production of documents and interrogatories. See DE 82-1, at p.26. In fact, Plaintiffs failure to allocate fees and costs to Count IV, for which it agreed to bear its attorneys' fees, contaminates Plaintiffs' entire fee request, leaving Creative and the Court to speculate on how much time and cost was devoted to Count IV and how much time was devoted to the other issues in the case.

Further, when attorneys' fees are awarded to a prevailing party, they are awarded only to the extent that the party prevailed. *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 483 U.S. 711, 715 (1986). Here, if the Court determines that Plaintiffs are the prevailing party (and it should not), they prevailed only to the extent of defending against Creative's claims of invalidity. They are not entitled to recover any attorneys' fees and costs associated with their Complaint, on which they lost all issues. Thus, Plaintiffs should not recover attorneys' fees and costs associated with drafting their Complaint, drafting interrogatories and document requests, researching issues relating to their complaint, taking depositions (since at least some of that time concerned questioning

witnesses about issues concerning infringement, sales, and advertising), working on disclosure statements, drafting Plaintiffs' summary judgment motion that Creative infringed the '533 Patent, drafting settlement letters (which necessarily involved all claims), or retaining a potential liability expert (see DE 82-1, p. 60). Plaintiffs' total failure to make any attempt to allocate and limit its claimed fees and costs to those associated with defense of Creative's invalidity defense makes it next to impossible for Creative to tease out and object with specificity to the reasonableness of those fees and costs. Indisputably, however, it is wholly unreasonable for Plaintiffs to seek to recover fees and expenses on claims on which it did not prevail. Because Plaintiff failed to limit its claims only to defense of Creative's invalidity defense or to allocate any fees and costs to Count IV, the Court should reject as unreasonable Plaintiffs' fee requests and its request for non-taxable costs.

## VI.  CONCLUSION

Plaintiffs have failed to show how this case is any different than the run-of-the-mill patent case. Even if this is an exceptional case (and it is not), Plaintiffs are not the prevailing party. They lost on all the claims they brought. No legal relationships were changed. Further, Plaintiffs' attorney fee application is defective for a host of reasons. It fails to meet the requirements of Local Rule 54.2. It fails to allocate any of the fees and costs to Count IV, the fees and costs of which it agreed to bear. Finally, it seeks to recover on matters relating to claims it lost; it is limited in no way to defense of Creative's invalidity claim. For all the foregoing reasons, Creative respectfully requests that the Court deny Plaintiffs' motion for an award of attorneys' fees and non-taxable costs.

Dated: June 30, 2014        LAW OFFICES OF THOMAS DEGROOT, LLC

/s/
Thomas J. DeGroot (admitted *pro hac vice*)
LAW OFFICES OF THOMAS DEGROOT, LLC
32 S. Elm Ave.
Saint Louis, MO 63119
314-824-8032
tom@degrootlaw.com
Attorneys for Defendant Creative Compounds, LLC

## CERTIFICATE OF SERVICE

I hereby certify that on June 30, 2014, I electronically transmitted the foregoing to the Clerk's office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following:

Gregory B. Collins (#023158)
Eric B. Hull (#023934)
KERCSMAR & FELTUS PLLC
6263 North Scottsdale Road, Suite 320
Scottsdale, Arizona 85250
gbc@kflawaz.com
ebh@kflawaz.com
Counsel for Plaintiffs Ron Kramer, Sal Abraham, and ThermoLife International LLC

By: /s/
Thomas J. DeGroot