Gregory B. Collins (#023158)
Eric B. Hull (#023934)
KERCSMAR & FELTUS PLLC
7150 East Camelback Road, Suite 285
Scottsdale, Arizona 85251
Telephone: (480) 421-1001
Facsimile: (480) 421-1002
gbc@kflawaz.com
ebh@kflawaz.com

Attorneys for Plaintiffs Ron Kramer, Sal Abraham, and ThermoLife International LLC

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ron Kramer, an Arizona resident; Sal Abraham, a Florida resident; ThermoLife International LLC, an Arizona limited liability company,<br><br>Plaintiffs,<br><br>v.<br><br>Creative Compounds LLC, a Nevada limited liability company,<br><br>Defendant.<br><br>Creative Compounds LLC, a Nevada limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>Ron Kramer, an Arizona resident; and Sal Abraham, a Florida resident,<br><br>Defendants. | Case No. 2:11-cv-01965-PHX-JAT (Lead)<br>2:11-cv-02033-PHX-JAT (Cons)<br><br>**RON KRAMER AND SAL ABRAHAM'S AMENDED REPLY IN SUPPORT OF MOTION FOR AWARD OF ATTORNEYS' FEES AND NON-TAXABLE EXPENSES** |

Creative spends the vast majority of its Response to the Motion for Award of Attorneys' Fees (the "Response") rearguing its failed summary judgment briefs. The issue, however, is that even if Creative was right on the law (and it is not), Creative never had

1

sufficient evidence to invalidate a properly issued patent. Before it ever filed its Declaratory Judgment action in Missouri, Creative knew that it had no evidence and would have to rely on its outside consultant, Derek Cornelius. It knew or should have known that the evidence provided by Cornelius was—in his own words—"anecdotal" and "subjective." Worse, Creative had been down this road before. It had previously sued to invalidate a competitor's patent based on nothing more than Cornelius' uncorroborated evidence and lost.

Armed with this knowledge, Creative still filed a case in which it had to meet the clear and convincing standard. After extensive discovery that produced no evidence supporting its position, Creative was offered the opportunity to walk away from the litigation without any monetary payment. Creative countered with a demand for a retroactive and prospective royalty on the '533 Patent. Creative could not have obtained that remedy even if Kramer had declined to appear in this case at all. In other words, even though Creative initiated this litigation and even though Creative had produced no evidence to support its case, Creative demanded a remedy unavailable to it in order to resolve this matter. Kramer declined and was forced to play out Creative's farce to its inevitable and utterly predictable conclusion—Creative's defeat at summary judgment. In the meantime, Kramer incurred another year of litigation costs.

As explanation for its conduct, Creative's counsel explained that for a "variety of reasons, attorneys' fees are simply not an issue for Creative" and "as Creative sees it, it ha[d] little to lose while retaining a relatively cost-free shot at invalidating the '533 Patent." (Ex. 5 to the Motion.) This statement, combined with Creative's lack of evidence, erroneous legal positions, and unreasonable settlement demands render this case exceptional. These factors undoubtedly make this case "stand[] out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v ICON Health and Fitness, Inc.*, 134 S.Ct. 1749, 1756 (2014).

## I. CREATIVE MISSTATES THE LEGAL STANDARDS.

Creative disputes the contention that the recent Supreme Court authority "establish[es] a 'much lower bar' for an award of attorneys' fees under § 285." (Resp. at 10:22-24.) First, the Supreme Court "reject[ed] the Federal Circuit's requirement that patent litigants establish their entitlement to fees under § 285 by 'clear and convincing evidence . . . .'" *Octane Fitness*, 134 S. Ct. at 1758 (quoting *Brooks Furniture,* 393 F.3d, at 1382). That alone "lowers the bar." But in addition, the Supreme Court ruled that a district court no longer had to "determine *both* that the litigation is objectively baseless *and* that the plaintiff brought it in subjective bad faith." *Id*. at 1757 (emphasis in original). The new standard depends on "a party's unreasonable conduct—while not necessarily independently sanctionable. . . ." *Id*. at 1756-57. Considering that the Supreme Court lowered the burden of proof and reduced the necessary factors, it is hardly a stretch to say that the "bar" for fees has been "lowered."

Despite the change in governing standard, Creative argues, "Plaintiffs cite no Court Order that Creative disobeyed and no discovery misconduct in which Creative supposedly engaged." (Resp. at 11:12-14.) But the Supreme Court has explicitly ruled that those factors are not determinative. Instead, "Section 285 demands a simple discretionary inquiry; it imposes no specific evidentiary burden, much less such a high one." *Octane Fitness*, 134 S. Ct. at 1758. Here, Creative's lack of evidence, its insistence that it does not need to show any reduction to practice, its extortionist settlement demands, and its history of using shoddy evidence from its outside consultant to invalidate patents constitute ample support for an award of fees.

### B. Plaintiffs are the Prevailing Party.

Creative's most perplexing argument urges this Court to find that the relationship of the parties has not changed. An examination of the origins of this lawsuit is instructive. Creative distributed an offer to sell product that would infringe on the '533 Patent. The very next day, Creative filed a declaratory judgment action seeking to invalidate the '533

Patent. The Judgment affirms that the '533 Patent is valid and Creative cannot sell infringing product. That Judgment resolved the dispute that caused Creative to initiate this litigation. That particular dispute was also the basis for Creative to refuse a walk away settlement over a year ago.

Yet Creative stubbornly maintains that it "remains free to sell whatever products it sees fit to sell." (Resp. at 2:19.) The Court's dismissal of the invalidation claims, however, means that Creative is *not* free to sell products that infringe the *valid* '533 Patent. The question that caused Creative to file this litigation in the first place has been definitively answered, changing the relationship between the parties. The importance of this ruling is clear from the evidence and Creative's own Response. Creative's President Corey McNeely testified that DIAC "is something we definitely want to sell." (SOF ¶ 11.) In the Response, Creative states, "At no time did Plaintiffs formally propose any deal that did not involve Creative either agreeing to an injunction or stipulating to not selling product that Plaintiffs contend infringed the '533 Patent." (Resp. at 13:4-6.) That issue caused the litigation to continue for another year after Kramer offered the walk away settlement. And the Judgment, while not an injunction, prevents Creative from "selling product that . . . infringe[s] the '533 Patent." It is a change in the relationship that makes Kramer the prevailing party.

Creative counters that "in a case where a patent holder asserts infringement claims against a competitor, but loses them, while the competitor loses its claims that the patents are invalid, neither party prevailed as required to be a prevailing party entitled to fees and costs." (Resp. 16:16-21.) In support, Creative cites *Silicon Graphics, Inc. v. ATI Technologies, Inc.*, 569 F. Supp. 2d 819 (W.D. Wisc. 21 2008), a district court case from Wisconsin that predates the recent Supreme Court rulings on Section 285. Furthermore, that court did not establish the sweeping, generalized rule cited by Creative. It held, "***Under the circumstances***, no reason exists to award fees and costs to either side." *Id*. at 833. Plaintiffs have presented ample evidence demonstrating that the circumstances in this case warrant a

different result.

Finally, Plaintiffs feel compelled to point out one troubling argument that Creative has repeatedly asserted. Creative once again argues that the '533 Patent somehow relies on "labeling" the product as a "dietary supplement" and, on that basis, withdraws its previous concession of infringement. (See Resp. at 3-4.) This "labeling" argument is a straw man Creative invented so it could knock it down. Plaintiffs have never relied on the "labeling" clause in the DSHEA definition of dietary supplement. This argument first appeared in Creative's Response to Plaintiffs Cross- Motion for Summary Judgment. Creative stated, "Plaintiffs' definition of the term 'dietary supplement' *appears* to be part of a definition for 'dietary supplement' used in the Dietary Supplement Health and Education Act of 1994 ("DSHEA"), 21 U.S.C. § 321 et seq." (Dkt. #66 at 4:20-22 (emphasis added.) Creative then argued that the '533 Patent cannot depend on labeling.

Plaintiffs' Cross Motion never mentioned "labeling" as a requirement. Kramer simply stated that to "supplement" a diet, that invention must *do* something, requiring reduction to practice. Kramer draws attention to Creative's red herring because, when combined with Creative insistence that it "remains free to sell whatever products it sees fit to sell," it seems like Creative may be setting up a technical work around of the Court's ruling. Creative may try to sell DIAC without any labeling referencing the term "dietary supplement" and begin this entire charade of a litigation over again. Kramer wants to counter that argument on the record now so it may be noted if Creative tries to wordsmith around the Court's ruling. Kramer never argued for a labeling requirement and Creative is not free to sell whatever it wants. That is what makes Kramer the prevailing party.

## II. CREATIVE'S BASELESS, VEXATIOUS CASE RENDERS THIS CASE EXCEPTIONAL.

Most of Creative's Response simply reargues summary judgment. Plaintiffs see no reason to once again point out the legal deficiencies in Creative's case. The important facts are that Creative initiated this litigation when it filed an affirmative claim to invali-

5

Kercsmar & Feltus PLLC
7150 East Camelback Road, Suite 285
Scottsdale, Arizona 85251
(480) 421-1001

date – a claim that requires clear and convincing evidence that the '533 Patent is invalid. Creative had no such evidence – it "delegated authority with respect to the company's handling of this litigation" to Derek Cornelius, an "outside" consultant to Creative. (Ex. 2 to the Motion at 54:6-9.) Instead of clear and convincing evidence, Creative relied on testing Cornelius himself described as "anecdotal." (SOF ¶ 22.) Creative consistently suggests that this is a "label" Plaintiffs used but those are Mr. Cornelius' own words. He also used the word "subjective" to describe that testing and conceded that he did not remember the results of the testing other than that he "think[s] people lost a small amount of weight and felt pretty good on it." (SOF ¶ 22 & 23.)

Despite anything remotely close to clear and convincing evidence, Creative forged ahead with its case. Because – in Creative's counsel's own words – "**For a variety of reasons, attorneys' fees are simply not an issue for Creative. So, as Creative sees it, it has little to lose while retaining a relatively cost-free shot at invalidating the '533 Patent.**" (Ex. 5 to the Motion (emphasis added).) Accordingly, Creative demanded a royalty fee on the '533 Patent to end the litigation – a remedy unavailable had the case gone forward. Creative spins its actions by suggesting, "That demand was logically related to Creative's good-faith belief that Plaintiffs were using an invalid patent to keep Creative from selling a profitable product." (Resp. at 13:11-12.) But that's not what the settlement E-mail states. Instead, Creative doubted that the Court will find the case exceptional, did not have to worry about fees, and saw no downside to dragging out its baseless case. That vexatious approach to the litigation makes this case exceptional.

Furthermore, even though Plaintiffs highlighted portions of the district court's opinion in *Creative Compounds, LLC v. Starmark Labs., Inc.* that describes why that case is relevant to this one, Creative insists that the case is distinguishable. Creative claims, "As is readily ascertainable, the trial court based its opinion almost entirely on the failure of Creative's counsel to timely provide an expert report that was necessary to the validity analysis." (Resp. at 14:11-14.) Looking at the district court's opinion, what is "readily as-

certainable" is that Creative again went forward with an invalidity suit with shaky evidence provided by outside consultant Derek Cornelius. The district court criticized Mr. Cornelius' work, finding, "Mr. Cornelius, who was a biology major as an undergraduate and was taught to keep lab notebooks, testified that he kept no lab notebook relating to his alleged invention of dicreatine malate." *Creative Compounds, LLC v. Starmark Labs., Inc.*, 07-22814-CIV, 2009 WL 8741975, at *10 (S.D. Fla. Sept. 17, 2009) aff'd in part, vacated in part, rev'd in part sub nom. *Creative Compounds, LLC v. Starmark Labs.*, 651 F.3d 1303 (Fed. Cir. 2011).

The district court criticized Creative's reliance on Cornelius's emails that failed to show anticipation. *Id.* at *14. The court criticized Creative relying on evidence where "Mr. Cornelius himself points to no personal knowledge or corroborating evidence of such facts." *Id*. And the district court found "Creative's aggressive litigation tactics . . . ***unprofessional and of questionable effectiveness*** . . . ." *Id.* *8 (emphasis added).

In considering exceptionality, the Supreme Court suggested "a 'nonexclusive' list of 'factors,' including 'frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence.'" *Octane Fitness*, 134 S. Ct. at 1756 n.6 (quoting *Fogerty v. Fantasy, Inc.,* 510 U.S. 517, 114 S.Ct. 1023, 127 L.Ed.2d 455 (1994)). Creative had no evidence that could meet the clear and convincing evidentiary burden to invalidate the '533 Patent. Creative's motivation, revealed in its settlement demand and history of shaky evidence, also renders this case exceptional. This case went on for more than a year longer than it should have considering Creative was offered a walk away. And it has shown that it will try to invalidate other patents based on flimsy evidence. For all of these reasons, the Court should award Plaintiffs their fees.

### III.  THE REQUESTED FEES ARE REASONABLE.

This is an Amended Motion for an Award of Fees. Plaintiffs hereby incorporate their previous Motion and Reply. Those filings provided every document that Creative

7

now argues is missing (including the fee agreement), rendering Creative's technical arguments moot. (Dkt.#95 Exhibit A.) Beyond that, Creative does not dispute the fact that Plaintiffs' counsel charged a reasonable fee and expended reasonable time on this case.

Creative also advances an argument regarding fees is that Plaintiffs should not recover fees related to their affirmative claims. But Creative initiated this lawsuit when it filed its declaratory judgment action to invalidate the '533 Patent the day after it offered an infringing product for sale. The claims that followed were the logical outcome of Creative's actions. After filing that action, and certainly after Creative revealed it had not made any sales of the infringing product, the issue in this case became Creative's defenses. In fact, for the vast majority of the case, the only issue actually contested was the invalidity defenses. Creative did not argue that it did not infringe. Creative seemingly accepted the notion that if the '533 Patent was valid, its offer to sell infringing products constituted infringement (though it now "withdraws" that concession based on its odd "labeling" argument). The infringement claims and Creative's invalidity claims were so intertwined and the issues so focused, separating out the little time spent on Plaintiffs' infringement claims would be impossible.

As the Court can see in the summary judgment briefing, the invalidity claims were the crux of this case. Damages were not at issue. Creative never argued that the product it attempted to sell would not infringe on the '533 Patent. Creative essentially stipulated that it had made an offer for sale. This entire case centered on Creative's defenses and what Cornelius did or did not do to establish those defenses.

Creative tries to point to the affirmative claims as grounds to reduce the fee award but point to no time entries that even mention those claims. Creative notes the Court's ruling that the parties should bear their own costs on Count IV. But after including Count IV in the Complaint, Plaintiffs' counsel spent little to no time dealing with the False Advertising claim. Creative's case law does little to bolster its argument. That case did not deal with interrelated claims or the apportionment of claims. Instead, that case dealt with a rul-

ing that awarded "separate compensation for [prevailing counsel based on] assuming the risk of not being paid." *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 483 U.S. 711, 715, 107 S. Ct. 3078, 3081 (1987). But the Court held that there is no entitlement to fees above and beyond those paid. *Id*.

Here, the issue remains that Creative filed a baseless lawsuit, pursued it long after logic and good faith dictated, and the vast majority of the time and expenses charged in this case involved litigating those baseless claims. The little time and money spent on Plaintiffs affirmative claims are interconnected to that spent on Creative's baseless defenses because those claims were the rational and logical reaction to Creative's initial declaratory judgment action.

## IV.   CONCLUSION.

Creative saw this case as nothing more than "a relatively cost-free shot at invalidating the '533 Patent." (Ex. 5 to the Motion.) It did not concern itself with its shoddy evidence. When given a chance to walk away from the litigation over a year ago, Creative used this lawsuit to try and obtain a remedy from Plaintiffs it would not be entitled to even if it prevailed here. This case was baseless, vexatious, and exceptional. The Court should award Plaintiffs their fees in the amount of $81,508.00.

RESPECTFULLY SUBMITTED this 22nd day of July, 2014.

KERCSMAR & FELTUS PLLC

By  *s/Gregory B. Collins*
Gregory B. Collins
Eric B. Hull
7150 East Camelback Road, Suite 285
Scottsdale, Arizona 85251
*Attorneys for Plaintiffs Ron Kramer, Sal Abraham, and ThermoLife International LLC*

## **CERTIFICATE OF SERVICE**

I certify that on July 22, 2014, I electronically transmitted the foregoing to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following.

Thomas DeGroot
LAW OFFICES OF THOMAS DEGROOT LLC
32 S. Elm Ave.
St. Louis, Missouri 63119
tom@degrootlaw.net
*Attorney for Defendant Creative Compounds LLC*

Maria Crimi Speth
Adam S. Kunz
JABURG & WILK PC
3200 North Central Avenue, Suite 2000
Phoenix, Arizona 85012
mcs@jaburgwilk.com
ask@jaburgwilk.com
*Attorneys for Creative Compounds LLC*


*s/Gregory B. Collins*